IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WESELY WILLIAMS,

               Plaintiff,

                                    Civ. Action No.
     v.                         9:09-CV-0643 (DNH/DEP)

M. BAILEY, Corrections Counselor; B.
SCHWEBLER, Guidance Counselor;
D. MARTUSCELLO, Deputy Superintendent/
Security; DAVID HALLENBECK, Deputy
Superintendent of Programs; MRS. MARDON,
Correctional Counselor/Program Supervisor,
KENNETH PERLMAN, Deputy Commissioner
Program Services; and Dr. PAOLANO, Medical
Doctor,[1]

                       Defendants.

_____

APPEARANCES:            OF COUNSEL:

FOR PLAINTIFF:

WESELY WILLIAMS, *Pro Se*
05-A-1183
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051

_____

[1]     From defendants' submissions it appears that plaintiff's complaint misspells defendant Mary Bailey's name as "Baily", and misspells defendant Dr. Paolano's name as "Polmaro".  The clerk will be directed to adjust court records to reflect the correct spelling of those defendants' names, as well as plaintiff's name from "Wesley Williams", as it is currently shown, to Wesely Williams.

FOR DEFENDANTS:

HON. ANDREW M. CUOMO          ADRIENNE J. KERWIN, ESQ.
Attorney General of                    Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Wesely Williams, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his

complaint plaintiff asserts that prison officials at the facility in which he

was housed at the relevant times attempted to force him to work in the

prison mess hall, despite his inability to meet the physical requirements of

that position, and denied him other programming following his refusal to

carry out his assignment.  Plaintiff maintains that the defendants' actions

constituted cruel and unusual punishment in violation of the Eighth

Amendment, and resulted in the denial of equal protection as guaranteed

under the Fourteenth Amendment.  Plaintiff also contends that

defendants' conduct, including subjecting him to disciplinary keeplock

2

confinement for a period of thirty days for refusing his work assignment, deprived him of procedural due process.

In response to plaintiff's complaint defendants have moved to dismiss for failure to state a claim upon which relief may be granted.  In their motion, defendants argue that plaintiff's constitutional claims lack merit and that the allegations against the various defendants are insufficient to support a finding of liability against them.  For the reasons set forth below, I recommend that plaintiff's motion be granted as to all claims except for his equal protection cause of action, with leave to replead.

I.     BACKGROUND[2]

Plaintiff is an inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Amended Complaint (Dkt. No. 5).  Since the time of his transfer into that

_____

[2]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  In addition, I have considered the materials submitted by the plaintiff in opposition to the defendants' motion, Dkt. No. 18, to the extent they are consistent with the allegations set forth in his complaint.  *See Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

prison on October 15, 2008, plaintiff has been designated by the DOCS to the Coxsackie Correctional Facility ("Coxsackie"), located in Coxsackie, New York.  *Id. at* ¶ 1.

Prior to his transfer into Coxsackie plaintiff was treated by DOCS medical personnel for various medical conditions some of which stem from a hairline fracture to his left ankle and the resulting tearing of the surrounding ligaments.  Amended Complaint (Dkt. No. 5) ¶ 27. The residual effects of that injury experienced by Williams include knee and hip pain caused by weight redistribution.  *Id.*  Due to that injury, plaintiff is now required to wear a knee brace.  *Id.*

Upon his arrival at Coxsackie plaintiff was seen by a nurse who, during the course of an ensuing interview, requested that plaintiff sign a clearance form permitting him to work in the facility's food service area.[3] Amended Complaint (Dkt. No. 5) ¶ 15.  Plaintiff refused to sign the form and instead requested to be seen by a doctor.  *Id.*  Although the precise chronology and facts surrounding its issuance are unclear, at some point Dr. Paolano, a physician at Coxsackie, apparently signed a form medically clearing the plaintiff for mess hall duty.  *Id.* at ¶ 26.

---

[3]      According to the plaintiff he was previously provided with a medical work exemption at another prior prison facility.  Amended Complaint (Dkt. No. 5) ¶ 15.

4

In November of 2008, plaintiff met with defendant Mardon, the Counselor/Program Supervisor at Coxsackie, to discuss programming options available to him.  Amended Complaint (Dkt. No. 5) ¶ 16. Defendant Mardon asked plaintiff to choose between working in the hallways or the mess hall, and warned him that his refusal to select one could result in disciplinary action.  *Id.* at ¶ 16.  When Williams responded that he had no preference, he was placed on mess hall duty.  *Id.*

On or about January 12, 2009, plaintiff was issued a misbehavior report for "refusing work".[4]  Amended Complaint (Dkt. No. 5) ¶ 18.  As a result of that charge plaintiff was sentenced to thirty days of keeplock confinement.[5]  *Id.*

---

[4]     Plaintiff's complaint does not identify the author of that report.

[5]     Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.*  Keeplocked inmates can leave their cells for showers, visits, medical exams, and counseling, and can have cell study, books and periodicals, *Id.*  The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.  *Id.*

5

Plaintiff saw a prison physician on February 3, 2009 and, following an examination, was told that he would be provided with a work restriction form stating that he is unable to stand for long periods of time.  Amended Complaint (Dkt. No. 5) ¶ 19.  According to the plaintiff, prison officials nonetheless continued to list him as assigned to work in the mess hall, and as a result he was not provided with alternate programming.  *Id.* at ¶¶ 19-21.

In or about June of 2009, plaintiff was again assigned to work in the mess hall.  Amended Complaint (Dkt. No. 5) ¶ 24.  After complaining to a nurse at sick call, however, Williams was removed from the mess hall programming the following month.  *Id.*

In July of 2009, plaintiff met with defendant B. Schwebler, a Corrections Counselor at Coxsackie, and requested that he be transferred out of Coxsackie, a maximum security facility, and into a medium security prison.  Amended Complaint (Dkt. No. 5) ¶ 25.   That request was denied, and plaintiff was informed that he was currently listed as being assigned to the mess hall, and his refusal to participate in that program resulted in his being designated a maximum security inmate.  *Id.*  When plaintiff inquired about the availability of other options he was told by defendant

6

Schwebler that alternative programming was not available and that he would not be transferred out of the facility as long as he refused to go back into the mess hall.  Amended Complaint (Dkt. No. 5) ¶ 25.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 4, 2009 and, at the direction of the court, submitted an amended complaint, later approved for filing, on August 26, 2009.  Dkt. Nos. 1, 5.  As defendants, plaintiff's amended complaint names Lori Mardon, a Corrections Counselor/Program Supervisor at Coxsackie; Mary Bailey, a Corrections Counselor; Daniel Martuscello, the Deputy Superintendent for Security at Coxsackie; David Hallenbeck, the Deputy Superintendent for Programs at the facility; Brad Schwebler, a Corrections Counselor at Coxsackie; Kenneth S. Perlman, the DOCS Deputy Commissioner of Corrections and Program Services; and Dr. Albert Paolano, a prison physician employed at the facility.  *See* Dkt. No. 5.  In his complaint plaintiff alleges that defendants' actions deprived him of due process and equal protection, and constituted cruel and unusual punishment, in violation of the Fourteenth and Eighth Amendments, respectively.  *Id.* at ¶¶ 27-31.  As relief, plaintiff's complaint seeks declaratory, injunctive, and monetary

relief. *Id.* at  ¶¶ 32-34.

In response to plaintiff's complaint, on January 20, 2010 defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action upon which relief may be granted.  Dkt. No. 14.  In their motion, defendants argue that 1) plaintiff has no constitutional right to participate in prison programming, and the denial of a request for assignment to a particular program thus does not support an Eighth Amendment violation claim; 2) plaintiff's due process claim is deficient, based upon his failure to allege the deprivation of a protected liberty interest; 3) plaintiff's complaint fails to support an equal protection claim since he does not claim that he was intentionally and purposefully discriminated against by being treated differently than other similarly situated inmates; and 4) with regard to certain of the defendants, the complaint fails to allege the requisite personal involvement to support claims against them.  Plaintiff has since responded, on April 28, 2010, in opposition to defendants' motion.  Dkt. No. 18.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Dismissal Motion Standard

       A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which, though unexacting in its requirements, "demands more

than an unadorned, the-defendant-unlawfully-harmed me accusation" in

order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.

Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule

commands that a complaint contain more than mere legal conclusions;

"[w]hile legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."  *Ashcroft,* 129 S. Ct. at 1950.

       To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d

10

435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

    B.   <u>Procedural Due Process</u>

      Although the phrase "due process" does not appear anywhere, defendants surmise from the body of plaintiff's complaint as well as plaintiff's reference to the Fourteenth Amendment that he could potentially be claiming a deprivation of procedural due process growing out of the facts detailed in his complaint.  In the event that plaintiff's complaint is considered to allege such a cause of action, defendants contend that it is subject to dismissal.

      To prevail on a claim for violation of procedural due process rights, a plaintiff must show that 1) he or she was deprived of a liberty interest; 2) without due process of law.  *Black v. C. Lansberg*, No. 9:06–CV-1243 (GTS/GHL), 2009 WL 3181111, at *1, *11 (N.D.N.Y. Sept. 29, 2009).[6]  "A liberty interest protected by the Fourteenth Amendment may arise from one of two possible sources: the Due Process Clause of the Constitution and the laws of the state." *Dixon v. Leonardo*, 886 F. Supp. 987, 992 (N.D.N.Y.1995).

---

      [6]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

### 1.   Denial of Access To Programming

Plaintiff's complaint could be construed as complaining of the denial of participation in or access to a prison program at Coxsackie, the practical effect of the refusal by defendants Mardon, Bailey, and Schwebler to assign him to any program other than mess hall duty. Amended Complaint (Dkt. No. 5) ¶¶ 28-29, 31.   Such an allegation, however, is insufficient to establish the deprivation of a liberty interest; it is widely recognized that a prison inmate enjoys no recognized property interest in prison work assignments or programs. *See Atkinson, III v. Fischer*, No. 9:07-cv-00368 (GLS/GHL), 2009 WL 3165544, at *1, *12 (N.D.N.Y. Sept. 25, 2009); *Johnson v. Rowley*, 569 F.3d 43, 44 (2d Cir. 2009). "Courts considering inmate claims regarding denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life." *Thompson v. LaClair*, No. 9:08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *1, *6 (S.D.N.Y.Aug. 25, 2009).

Because plaintiff cannot establish the existence of a protected liberty interest or a guaranteed right to participate in prison programming, his allegation that he was deprived of due process stemming from the

defendants' failure to provide such programming fails to state a plausible due process claim.

### 2. Keeplock Confinement

Plaintiff could potentially be alleging a violation of his right to procedural due process based upon the issuance of a misbehavior report and the resulting sentence of thirty days of keeplock confinement for refusing to work.  *See generally* Amended Complaint (Dkt. No. 5) ¶¶ 16, 18.  Once again, however, plaintiff's allegation regarding keeplock confinement is insufficient to establish the deprivation of a liberty interest. Under the circumstances now presented, the focus of the liberty interest inquiry is upon whether 1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and 2) the confinement or restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Black*, 2009 WL 3181111, at *11 (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995) (citations omitted).   Assuming the existence of a state-created interest in remaining free from disciplinary confinement, I nonetheless note that "[t]he decisions of the Second Circuit are unanimous that keeplock . . . confinement of thirty days or less in New

York prisons is not 'atypical or significant hardship' under *Sandin*."

*William v. Keane,* No. 95-CIV.0379 (JGX/AJP), 1997 WL 527677, at *3

(S.D.N.Y. Aug. 25, 1997).  Accordingly, plaintiff's thirty-day sentence of

keeplock confinement, without more, is insufficient to state a protected

liberty interest and support a cognizable due process claim.  *Rodriguez v.*

*McGinnis*, 1 F. Supp. 2d 244, 248 (S.D.N.Y. 1998).

  Based upon the foregoing, I recommend dismissal of any

procedural due process cause of action discerned in plaintiff's complaint.

    3. <u>Equal Protection</u>

  In his second cause of action plaintiff alleges that defendants

Mardon and Bailey violated his Fourteenth Amendment right to equal

protection by refusing his request for specific programs while granting

other inmate requests for those same programs.

  The Equal Protection Clause of the Fourteenth Amendment directs

state actors to treat similarly situated people alike. *See City of Cleburne,*

*Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254

(1985).  Accordingly, "[t]o establish an equal protection violation, the

plaintiff must show that the defendants applied a different standard to

similarly situated individuals." *Nieves v. Aldrich*, No. 9:07-CV-655

(DHN/GJD), 2009 WL 3063051, at *1, *9 (N.D.N.Y. Aug. 28, 2009). First, a plaintiff must "show that he [or she] was treated differently than others similar situated because of intentional or purposeful discrimination." *Id.* In a prison setting, in order to meet the appropriate level of scrutiny, a plaintiff must show that "'his [or her] treatment was not reasonably related to [any] legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S. Ct. 1475 (2001) (internal quotation marks omitted)).

As defendants acknowledge, a "class of one" equal protection claim can be plausibly stated provided that a plaintiff alleges that he or she was intentionally or purposely treated differently than others similarly situated and that the difference in treatment lacked a rational basis. *See* Defendants' Memorandum (Dkt. No. 14) at p. 5. Relying upon this court's decision in *Nieves*, 2009 WL 3063051, defendants maintain that plaintiff cannot establish the requisite lack of a rational basis. That case, however, is readily distinguishable. There the plaintiff, a prison inmate who suffered from a medical condition causing him to emit an offensive odor from his nose, was excluded from classroom programming for that reason. *Id.* at *8. The court found that the decision to treat the plaintiff

15

differently than other inmates permitted to remain in the class was rationally based.  *Id.*

In this instance, plaintiff claims that he was told that defendants Mardon and Bailey did not want him in any other programming because he had too many scars on his face.  Amended Complaint (Dkt. No. 5) ¶ 25.  At this juncture this allegation is sufficient to suggest that the challenged actions were not rationally based.  While the circumstances outlined in plaintiff's complaint suggest that this may not have been the actual reason for the decision, accepting plaintiff's allegations as true and drawing all inferences in his favor, as the court must given the present procedural posture, I am unable to say that plaintiff has not pleaded a plausible denial of equal protection claim, and accordingly recommend against dismissal of that cause of action.

C.    Cruel and Unusual Punishment

At the center of plaintiff's complaint are claims of cruel and unusual punishment asserted under the Eighth Amendment.  In their motion, defendants maintain that plaintiff has failed to state a plausible cruel and unusual punishment cause of action.

The Eighth Amendment's prohibition of cruel and unusual

punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

It is true that a claim that prison officials have intentionally disregarded and inmate's medical needs can fall under the umbrella of protection against the imposition of cruel and unusual punishment afforded by the Eighth Amendment.  *Estelle*, 429 U.S. at 102, 104, 97 S. Ct. at 290, 291 (1976).  Analysis of such claims requires exploration of both of the objective and subjective prongs under the prevailing Eighth Amendment test.  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). Analysis of the objective, "sufficiently serious," requirement of an Eighth

17

Amendment medical indifference claim begins with an inquiry into

"whether the prisoner was actually deprived of adequate medical care . .

.", and centers upon whether prison officials acted reasonably in treating

the plaintiff.  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  A

second prong of the objective test addresses whether the inadequacy in

medical treatment was sufficiently serious.  *Id*. at 280.  If there is a

complete failure to provide treatment, the court must look to the

seriousness of the inmate's medical condition.  *Smith v. Carpenter*, 316

F.3d 178, 185-86 (2d Cir. 2003).  If, on the other hand, the complaint

alleges that treatment was provided but was inadequate, the seriousness

inquiry is more narrowly confined to that alleged inadequacy, rather than

focusing upon the seriousness of the prisoner's medical condition.

*Salahuddin*, 467 F.3d at 280.  "For example, if the prisoner is receiving on-

going treatment and the offending conduct is an unreasonable delay or

interruption in treatment. . . [the focus of] the inquiry is on the challenged

delay or interruption, rather that the prisoner's underlying medical

condition alone."  *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations

omitted).  In other words, at the heart of the relevant inquiry is the

seriousness of the medical need, and whether from an objective viewpoint

the temporary deprivation was sufficiently harmful to establish a constitutional violation. *Smith*, 316 F.3d at 186. Of course, "when medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as 'delayed treatment', but may properly be viewed as a 'refusal' to provide medical treatment." *Id.* at 186, n.10 (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

Since medical conditions vary in severity, a decision to leave a condition untreated may or may not raise constitutional concerns, depending on the circumstances. *Harrison*, 219 F.3d at 136-37 (quoting, *inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)). Relevant factors informing this determination include whether the plaintiff suffers from an injury or condition that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance,* 143 F.3d at 702 (citation omitted); *Lafave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

The second, subjective, requirement for establishing an Eighth Amendment medical indifference claim mandates a showing of a sufficiently culpable state of mind, or deliberate indifference, on the part of one or more of the defendants. *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S. Ct. 2321, 2325 (1991)). Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979; *Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). Deliberate indifference is a mental state equivalent to subjective recklessness as the term is used in criminal law. *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40, 114 S. Ct. 1970).

Mere negligence on the part of a physician or other prison medical official in treating or failing to treat a prisoner's medical condition, on the other hand, does not implicate the Eighth Amendment and is not properly

the subject of a section 1983 action.  *Estelle,* 429 U.S. at 105-06, 97 S.

Ct. at 292; *Chance,* 143 F.3d at 703.  "Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner."

*Estelle,* 429 U.S. at 106, 97 S. Ct. at 292.  Thus, for example, a physician

who "delay[s] ... treatment based on a bad diagnosis or erroneous

calculus of risks and costs" does not exhibit the mental state necessary

for deliberate indifference.  *Harrison,* 219 F.3d at 139.   If prison officials

consciously delay or otherwise fail to treat an inmate's serious medical

condition "as punishment or for other invalid reasons," however, such

conduct is actionable as deliberate indifference.  *Harrison,* 219 F.3d at

138;  *Kearsey v. Williams,* No. 99 Civ 8646, 2005 WL 2125874, at *5

(S.D.N.Y. Sep. 1, 2005).

Aside from the factually conclusory statement that Dr. Paolano

failed to provide him with treatment for a diagnosed condition, plaintiff

offers no specifics regarding his deliberate indifference claim against Dr.

Paolano.  Little can be gleaned from plaintiff's complaint regarding the

severity of his injuries, and whether they could arise to a level of

constitutional significance.  Also absent from plaintiff's complaint is any

indication of treatment requested, complaints made regarding his

condition, and Dr. Paolano's involvement in plaintiff's care and treatment.

Under these circumstances plaintiff has failed to meet his obligation to set

forth sufficient facts to demonstrate the existence of a plausible medical

indifference claim.  *See Fernandez v. New York City Dep't of Correction*,

No. 08 CV 4294(KMW), 2010 WL 1222017, at * 5 (S.D.N.Y. Mar. 29,

2010); *see also Fransua v. Vadlamudi*, No-08-1715-PR, 2008 WL

4810066, (2d Cir. 2008) (summary order) (dismissing prisoner plaintiff's

claims of medical indifference where he did not allege that any defendants

were aware of serious risks to which they allegedly subjected him) (cited

in accordance with Fed. R. App. P. 32.1); *Hathaway v. Coughlin*, 99 F.3d

550, 553 (2d Cir. 1996) (holding that "mere allegation that treatment at

[prison facility] was insufficient  [is not sufficient for a medical indifference

claim] and that such a claim is, at best, a medical malpractice claim").

Plaintiff's complaint also fails to state a plausible claim of medical

indifference against Dr. Paolano based upon the allegation that he signed

off on a form clearing plaintiff from mess hall duty.  While it appears from

plaintiff's complaint that other prison officials, both at Coxsackie and

elsewhere, at various times have agreed that plaintiff could not meet the

demands of mess hall duty, it should be noted that mere disagreement

among professionals does not in and of itself constitute and establish the existence of a medical indifference claim.  *See Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted); *Amaker v. Kelly*, No. 9:01-CV-877, 2009 WL 385413, at *14-16 (N.D.N.Y. Feb. 9, 2009) (Scullin, S.D.J. and Peebles, M.J.).

Plaintiff's claim of deliberate indifference against defendants Mardon, M. Bailey, Martuscello, Hallenbeck, Perlman, and Schwebler fare no better.  It is alleged that those defendants, none of whom is a medical professional, should have conducted an investigation before determinating that plaintiff was capable of performing in the mess hall.  It appears from plaintiff's complaint that those defendants relied on the professional judgment of Dr. Paolano, a prison physician who, according to plaintiff's complaint, cleared Williams for work in the mess hall.  The fact that those defendants relied upon a medical clearance form signed by a prison doctor, without more, negates a finding that they were deliberately indifferent to plaintiff's condition. *Cooke v. Stern*, No. 9:07-CV-1292, 2010 WL 3418393, at *7 (N.D.N.Y. Aug. 2, 2010) (Baxter, M.J.) (citing *Wilson v. Johnson*, 999 F. Supp. 394, 399 (W.D.N.Y. 1998)), *Report and Recommendation Adopted*, 2010 WL 341399 (N.D.N.Y. Aug. 26, 2010)

(Sharpe, D.J.).

In sum, plaintiff's complaint fails to state a plausible Eighth Amendment claim against the various defendants named.

D.   Leave to Amend

The next issue to be addressed is whether the plaintiff should be afforded leave to amend his complaint in order to cure the deficiencies noted above.  Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

While the court has serious doubts that plaintiff will be able to state a viable Eighth Amendment cause of action based upon the circumstances outlined in his complaint, for the reasons stated in this report, in deference to his *pro se* status I nonetheless recommend that he be afforded one final opportunity to amend in order to attempt to state one

or more plausible claims.  In framing his amended complaint plaintiff

should note that the law in this circuit clearly provides that "complaints

relying on the civil rights statutes are insufficient unless they contain some

specific allegations of fact indicating a deprivation of rights, instead of a

litany of general conclusions that shock but have no meaning."  *Hunt v.*

*Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995 ) (McAvoy, C.J.) (citing *Barr v.*

*Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (other citations omitted));

*Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 U.S. Dist. LEXIS 7136,

at *24-25 (N.D.N.Y. May 22, 1995) (Pooler, D.J.) (citation omitted).  In his

amended complaint, plaintiff therefore must clearly set forth the facts

supporting his claims, including the wrongful acts that give rise to each

claim.  Such an amended complaint, which will replace the existing

amended complaint, must be a wholly integrated and complete pleading

that does not rely upon or incorporate by reference any pleading or

document previously filed with the court, *see Harris v. City of N.Y.*, 186

F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc.*, 25

F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), and should

specifically allege facts indicating the involvement of each of the named

defendants in each of the constitutional deprivations alleged in sufficient

detail to establish the they were tangibly connected to those deprivations. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint, which centers upon his disagreement with the conclusion of prison officials to the effect that he was capable at the relevant times of performing the functions attendant to mess hall duty and defendants refusal to assign him to alternate programming better suited to his liking and his physical condition, fails to state a claim under the Eighth Amendment since prison officials at the facility relied on the professional judgment of Dr. Paolano in determining his ability to perform in that position, and plaintiff's assertions against Dr. Paolano represent nothing more than his disagreement with that doctor's professional judgment. Plaintiff's complaint similarly fails to state a plausible due process claim because he has not alleged the deprivation of any cognizable liberty interest.  Plaintiff's complaint does, however, state a plausible cause of action for deprivation of equal protection as against defendants Mardon and  Bailey, based upon the allegation that they chose not to place plaintiff in alternate programming due to the scars on his face.  Based upon the foregoing, it is hereby respectfully

26

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 14) be GRANTED, in part, and that all claims set forth in plaintiff's complaint, with the exception of his cause of action against defendant Bailey and Mardon alleging deprivation of equal protection, be DISMISSED, with leave to replead within thirty days of any order adopting this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules; and it is further

ORDERED, that the clerk shall correct the court's records to reflect the correct spelling of the names of defendants "Mary Bailey" and "Dr. Paolano", and plaintiff "Wesely Williams".


_____
David E. Peebles
U.S. Magistrate Judge

Dated:          September 3, 2010
                Syracuse, NY



Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Larry TINSLEY, Plaintiff,
v.
Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow Correctional
Facility; Gary Yule, Corrections Officer, Great Meadow
Correctional Facility; and David Roberts, Senior
Counselor, Great Meadow Correctional Facility,
Defendants.
**No. 95-CV-1765 (RSP/DRH).**

March 31, 1997.

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of counsel,
for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a
report-recommendation and order by Magistrate Judge
David R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his

confinement. Report-recommendation, Dkt. No. 24, at
9-10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty of
possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence
were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S. 472,
----, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ---- (1995).
Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin*. I have reviewed the entire
file in this matter, including plaintiff's many submissions,
and I find that he failed to raised any issue of fact to
support an alleged deprivation of his due process liberty
interests. Magistrate Judge Homer's thorough
report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of September
13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

ORDERED that defendants' motion for summary judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT-RECOMMENDATION AND ORDER [FN1]

> FN1. This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

*2 Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by

Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [FN2] and was given a contraband receipt for the cigarette that was removed from his cell.

> FN2. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [FN3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

> FN3. DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); Walker v. Bates, 23 F.3d 652, 654 (2d Cir.1994), cert. denied, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994).

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

#### 1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3-7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[FN4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

> FN4. New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1-.7 (1995).

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995). Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*significant hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir.1995), cert. denied, 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996)* ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir.1996)* (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995), cert. denied, 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996)* (segregation without more implicates no liberty interest); *Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995)*(placement in administrative segregation not atypical and significant in context of life sentence).

*4 Several judges in this district have adopted this position. *See Polanco v. Allan, No. 93-CV-1498, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996)* (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91-CV-510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky, 899 F.Supp. 923, 927 (N.D.N.Y.1995)* (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94-CV-530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94-CV-1119

(N.D.N.Y. Jan. 10, 1996) (Report-Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96-2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91-CV-1445 (N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95-CV-1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996)* (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff's confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth, 88 F.3d 431, 433-34 (7th Cir.1996)* (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain, 77 F.3d 372, 374 n. 3 (11th Cir.1996)* (noting *Sandin* decided by only 5-4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood, 66 F.3d 1097, 1101 (9th Cir.1995)* (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips, 66 F.3d 470, 480 (2d Cir.1995).* It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996); Samuels v. Mockry, 77 F.3d 34, 37-38 (2d Cir.1996); see also Giakoumelos v. Coughlin, 88 F.3d 56, 62 (2d Cir.1996)* (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin, No. 95-CV-1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996)* (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ----, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927-28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ----, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302-05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ----, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock,

including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302-05.[FN5]

> FN5. Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular program offered at an institution. *Cf. Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no right to remain in particular prison created by state law); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ---- - ----, 115 S.Ct. at 2299-2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin.*

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under *Sandin.* Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are

confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897-98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official.[FN6]

> [FN6.] A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251-3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. FN7

> FN7. Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. FN8 In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. FN9 Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

> FN8. In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the

marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

> FN9. Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

**8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656-57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted.[FN10]

FN10. Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in

response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

*9 Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1997.
Tinsley v. Greene

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)
(Cite as: 1997 WL 160124 (N.D.N.Y.))


Not Reported in F.Supp., 1997 WL 160124 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Natch BLACK, Plaintiff,
v.
C. LANSBERG, Corr. Sergeant, Great Meadow C.F.; R.
Atkinson, Program Comm. Chairman, Great Meadow
C.F.; D. Carpenter, Deputy Superintendent for
Programs, Great Meadow C.F.; and Glenn S. Goord,
NYS DOCS Commissioner, Defendants.
**No. 9:06-CV-1243 (GTS/GHL).**

Sept. 29, 2009.

West KeySummary
**Constitutional Law 92** 🔑 **4826**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)11 Imprisonment and Incidents
Thereof
                92k4826 k. Segregation. Most Cited Cases

**Prisons 310** 🔑 **230**

310 Prisons
    310II Prisoners and Inmates
        310II(E) Place or Mode of Confinement
            310k229 Punitive, Disciplinary, or
Administrative Confinement
                310k230 k. In General. Most Cited Cases
Keeping a prisoner in the Special Housing Unit (SHU) for
53 days for refusing assignment to the mess hall as
prisoner had allergies did not violate any due process
liberty interest. The confinement was either normal or less
severe than normal. It was not an atypical and significant
hardship. U.S.C.A. Const.Amend. 14.

Natch Black, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, James Seaman, Esq., Assistant Attorney
General, of Counsel, Albany, New York, for Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prisoner civil
rights action filed by Natch Black ("Plaintiff") against four
employees of the New York State Department of
Correctional Services ("Defendants") are (1) Defendants'
motion for summary judgment (Dkt. No. 17), (2) Plaintiff's
cross-motion for summary judgment (Dkt. No. 19), (3)
United States Magistrate Judge George H. Lowe's
Report-Recommendation recommending that Defendants'
motion be granted and that Plaintiff's cross-motion be
denied (Dkt. No. 31), and (4) Plaintiff's Objections thereto
(Dkt. No. 33). For the reasons set forth below, Plaintiff's
Objections are rejected; Magistrate Judge Lowe's
Report-Recommendation is accepted and adopted in its
entirety; Defendants' motion for summary judgment is
granted; Plaintiff's cross-motion is denied; and Plaintiff's
Complaint is dismissed.

**I. RELEVANT BACKGROUND**

In his Report-Recommendation, Magistrate Judge Lowe
accurately and thoroughly recited both the allegations of
Plaintiff's Complaint and the parties' arguments on
Defendants' motion for summary judgment. (Dkt. No. 31,
at 2-6.) As a result, that recitation is incorporated by
reference herein. In addition, familiarity with the analysis
offered in Magistrate Judge Lowe's
Report-Recommendation is assumed in this Decision and
Order. (Dkt. No. 17-22.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

After Magistrate Judge Lowe filed his Report-Recommendation on March 30, 2009, Plaintiff was afforded an extension of time to file his Objections, which he did on May 21, 2009. (*See* Text Order dated 4/6/09; Dkt. No. 33.) Liberally construed, Plaintiff's Objections advance the following three arguments: (1) Magistrate Judge Lowe erred by failing to understand that Plaintiff enjoyed a procedural due process right under the Fourteenth Amendment in having Defendants' follow the Department of Correctional Services' "Policy, Procedure and Standard for Programing Inmates" (attached at Dkt. No. 19, Part 4, Ex. C); (2) Magistrate Judge Lowe also erred by failing to recognize the several pieces of record evidence establishing that Defendants (admittedly) violated the aforementioned policy, and that they did so without affording him the process he was due before placing him in punitive confinement; and (3) Plaintiff did not consent to having his case be heard by Magistrate Judge Lowe. (*See generally* Dkt. No. 33.)

Defendants filed a response to Plaintiff's Objections on May 26, 2009. (Dkt. No. 34.) Generally, in their response, Defendants advanced the following five arguments: (1) Plaintiff has failed to cite case law contradicting Defendants' argument that the law is that Plaintiff did not enjoy a protected liberty interest, under the procedural Due Process Clause of Fourteenth Amendment, in remaining free from the type of confinement he experienced for only fifty-three days; (2) Plaintiff has adduced no admissible record evidence that he accepted any programs other than two academic programs, nor has he adduced record evidence disputing that he refused to accept the mess hall and utility crew programs; (3) the medical excuse issued by Dr. Albert Paolano was issued in 2005, not 2004, and in any event the medical testing of Plaintiff subsequently conducted revealed that he has no detectable medical allergy to fish or eggs; (4) the response to Plaintiff's Grievance No. GM-40863-06 did not agree with his claim that he had been placed on Limited Privileges Status wrongfully; and (5) Plaintiff has adduced no admissible record evidence that he received back pay for the fifty-two days he spent on Limited Privileges Status (rather, he received back pay for something else). (*See generally id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

**\*2** When specific objections are made to a magistrate judge's report-recommendation, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN1] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See* Brown v. Peters, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], aff'd without opinion, 175 F.3d 1007 (2d Cir.1999).[FN2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See* Batista v. Walker, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

> FN1. On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g.,* Paddington Partners v. Bouchard, 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

FN2. *See also* *Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994)* (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

**B. Standards Governing Motion for Summary Judgment and Motion to Dismiss**

Magistrate Judge Lowe correctly recited the legal standard governing a motion for summary judgment and motion to dismiss. (Dkt. No. 31, at 6-17.) As a result, those legal standards are incorporated by reference herein.

**III. ANALYSIS**

As indicated above in Part I of this Decision and Order, Plaintiff's Objections, even when construed with the utmost of liberality, fail to assert any specific challenge to Magistrate Judge Lowe's recommendations regarding (1) the timeliness of Defendants' motion for summary judgment, (2) Plaintiff's substantive due process claim under the Fourteenth Amendment, (3) his conditions-of-confinement claim under the Eighth Amendment, and (4) his retaliation claim under the First Amendment. (*Compare* Dkt. No. 31 at 17, 19-21 [Report-Recommendation] *with* Dkt. No. 33 [Plf.'s Objections].) Thus, the Court reviews those portions of the Report-Recommendation for only clear error. *See, supra,* Part II .A. of this Decision and Order. After carefully reviewing all of the papers in this action (including Plaintiff's Complaint, the referenced portions of the Magistrate Judge Lowe's Report-Recommendation, and the admissible record evidence), the Court concludes that the referenced portions of the Report-Recommendation are well-reasoned and not clearly erroneous. Indeed, the Court concludes that these portions of the Report-Recommendation would survive even a *de novo* review. As a result, the Court accepts and adopts these portions of the Report-Recommendation for the reasons

stated therein.[FN3]

FN3. The Court notes that, even if Plaintiff possessed a medical excuse during the time in question, that fact would not confer on Plaintiff a right of substantive due process under the Fourteenth Amendment. *See* *Barnes v. Craft,* 04-CV-1269, 2008 WL 3884369, at *5 & n. 39 (N.D.N.Y. Aug.18, 2008)* (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.) ("Even if I were to so construe Plaintiff's Amended Complaint, I would have difficulty finding that the issuance of a DOCS' beard exemption (without the issuance of a court order) created such a right of substantive due process.") (citations omitted).

With regard to the one portion of Magistrate Judge Lowe's Report-Recommendation to which Plaintiff's Objections do specifically challenge-i.e., Magistrate Judge Lowe's recommendation regarding Plaintiff's procedural due process claim under the Fourteenth Amendment-a *de novo* review is appropriate. *See, supra,* Part II.A. of this Decision and Order. After carefully reviewing all of the papers in this action (including Plaintiff's Complaint, the referenced portion of the Magistrate Judge Lowe's Report-Recommendation, the admissible record evidence, Plaintiff's Objections, and Defendants' response), the Court concludes that the referenced portion of the Report-Recommendation is correct in all respects. Magistrate Judge Lowe employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court also accepts and adopts this portion of the Report-Recommendation for the reasons stated therein. The Court would add only two points.

**\*3** First, Plaintiff has no right to not have his case assigned to a magistrate judge for a report-recommendation, under the circumstances. *See* *Dixon v. Leonardo,* 886 F.Supp. 987, 988-89 (N.D.N.Y.1995)* (McAvoy, C.J.) (citations omitted).

Second, the crux of Plaintiff's Objections is his belief that he enjoyed a procedural due process right under the Fourteenth Amendment in having Defendants' follow the

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

Department of Correctional Services' "Policy, Procedure and Standard for Programing Inmates." This belief is mistaken.

This is because Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to United States Constitution and *federal* laws.[FN4] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983.[FN5] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [FN6] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive.[FN7]

> FN4. *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 & n. 137 (N.D.N.Y.2009) (Suddaby, J., adopting Report-Recommendation of Lowe, M.J., on *de novo* review) (collecting cases).

> FN5. *Cusamano,* 604 F.Supp.2d at 482 & n. 138 (collecting cases).

> FN6. See *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

> FN7. See *Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

Of course, it is true that a state may, under certain circumstances, create a liberty interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of certain statutory or regulatory measures. At one point, the Supreme Court held that a state created such a liberty interest if it repeatedly used explicit language of an unmistakably mandatory character in connection with

requiring specific substantive predicates. *Hewitt v. Helms,* 459 U.S. 460, 466-472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). However, that rule created a perverse incentive (1) for inmates to "comb" state regulations for mandatory language upon which to base claims of entitlements, (2) for courts to draw negative inferences from mandatory language in state regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion." *Sandin v. Connor,* 515 U.S. 472, 477-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As a result, the Supreme Court changed the rule, shifting the courts' focus from the language of a particular state law or regulation to the nature of the deprivation. *Sandin,* 515 U.S. at 483-484.[FN8] Specifically, in 1995, the Supreme Court held that, while states may still under certain circumstances create a liberty interest protected by the Fourteenth Amendment's Due Process Clause, the interest "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-484.[FN9]

> FN8. See also *Cusamano,* 604 F.Supp.2d at 482 & n. 139 (collecting cases).

> FN9. The Court notes that the possession of a medical excuse also does not create a protected liberty interest under the procedural due process clause of the Fourteenth Amendment. *See Barnes,* 2008 WL 3884369, at *5 & n. 35 (finding that "the fact that he possessed a DOCS-issued beard exemption does not create a protected liberty interest for purposes of a procedural due process claim.").

**\*4** This is the point of law that Magistrate Judge Lowe was reciting on pages 18 and 19 of his Report-Recommendation, and that Plaintiff glossed over in his Objections. Simply stated, Defendants may or may not have violated the Department of Correctional Services' "Policy, Procedure and Standard for Programing Inmates." But that question is immaterial. Rather, what matters (for purposes of Plaintiff's procedural due process claim) is that he served only fifty three days in the Great Meadow Correctional Facility's Special Housing Unit ("SHU")

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

under what were either normal SHU conditions or less-severe-than-normal SHU conditions. As a result, he was "due" no process of which he could have been deprived, under the Fourteenth Amendment.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Lowe's Report-Recommendation (Dkt. No. 31) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 17) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 19) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED.***

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Natch Black alleges that four employees of the New York State Department of Correctional Services ("DOCS")-Ronald W. Atkinson, C. Lansberg, D. Carpenter, and Glenn S. Goord, Commissioner of DOCS-violated his constitutional rights when they confined him to the Special Housing Unit ("SHU") for 53 days without a hearing after he refused to accept a program placement. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 17.) For the reasons that follow, I recommend that Defendants' motion be granted.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

Plaintiff's complaint (Dkt. No. 1) alleges that:

On May 31, 2006, Plaintiff was on the waiting list for a GED class and an electrical class at Great Meadow Correctional Facility. (Dkt. No. 1 at 8, ¶ 1 FN1.) Defendant Atkinson, the Program Committee Chairman, suggested that Plaintiff take a program assignment while he waited for his educational opportunities to become available. Plaintiff chose a porter assignment. Defendant Sgt. Lansberg suggested that Plaintiff instead take mess hall duty. (Dkt. No. 1 at 8, ¶ 2.) Plaintiff refused due to his food allergies. (Dkt. No. 1 at 8, ¶ 3.) He was also fearful of working in the mess hall due to the frequent stabbings that occurred there. (Dkt. No. 1 at 10, ¶¶ 12-13.) Defendant Lansberg cussed at Plaintiff and told him that if he did not take the mess hall assignment, he would be sent to the Special Housing Unit ("SHU"). (Dkt. No. 1 at 8, ¶ 4.)

> FN1. The page numbers for Plaintiff's complaint refer to those assigned by the ECF system.

**\*5** On June 1, 2006, Plaintiff was moved from the general population to the SHU, where he remained for 53 days. (Dkt. No. 1 at 8, ¶ 5.) Plaintiff was not given a hearing before being placed in the SHU. *Id.*

Plaintiff wrote to Defendant Carpenter, the Deputy Superintendent for Programs, and informed him that he was eager for his educational opportunities but was willing to take any program other than the mess hall. (Dkt. No. 1 at 8-9, ¶ 6.) In response, Plaintiff received a memorandum from Defendant Atkinson informing him that he had been placed on Limited Privilege Status. (Dkt. No. 1 at 9, ¶ 7.) This status restricted Plaintiff's yard, television, movies, commissary, pay, telephone, regular library, evening program, and packages privileges. Under this status, Plaintiff was not allowed to visit the law library or the inmate grievance resolution office. (Dkt. No. 1, Ex. A.) This placement was a result of a DOCS policy mandating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

that inmates who refuse programs be placed on Limited Privilege Status. (Dkt. No. 1 at 10, ¶ 14.)

On July 10, 2006, Plaintiff was scheduled to meet with the program committee. However, the meeting was cancelled because he had been put on keep-lock status while in the SHU. (Dkt. No. 1 at 9, ¶ 9.)

On July 19, 2006, Plaintiff met with the program committee. As he entered the room, Defendant Lansberg said "Nothing changed, you take the mess hall or drag your ass back to [the SHU]." Plaintiff renewed his objections to the mess hall placement and requested that the committee contact the medical staff. Defendant Lansberg got on the telephone. Plaintiff heard him say "Right, right, only if he digests it, right. Anything that he can't be around?" (Dkt. No. 1 at 9, ¶ 10.)

After Defendant Lansberg got off the telephone, Plaintiff was brought to the infirmary, where a doctor instructed that Plaintiff not be placed in the mess hall. (Dkt. No. 1 at 9-10, ¶ 11.)

Plaintiff was released from the SHU on July 22, 2006. (Dkt. No. 1 at 9-10, ¶ 11.)

Plaintiff requests $25,000 in compensatory damages and $15,000 in punitive damages. (Dkt. No. 1 at 14.)

**B. Summary of Grounds in Support of Defendants' Motion**

Defendants argue that (1) Plaintiff's procedural due process rights were not violated when he was confined without a hearing for refusing a program assignment; (2) Plaintiff's placement on Limited Privileges Status does not state an Eighth Amendment conditions of confinement claim; (3) Plaintiff's complaint fails to state a substantive due process claim; (4) Plaintiff's complaint does not state a retaliation claim; (5) Plaintiff's complaint fails to allege facts plausibly suggesting that Defendants Goord or Carpenter were personally involved in any of the constitutional violations alleged; and (6) Defendants are

protected by the doctrine of qualified immunity. (Dkt. No. 17-14.)

**C. Summary of Plaintiff's Response to Defendants' Arguments**

Plaintiff opposes Defendants' motion for summary judgment and cross-moves for summary judgment in his favor. (Dkt. No. 19.) He argues that: (1) Defendants are not entitled to qualified immunity; (2) Defendants violated a direct medical order, dated July 24, 2005, stating that Plaintiff should not work in the mess hall; (3) Defendants violated DOCS directives and 7 NYCRR 301.1-301.7 when they placed Plaintiff on Limited Privileges Status in the SHU, failing to consider less restrictive alternatives than confinement, thus violating Plaintiff's due process rights; (4) Defendants' placed Plaintiff on Limited Privileges Status wrongfully, as evidenced by the Inmate Grievance Program Committees ("IRGC") decision to award back pay to Plaintiff for the time he was "wrongfully placed on limited privileges"; (5) Defendants were deliberately indifferent and possessed the requisite culpable mental state to support Plaintiff's Eighth Amendment claims; (6) Defendants Goord and Carpenter had sufficient personal involvement to warrant inclusion in this action: Defendant Goord created the DOCS Limited Privileges Status policy and Defendant Carpenter failed to implement and enforce the policy; and (7) Defendants' motion for summary judgment was filed March 31, 2008 instead of the March 30, 2008 date that was set for motions to be filed, thereby making it untimely.

**D. Summary of Defendants' Reply**

**\*6** In reply, Defendants argue that: (1) Plaintiff was rightfully placed on limited privileges status because he denied any and all program assignments offered to him, including a position on the utility crew; and he did not have a food allergy of which Defendants were aware; (2) Plaintiff has not stated a conditions of confinement or medical indifference claim under the Eighth Amendment, because Plaintiff cannot medically establish a serious need, as the record shows that Plaintiff does not have food allergies; (3) Defendant Atkinson did not violate any identifiable DOCS policy or procedure when he assigned

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

Plaintiff to Limited Privileges Status; (4) The IRGC's recommendation was not accepted by the superintendent or CORC and in any case does not assist in determining the occurrence of a constitutional violation; and (5) Defendants' motion for summary judgment was timely pursuant to Federal Rule of Civil Procedure 6. (Dkt. No. 21-18.)

**E. Summary of Plaintiff's Sur-Reply**

In response to Defendants' reply, Plaintiff argues that: (1) Plaintiff was not offered any alternate programs, including a utility crew assignment, and refused only programs that would affect his health; (2) the records show that Plaintiff has a serious food allergy; (3) Plaintiff received back pay for the time he was on Limited Privileges Status, supporting his claim that he was wrongfully placed on Limited Privileges Status; and (4) Defendants failed to follow the proper guidelines when they placed him on Limited Privileges Status in the SHU. (Dkt. No. 23.)

**F. Summary of Defendants' Sur-sur Reply**

In response to the Plaintiff's sur-reply, Defendants argue that Plaintiff received back pay for a different time period than the period at issue in this case. (Dkt. No. 26.)

**G. Summary of Plaintiff's Sur-sur-sur Reply**

In response to the Defendants' sur-sur reply, Plaintiff argues that he was compensated back pay for the time period at issue in this case. (Dkt. No. 28.)

**II. APPLICABLE LEGAL STANDARDS**

**A. Legal Standard Governing Motions for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material FN2 fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.FN3

FN2. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN3. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

If the moving party meets its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FN4 The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." FN5 Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." FN6

FN4. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

FN5. *Matsushita,* 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ....").

FN6. *Ross v. McGinnis,* 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar.29, 2004) [internal quotations omitted] [emphasis added].

**B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

*7 To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273-74 (2d Cir.1968) [citations omitted]; *accord, Katz v. Molic,* 128 F.R.D. 35, 37-38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte,* address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.FN7 For these reasons, it is appropriate to briefly summarize the recently clarified legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

FN7. The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is

immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); FN8 or (2) a challenge to the legal cognizability of the claim.FN9

FN8. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN9. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.

... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73,

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN10] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN11] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN12]

FN10. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN11. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN12. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN13] However, it is well established that even this liberal notice pleading standard "has its limits."[FN14] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[FN15]

FN13. See, e.g., Swierkiewicz, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN14. 2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed.2003).

FN15. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); accord, Dura Pharm., 125 S.Ct. at 1634-1635, Christopher v. Harbury, 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234-235 (2d Cir.2004), Gmurzynska v. Hutton, 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y., No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-Swierkiewicz decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, see Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after Swierkiewicz, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). See Khan v. Ashcroft, 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of Domond v. INS, 244 F.3d 81 [2d Cir.2001],

after that case was "implicitly overruled by the Supreme Court" in INS v. St. Cyr, 533 U.S. 289 [2001] ).

Most notably, in Bell Atlantic Corporation v. Twombly, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 [FN16] (2007).[FN17] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the plausibility of an actionable claim. Id. at 1965-74.

FN16. All references to Bell Atlantic will cite the Supreme Court Reporter rather than the United States Reports. The United States Reports version of the case does not include page numbers at this time.

FN17. The Court in Bell Atlantic further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... Conley, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Bell Atlantic, 127 S.Ct. at 1969.

*8 More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. Id. at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

contain at least "some factual allegation[s]." *Id* . [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id* .

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ).[FN18]

> FN18. *See, e.g., Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008)* (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that *"Twombly requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....'") [internal citation omitted]; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." ) [emphasis in original].

The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude

normally afforded *pro se* litigants).[FN19]

> FN19. *See, e.g., Jacobs v. Mostow, 281 F. App'x 85, 87 (2d Cir. March 27, 2008)* (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp., 521 F.3d 202, 215-16 (2d Cir.2008)* (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Rule 8(a) (2). *Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)* [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson, 355 U.S. 41, 47 [1957] ).* That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[FN20] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

> FN20. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and Bell Atlantic, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was still in need of treatment for [the] disease." Id. at 2200. While Erickson does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The Erickson decision had to do with only the first element, not the second element. Id. at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. Id. This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. See, e .g., Rose v. Alvees, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); Verley v. Goord, 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); Johnson v. Wright, 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); McKenna v. Wright, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); Carbonell v. Goord, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y.

June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.[FN21] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN22] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

FN21. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN22. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*9** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN23] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[FN24] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.[FN25] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN26] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[FN27]

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

FN23. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN24. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN25. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN26. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended

complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN27. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN28] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN29] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even pro se civil rights plaintiffs must follow.[FN30] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."

> FN28. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

> FN29. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

> FN30. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested

that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

## III. ANALYSIS

### A. Timeliness of Defendants' Motion

Plaintiff argues that Defendants' motion is untimely because it was filed on March 31, 2008, one day after the dispositive motion deadline expired. (Dkt. No. 19 at 13-14.) Plaintiff is incorrect. The dispositive motion deadline in this case was March 30, 2008, which was a Sunday. (Dkt. No. 14.) When the last day of a period for filing papers is a Sunday, the party's time to act is extended to the next day that is not a Saturday, Sunday, or legal holiday. Fed.R.Civ.P. 6(a)(3). Defendants filed their motion on Monday, March 31, 2008, which was before the end of the next day that was not a Saturday, Sunday, or legal holiday. Therefore, their motion was timely pursuant to Federal Rule of Civil Procedure 6(a).

### B. Procedural Due Process

The complaint asserts that Defendants violated Plaintiff's procedural due process rights by limiting his privileges

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

and placing him in the SHU when he refused a work assignment in the mess hall. (Dkt. No. 1 at 13.) Defendants argue that (1) Plaintiff was not entitled to procedural due process because he was confined for only 53 days; and (2) even if Plaintiff was entitled to procedural due process, he received all of the process that was due. (Dkt. No. 17-14 at 1-3.) Defendants are correct.

**\*10** In order to state a claim for violation of his procedural due process rights, Plaintiff must show that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). The issue, then, is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the ... segregation differ from other routine prison conditions and the duration of the ... segregation compared to discretionary confinement." *Palmer,* 364 F.3d at 64. Where a prisoner has served less than 101 days in segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions [FN31]." *Palmer,* 364 F.3d at 65. For confinements of an "intermediate duration-between 101 and 305 days-development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer,* 364 F.3d at 64-65. Segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a

term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer,* 364 F.3d at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000)).

> FN31. "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

Here, Plaintiff served 53 days in the SHU. Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions. The conditions of the Limited Privilege Program, as described in Exhibit A to Plaintiff's verified complaint, are not more severe than normal SHU conditions. Compare *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1999) (plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer,* 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler,* 209 F.App'x 14 (2d Cir.2006) (plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement). Therefore, Plaintiff was not deprived of a protected liberty interest and I recommend that Defendants' motion for summary judgment of Plaintiff's procedural due process claim be granted.

**C. Substantive Due Process**

**\*11** The complaint asserts that Defendants violated Plaintiff's right to substantive due process. (Dkt. No. 1 at 13.) Defendants argue that this claim must be dismissed because (1) Plaintiff has not asserted a cognizable liberty interest; and (2) there is no genuine issue of material fact that Defendants' actions were arbitrary,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

conscience-shocking, or oppressive. (Dkt. No. 17-14 at 5-6.) Defendants are correct.

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process. In *Sandin,* the Supreme Court provided only two examples: the transfer from prison to a mental hospital and the involuntary administration of psychotropic drugs. *Sandin,* 515 U.S. at 479 n. 4, 484. Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin,* No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles,* No. 85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

Here, as discussed above, Plaintiff has not asserted a cognizable liberty interest. Moreover, Plaintiff has not alleged and the evidence does not raise a genuine issue that Defendants' conduct was sufficiently arbitrary, conscience-shocking, or oppressive to implicate substantive due process. Therefore, I recommend that the Court grant Defendants' motion for summary judgment dismissing Plaintiff's substantive due process claim.

**D. Conditions of Confinement**

The complaint alleges that Defendants violated Plaintiff's Eighth Amendment right to adequate prison conditions by limiting his privileges and placing him in the SHU when he refused a work assignment in the mess hall. (Dkt. No. 1 at 11-12, ¶¶ 18-27.) Defendants argue that placement on Limited Privileges Status is not sufficiently serious to provide a basis for an Eighth Amendment conditions of confinement claim. (Dkt. No. 17-14 at 3-4.) Defendants are correct.

Generally, to prevail on a claim of inadequate prison

conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious;* and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Murray,* 371 F.Supp.2d 361, 370 (W.D.N.Y.2005). The Second Circuit has held that the restrictions that come with being placed on Limited Privilege Status are not in themselves "sufficiently serious to provide a basis for an Eighth Amendment claim." *Rivera v. Senkowski,* 62 F.3d 80, 85 (2d Cir.1995). Therefore, I recommend that the Court grant Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment conditions of confinement claim.

**E. Retaliation**

*12 The complaint alleges that Defendants placed Plaintiff on Limited Privileges Status for "retaliatory reasons." (Dkt. No. 1 at 11, ¶ 21.) Defendants argue that the complaint fails to state a claim for retaliation. (Dkt. No. 17-14 at 6-7.) Defendants are correct.

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)).

Here, Plaintiff has not alleged that he engaged in any constitutionally protected speech or conduct, such as filing a grievance. His complaint does not list retaliation as one of his causes of action and his opposition papers do not discuss retaliation. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of any retaliation claim.

**F. Personal Involvement and Qualified Immunity**

Defendants argue that the undisputed facts show that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3181111 (N.D.N.Y.)
(Cite as: 2009 WL 3181111 (N.D.N.Y.))

Defendants Goord and Carpenter were not personally involved in any alleged constitutional violations and that all Defendants are entitled to summary judgment. (Dkt. No. 17-14 at 8-10.) In light of my finding that Defendants are entitled to summary judgment dismissing each of Plaintiff's claims on the merits, I decline to address these arguments.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 17) be **GRANTED;** and it is

**RECOMMENDED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 19) be **DENIED.**

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [FN32]

> FN32. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the

hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

N.D.N.Y.,2009.
Black v. Lansberg
Slip Copy, 2009 WL 3181111 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John R. ATKINSON, III, Plaintiff,
v.
Brian FISCHER, Acting Commissioner, N.Y. State
Department of Correctional Services; John J. Donelli,
Superintendent, Bare Hill Correctional Facility; Dr. Ira
Weissman, Facility Physician, Bare Hill Correctional
Facility, Defendants.
**No. 9:07-cv-00368 (GLS/GHL).**

Sept. 25, 2009.

West KeySummary

**Prisons 310** 🗝 **220**

310 Prisons
    310II Prisoners and Inmates
        310II(E) Place or Mode of Confinement
            310k215 Nature of Offense, Offender, or
Sentence
                310k220 k. Disability or Illness. Most Cited
Cases

**Sentencing and Punishment 350H** 🗝 **1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
An inmate failed to state an Eighth Amendment claim for
deliberate indifference when he was assigned a top bunk
placement as there were no facts available to prison
officials from which they could have drawn the inference
that he required a bottom bunk placement upon his
transfer to their facility. It was undisputed that his transfer

paperwork made no mention of requiring a bottom bunk
bed. The inmate asserted he had reported vertigo to
physicians but that information did not appear on his
transfer records. Prison officials placed him into a bottom
bunk after he fell from the top bunk. U.S.C.A.
Const.Amend. 8; 42 U.S.C.A. § 1983; Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

John R. Atkinson, III, Bayport, NY, pro se.

Hon. Andrew Cuomo, New York Attorney General,
Steven H. Schwartz, Assistant Attorney General, of
Counsel, Syracuse, NY, for the Defendants.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Steven H. Schwartz, Esq., of Counsel,
Albany, NY, for Defendants.

*MEMORANDUM-DECISION AND ORDER*

GARY L. SHARPE, District Judge.

**I. *Introduction***

*1 The above-captioned matter comes to this court
following a Report-Recommendation and Order (R & R)
by Magistrate Judge George H. Lowe, filed July 10, 2009.
(Dkt. No. 44.) The R & R [FN1] recommended that
defendants' motion for summary judgment be granted in its
entirety. Pending are Atkinson's objections to the R & R.
(Dkt. No. 45.) For the reasons that follow, the R & R is
adopted in its entirety.

FN1. The Clerk is directed to append the R & R
to this decision, and familiarity therewith is
presumed.

**II. *Background***

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

John R. Atkinson, III, a former inmate at Bare Hill Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights when he was: (1) assigned to a top bunk despite a physical impairment allegedly entitling him to a bottom bunk; [FN2] (2) assigned to a job requiring manual labor despite his impairment; denied adequate medical care; and (4) discriminated against in the provision of medical care. (*See generally* Am. Compl., Dkt. No. 7.) Defendants moved for summary judgment, arguing *inter alia* that Atkinson failed to allege defendants' personal involvement in any unlawful conduct, and that Atkinson's claims regarding bunk placement, job assignment, and inadequate medical care are meritless.

> FN2. Atkinson was transferred from Downstate Correctional Facility to Bare Hill Correctional Facility in October 2005. (*See* Am. Compl. at ¶¶ 8, 10, Dkt. No. 7.) Atkinson has conceded that his transfer paperwork made no mention of him needing a bottom bunk. (*See* Objections at ¶ 4(a), Dkt. No. 45.)

On July 10, 2009, Magistrate Judge Lowe recommended dismissal of all of Atkinson's claims. The court will now review the R & R and the objections raised by Atkinson.

### III. *Standard of Review*

Before entering final judgment, this court routinely reviews all report-recommendations in cases it has referred to a magistrate judge. If a party has objected to specific elements of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations de novo. *See Almonte v. N.Y. State Div. of Parole,* No. 04-cv-484, 2006 WL 149049, at *6-7 (N.D.N.Y. Jan.18, 2006).* In those cases where no party has filed an objection, or only a vague or general objection has been filed, this court reviews the magistrate judge's findings and recommendations for clear error. *See id.*

### IV. *Discussion*

#### A. *Bunk Placement Claim*

In recommending the dismissal of Atkinson's bunk placement claim, Judge Lowe explained that "there were no facts available to Defendants from which they could have drawn the inference that Plaintiff required a bottom bunk placement upon his transfer to Bare Hill Correctional Facilty" and that there "is no evidence that Defendants actually drew that inference." (*See* R & R at 20, Dkt. No. 44.) Atkinson responds that although defendants may not have initially known of his need for a bottom bunk, "other exhibits show that when the *facility* was made aware of the need for a bottom bunk ... it took two years to get it." (*See* Objections at ¶ 4(a), Dkt. No. 45 (emphasis added).) This two-year delay, he claims, "meets the deliberate indifference standard." (*Id.* at ¶ 4(g).) The court will review this portion of the R & R de novo. *See Almonte,* 2006 WL 149049, at *6-7.*

*2 Upon de novo review, the court concurs with Judge Lowe's findings as to Atkinson's bunk placement claim. Initially, Atkinson's claim that it took the facility two years to provide a bottom bunk is belied by the record.[FN3] Moreover, even crediting Atkinson's argument that the facility knew of and failed to address his need for a bottom bunk, there is, as Judge Lowe explained, no evidence that defendants were personally aware of that need or that they deliberately disregarded it. Accordingly, the court adopts the portion of the R & R dismissing Atkinson's bunk placement claim.

> FN3. CORC's records, as submitted by Atkinson, indicate that Atkinson, despite having no medical need for one, received a bottom bunk no later than December 12, 2006, less than one year after his January 16, 2006 injury. (*See* Am. Compl. at 28, Dkt. No. 7.) This was also less than two years from his October 2005 transfer to Bare Hill. (*See id.* at ¶ 10.)

#### B. *Job Assignment*

Judge Lowe next recommended the dismissal of Atkinson's job assignment claim, explaining that "there is no evidence ... that any of the named Defendants were involved at all in the decision to assign Plaintiff to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

porter job, much less that in doing so they were deliberately indifferent." (R & R at 22, Dkt. No. 44.) In response, Atkinson contends that he was assigned to the porter job "after the *facility* knew Plaintiff was injured," thereby "showing deliberate indifference." (Objections at ¶ 4(e), Dkt. No. 45 (emphasis added).) The court will review this portion of the R & R de novo.

Upon de novo review, the court concurs with Judge Lowe's findings as to Atkinson's job assignment claim. Even crediting Atkinson's claim that the facility knew of his injury prior to the job assignment, there is no evidence that defendants were personally aware of the injury or involved in assigning the job to Atkinson. Accordingly, the court adopts the portion of the R & R dismissing Atkinson's job assignment claim.

### C. Inadequate Medical Care Claim

Judge Lowe next recommended the dismissal Atkinson's medical care claim. (*See* R & R at 25, Dkt. No. 44.) He found that while the delays Atkinson experienced in receiving medical attention were "somewhat troubling," they did not rise to the level required by the "deliberate indifference" standard. (*Id.* at 24.) Despite the imperfections of the system, he explained, "Plaintiff was evaluated by medical personnel frequently, prescribed pain medication, and given X-rays," and that "Dr. Ferrari and Dr. Weissman periodically examined him and reviewed his medical records." (*Id.* at 25.)

Atkinson's objections to this conclusion are somewhat unclear. He appears to claim only that Judge Lowe mischaracterized certain time periods related to his injury and treatment. Specifically, Atkinson identifies three treatment dates set forth in the "Background" section of the R & R and details the number of months that had passed between the time of his injury and each of those three dates. (*See* Objections at ¶ 4(c), (d), (f), Dkt. No. 45 .) The court is unsure of what Atkinson is attempting to show with these statements. Upon comparing the time spans stated in Atkinson's objections with the chronology of Atkinson's treatment set out by Judge Lowe in the R & R, there is no meaningful discrepancy .[FN4] Moreover, Judge Lowe specifically acknowledged these delays and weighed their significance in drawing his final conclusion.

(*See* R & R at 23-25, Dkt. No. 44.) And even if the medical care and treatment provided to Atkinson were in some way deficient, there exists no evidence in the record that defendants were in any way personally involved with providing or withholding that care and treatment.[FN5] Accordingly, the court adopts the portion of the R & R dismissing Atkinson's medical care claim. (*See* R & R at 25, Dkt. No. 44.)

FN4. The only discrepancy is one of computation. In his objections, Atkinson identifies a portion of the R & R which states that Dr. Weismann recommended physical therapy for Atkinson on January 31, 2007. The record indicates that this date is correct, and Atkinson does not appear to challenge its accuracy. Instead, after identifying this date in his objections, Atkinson states, *"Two years* after injury." (*See* Objections at ¶ 4(f), Dkt. No. 45 (emphasis in original).) Because Atkinson suffered his injury on January 16, 2006, a year and fifteen days prior to Dr. Weismann's recommendation, the two-year claim is erroneous and appears to be little more than an error in computation.

FN5. In his objections, Atkinson states that defendants Fischer and Donelli are personally involved because they were informed of the delays in Atkinson's medical treatment, yet did nothing to remedy it. (Objections at ¶ 4(I), Dkt. No. 45.) As noted above, however, there is no evidence that either defendant personally knew of or was involved with the delays Atkinson experienced.

**\*3** Finally, Atkinson has not objected to the remaining portions of the R & R. After review of those portions for clear error, the court finds no error and adopts the R & R's recommendations as to those portions.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Lowe's July 10, 2009 Report-Recommendation and Order is adopted in its

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

entirety; and it is further

**ORDERED** that the Clerk provide copies of this Decision and Order to the parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff John R. Atkinson III alleges that Defendants Brian Fischer (the commissioner of the New York State Department of Correctional Services), John J. Donelli (the superintendent of Bare Hill Correctional Facility), and Dr. Ira Weissman (a physician at Bare Hill) violated his constitutional rights by assigning him to a top bunk, assigning him to a job that required physical exertion, providing inadequate medical care, and providing preferential medical treatment to Jewish inmates. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 41.) For the reasons that follow, I recommend that Defendants' motion be granted.

### I. BACKGROUND

Plaintiff entered the New York State Department of Correctional Services ("DOCS") system on September 28, 2005. He was initially housed at Downstate Correctional Facility. (Dkt. No. 7 at ¶ 8.) Plaintiff alleges that he completed a brief medical history at Downstate in which he stated that he suffered from asthma, vertigo, and dizziness associated with his medication. (Dkt. No. 7 at ¶ 9.)

Plaintiff was transferred to Bare Hill Correctional Facility

in October 2005. (Dkt. No. 7 at ¶ 10.) He alleges that he was assigned to a top bunk "even though history from Down[s]tate Facility should have classified him as a 'Medical Bottom.' " (Dkt. No. 7 at ¶ 11.) Plaintiff's transfer paperwork [FN1] made no mention of Plaintiff requiring a bottom bunk. (Dkt. No. 41-3, Defendants' Rule 7.1(a)(3) Statement at ¶ 8; Dkt. No. 43-2, Plaintiff's Opposition to Motion for Summary Judgment at ¶ 8.)

FN1. Defendants' motion for summary judgment is supported by prison records, including grievance records and medical records. Motions for summary judgment must be supported by admissible evidence. *Major League Baseball Properties, Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008). Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule. Fed.R.Evid. 802. Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule. That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902. Fed.R.Evid. 803(6). Here, none of the records are supported by any affidavit and have not been certified. Therefore, the records are not technically admissible. *See Cummings v. Roberts,* 628 F.2d 1065, 1068 (8th Cir.1980). I have considered them, however, because Plaintiff relied on many of the same records in his complaint and in his opposition to the motion for summary judgment. I caution defense counsel that medical and grievance records should, in the future, be properly authenticated and accompanied by an affidavit or certification that complies with Rule 803.

On January 16, 2006, Plaintiff fell from the top bunk.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

(Dkt. No. 41-3 at ¶ 2.) He hit his head and neck. (Dkt. No. 7 at ¶ 12.) Plaintiff was escorted to the infirmary, where he was given ibuprofen and sent back to his cell. (Dkt. No. 7 at ¶¶ 14-15.) An inmate injury report was prepared, in which it was noted that there was no swelling, that the skin was intact, that Plaintiff was alert and oriented, that Plaintiff's pupils were equal and reacted to light, and that Plaintiff denied pain or injuries in his extremities or trunk. (Dkt. No. 41-4, Defendants' Ex. A.)

**\*4** Sometime after the fall, Plaintiff was assigned to a bottom bunk. (Dkt. No. 7 at 28 FN2.)

> FN2. This exhibit to Plaintiff's complaint is not labeled with a letter. The page number in the citation refers to the page number assigned by the Court's electronic filing system.

Within a few days of the fall, Plaintiff alleges that he began experiencing severe headaches, neck aches, and dizziness. (Dkt. No. 7 at ¶ 16.) Plaintiff requested x-rays of his neck. (Dkt. No. 7 at ¶ 19.)

The chronology of Plaintiff's requests for x-rays and his receipt of results is somewhat unclear. Plaintiff alleges that his neck was not x-rayed until five months after the fall. (Dkt. No. 7 at ¶ 21 .) Attachments to the complaint indicate that Plaintiff had requested x-rays before he fell, and that he received at least some x-ray results within a few days of the fall. For instance, in a grievance filed by Plaintiff on the day after his fall, Plaintiff stated that he had waited four months for an x-ray, that he had been told it would be reviewed in 10 days, and that it had been 30 days. Plaintiff also complained that he was very dizzy and experienced headaches every day. He stated that he "was told I would be seeing a doctor" and requested a response in writing "as to how long I have to wait to see a physician." (Dkt. No. 7, Ex. A.) Plaintiff was instructed to come to sick call, where the nurse would give him the results of his x-ray. There was no response regarding his request to see a doctor. *Id.* Plaintiff's medical records show that he was given the results of the x-ray on January 20, 2006. (Dkt. No. 41-11, Defendants' Ex. H at 16.)

Plaintiff's medical records show that he was seen on January 31, 2006. At that time he complained of headaches and dizziness since his fall. It was noted that he was already scheduled to see the doctor. (Dkt. No. 41-11, Defendants' Ex. H at 15.)

On February 1, 2006, Plaintiff wrote another letter asking when he would see a doctor. (Dkt. No. 7, Ex. A1.) The response was that he was "scheduled to see the facility doctor ... We do not give exact dates for call outs, sorry!" *Id.*

On February 2, 2006, Plaintiff filed a "Request for Interview or Information." In the request, he stated that he had been told that there was no history of vertigo listed in his charts. He stated that he had compiled a more complete medical history. (Dkt. No. 7, Ex. B.)

Plaintiff's medical records show that on March 21, 2006, he complained of pain in the back of his neck. (Dkt. No. 41-11, Defendants' Ex. H at 15.)

On April 1, 2006, Plaintiff filed a grievance. (Dkt. No. 7 at ¶ 22.) He stated that when he fell out of his bunk, he had been placed on the "infamous 5 plus month waiting list to see the doctor ." He stated that his neck cracked each time he turned it and that he suffered daily headaches and dizziness. He complained that the only care he had received was motrin and ibuprofen. He stated that a nurse at sick call felt his neck and opined that there was something wrong with it and that he would probably be recommended for physical therapy. (Dkt. No. 7, Ex. C.)

**\*5** Plaintiff's medical records show that on April 6, 2006, Plaintiff was seen by Dr. Ferrari, who ordered an x-ray of Plaintiff's spine. (Dkt. No. 41-11, Defendants' Ex. H at 14.)

In response to Plaintiff's April 1, 2006, grievance, Defendant Donelli stated that Plaintiff had been evaluated by a doctor on April 6, 2006. Donelli noted that "[x]-rays ordered at that time reveal degenerative changes at C6 and C7. No treatment was ordered at that time." (Dkt. No. 7 at ¶ 22, Ex. E.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

Plaintiff's medical records show that on June 2, 2006, Plaintiff complained of stiffness and pain in his neck that had lasted for several months. He claimed that his niece, who is a physical therapist, assessed his neck as being "distorted." Plaintiff was scheduled to see a doctor. (Dkt. No. 41-11, Defendants' Ex. H at 13.)

Plaintiff's medical records show that on July 21, 2006, Plaintiff complained of neck pain and stated that he had had some relief from ibuprofen. He was told to report to nurse sick call. A doctor's review regarding ibuprofen was ordered. (Dkt. No. 41-11, Defendants' Ex. H at 12.)

On August 11, 2006, Plaintiff filed a "Request for Interview or Information." He stated that since receiving Defendant Donelli's response to his April 1, 2006, grievance, he had been to the infirmary three times. Each time he was denied pain medication and told that a prescription had been ordered for him. He asked "when something is going to be done for me with regards to an injury I sustained at this facility?" (Dkt. No. 7, Ex. I.) On August 14, 2006, staff responded that Plaintiff was scheduled to see the doctor "very soon." *Id.*

Defendant Dr. Weissman examined Plaintiff on August 14, 2006. Plaintiff had pain on neck flexing and minimal tenderness elsewhere. Based on the examination and Plaintiff's medical record, Dr. Weissman diagnosed Plaintiff with moderate to severe degenerative disc space disease. Dr. Weissman prescribed Naprosyn (an anti-inflammatory drug), Robaxin (a muscle relaxant), and lab work. (Dkt. No. 41-15, Weissman Aff. at ¶ 6.) Plaintiff alleges that Dr. Weissman told Plaintiff to notify him if there were any adverse side effects or if the medication failed to relieve Plaintiff's symptoms. (Dkt. No. 7 at ¶¶ 26-27.)

Plaintiff's medical records show that on September 6, 2006, Plaintiff reported that the medication was not giving him any relief. He was scheduled for a doctor's call out. (Dkt. No. 41-11, Defendants' Exhibit H at 12.)

Plaintiff's medical records show that on September 19, 2006, Plaintiff again complained of constant neck pain and stated that the medications were not effective. The medical

record states that Plaintiff "is scheduled to see MD." (Dkt. No. 41-11, Defendants' Ex. H at 11.)

In September 2006, Plaintiff was assigned a job that required him to sweep, mop, and shovel snow. The job caused him physical pain and he filed a grievance requesting a new assignment. (Dkt. No. 7 at ¶ 41, Ex. J.) The grievance was denied by R. Donaldson. The response stated that Plaintiff needed "to contact medical in order to be evaluated for potential restrictions. Without standing restrictions, [Plaintiff] must program as instructed. Failure to program may result in disciplinary sanctions." (Dkt. No. 7, Ex. L.)

**\*6** On October 4, 2006, Plaintiff wrote to Dr. Lester Wright, the Chief Medical Officer, asking to be reclassified to a bottom bunk and limited work status. (Dkt. No. 7, Ex. H.) Dr. Wright's office responded that Plaintiff was "approved to see the facility physician" and that it "appears that your medical needs are being met." (Dkt. No. 7 at 26 FN3.) A month later, Dr. Wright's office sent Plaintiff an identical letter. (Dkt. No. 7 at 27 FN4.)

> FN3. This exhibit to Plaintiff's complaint is not labeled with a letter. The page number in the citation refers to the page number assigned by the Court's electronic filing system.

> FN4. This exhibit to Plaintiff's complaint is not labeled with a letter. The page number in the citation refers to the page number assigned by the Court's electronic filing system.

On December 6, 2006, the Central Office Review Committee noted that Plaintiff was no longer assigned to the porter position or to a top bunk, but that "there is no medical necessity for a program restriction or bottom bunk permit." (Dkt. No. 7 at 28 FN5.)

> FN5. This exhibit to Plaintiff's complaint is not labeled with a letter. The page number in the citation refers to the page number assigned by the Court's electronic filing system.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

Plaintiff's complaint alleges that he sent a letter to Defendant Fischer, who responded that Plaintiff's needs were being met. (Dkt. No. 7 at ¶¶ 35-36.) In his opposition to the motion for summary judgment, Plaintiff states that he actually sent this letter to and received a response from former DOCS Commissioner Glenn Goord. (Dkt. No. 43-2 at ¶ 7.)

Plaintiff's medical records show that he saw Dr. Weissman on January 31, 2007. (Dkt. No. 41-11, Defendants' Ex. H at 8.) In an affidavit filed in support of Defendants' motion for summary judgment, Dr. Weissman states that Plaintiff's symptoms "were similar to those he revealed previously, and my diagnosis was similar, as well. Therefore, I continued the Naprosyn, but prescribed Flexeril in place of Robaxin, as it is a more powerful muscle relaxant." (Dkt. No. 41-15 at ¶ 7.)

Plaintiff alleges that the Flexeril did not relieve his pain and caused psychological side effects. (Dkt. No. 7 at ¶ 39.) Plaintiff's medical records show that on February 7, 2007, he directed a "Request for Interview or Information" to Dr. Weissman, requesting that he be allowed to return all of the medications in his possession and "move forward without drugs." (Dkt. No. 41-11, Defendants' Ex. H at 7.) Dr. Weissman discontinued the Flexeril on February 19, 2007. (Dkt. No. 41-11, Defendants' Ex. H at 8; Dkt. No. 41-15 at ¶ 7.)

Dr. Weissman states that he recommended physical therapy for Plaintiff after seeing him on January 31, 2007. (Dkt. No. 41-15 at ¶ 7.) Plaintiff alleges that eighteen months after sustaining his injury, he was taken to Franklin Correctional Facility, where he was left shackled and handcuffed for four hours before seeing a therapist. (Dkt. No. 7 at ¶ 42.) He was then told to return in two weeks. (Dkt. No. 7 at ¶ 43.) Plaintiff alleges that the physical therapist told Plaintiff that he was recommending a neck brace. *Id.*

Plaintiff's medical records show that he attended physical therapy on February 28, March 26, March 28, April 4, April 9, April 11, April 18, and April 25, 2007. (Dkt. No. 41-11, Defendants' Ex. H at 2-4, 6.)

Plaintiff's medical records show that on May 8, 2007, Plaintiff complained that he had not been to physical therapy since April 25. (Dkt. No. 41-11, Defendants' Ex. H at 2.)

**\*7** Plaintiff alleges that he went to sick call on May 24, 2007. (Dkt. No. 7 at ¶ 44.) He was told that there was no record of a prescription for a neck brace and that because he had one physical therapy session left, he could not apply for a renewal. *Id.* Plaintiff's medical records show that at this sick call session, Plaintiff complained that he had not been to physical therapy since April 25. The nurse noted that Plaintiff should have one physical therapy session remaining. (Dkt. No. 41-11, Defendants' Ex. H. at 1 .)

Plaintiff's medical records show that he reported continued neck pain on May 29, 2007. (Dkt. No. 41-11, Defendants' Ex. H at 1.)

Plaintiff alleges that throughout this period he was denied ibuprofen on numerous occasions. (Dkt. No. 7 at ¶ 32.)

Plaintiff alleges that a Jewish inmate told him that he never waited more than a few days to see a doctor because "Jews take care of their own." Plaintiff alleges that "[i]f the inmate's claim is true, Dr. Weismann ... would be guilty of discrimination." (Dkt. No. 7 at ¶ 47.)

Plaintiff's complaint requests a second opinion about his medical condition, an MRI, $400,000 in compensatory damages, $1 million in punitive damages, and payment for future medical needs. (Dkt. No. 7 at ¶ 55.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Major League Baseball Properties, Inc. v. Salvino, 542 F.3d 290, 309 (2d Cir.2008).* Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir.2006).* The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." [FN6] Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [FN7] In determining whether a genuine issue of material [FN8] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. [FN9]

> FN6. *Matsushita,* 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ....").

> FN7. *Ross v. McGinnis,* 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar.29, 2004) [internal quotations omitted] [emphasis added].

> FN8. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).*

> FN9. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

**B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of a plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 273-74 (2d Cir.1968)* [citations omitted]; *accord, Katz v. Molic, 128 F.R.D. 35, 37-38 (S.D.N.Y.1989)* ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte,* address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted. [FN10] For these reasons, it is appropriate to briefly summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

> FN10. The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

**8** Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); FN11 or (2) a challenge to the legal cognizability of the claim.FN12

FN11. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3 ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN12. *See* *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*

379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." FN13 The main purpose of this rule is to "facilitate a proper decision on the merits." FN14 A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN15

FN13. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also* *Swierkiewicz, 534 U.S. at 512* [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN14. *Swierkiewicz, 534 U.S. at 514* (quoting *Conley,* 355 U.S. at 48); *see also* *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN15. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN16] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "[FN17] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

FN16. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN17. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN18] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[FN19] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[FN20] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN21] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN22]

FN18. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See *Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN19. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN20. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN21. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN22. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cab Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

**\*9** However, while this special leniency may somewhat

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed), [FN23] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12. [FN24] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [FN25] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [FN26]

> FN23. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

> FN24. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

> FN25. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct.

2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

> FN26. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

### III. ANALYSIS

### A. Official Capacity

Plaintiff has sued Defendants in their individual and official capacities. (Dkt. No. 7, caption.) Defendants argue that the claims against them in their official capacities are barred by the Eleventh Amendment. (Dkt. No. 41-16 at 2-3.) Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf, 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).*

The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN27] All DOCS employees are state officials for the purposes of the Eleventh Amendment. *See e.g. Davis v. New York, 316 F.3d 93, 101 (2d Cir.2002); Tolliver v. N.Y. State Correctional Officers, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug.14, 2000)* ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."). Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York, 251 F.3d 84, 100 (2d Cir.2001)* (citation omitted); *see also Fed.R.Civ.P. 12(h)(3)*.

FN27. *See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993)* ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir.1993)* ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith, 850 F.2d 917, 921 (2d Cir.1988)* ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)* ("Obviously, state officials literally are persons. But a suit against a state official in his or her

official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)* ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007)* (Sharpe, J.) [citing cases].

Here, the face of the complaint alleges that each Defendant has an official position with DOCS. (Dkt. No. 7 at ¶¶ 3-5.) Therefore, any claims against the Defendants in their official capacities are barred by the Eleventh Amendment. Accordingly, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendants in their official capacities.

**B. Claims Regarding Top Bunk Placement**

**\*10** Plaintiff claims that his constitutional rights were violated when he was assigned to a top bunk upon his transfer to Bare Hill Correctional Facility, resulting in his fall two months later. (Dkt. No. 7 at ¶ 11.) Defendants argue that Plaintiff has not raised a genuine issue of material fact that the top bunk placement violated Plaintiff's constitutional rights. (Dkt. No. 41-16 at 12-13.) Defendants are correct.

Plaintiff's claim regarding his top bunk placement can be analyzed either as an Eighth Amendment conditions of confinement claim or an Eighth Amendment medical care claim. In order for Plaintiff to succeed on either claim, he must show that the defendants acted with deliberate indifference. *Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998).*

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

Deliberate indifference to a condition of confinement exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d, 698, 703 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Thus, to establish medical deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702-703.

Here, Plaintiff cannot raise a genuine issue of material fact that Defendants acted with deliberate indifference regarding his top bunk placement. It is undisputed that when Plaintiff transferred to Bare Hill Correctional Facility from Downstate Correctional Facility on October 21, 2005, his transfer paperwork made no mention of Plaintiff requiring a bottom bunk. (Dkt. No. 41-3, Defendants' Rule 7.1(a)(3) Statement at ¶ 8; Dkt. No. 43-2, Plaintiff's Opposition of Motion for Summary Judgment at ¶ 8.) Plaintiff asserts that he had reported vertigo to physicians at Downstate, but that information does not appear in his transfer records. *Id.* Rather, the transfer records show only that Plaintiff complained of pain in his lower back and shoulder. (Dkt. No. 41-10, Defendants' Ex. G at 3.) As a result, there were no facts available to Defendants from which they could have drawn the inference that Plaintiff required a bottom bunk placement upon his transfer to Bare Hill Correctional Facility. Further, there is no evidence that Defendants actually drew that inference. Moreover, Defendants placed Plaintiff in a bottom bunk sometime after the fall. (Dkt. No. 7 at 28.) Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claim regarding his top bunk placement.

**C. Claims Regarding Porter Position**

**\*11** Plaintiff claims that his constitutional rights were violated when he was assigned to a porter position in September 2006. (Dkt. No. 7 at ¶ 41.) Defendants argue that Plaintiff has not raised a genuine issue of material fact. (Dkt. No. 41-16 at 13-14.) Defendants are correct.

Defendants have addressed this claim as a due process issue. Defendants correctly note that prisoners do not have a liberty interest in the job of their choice. *Frazier v. Coughlin,* 81 F.3d 313, 318 (2d Cir.1996). However, that fact is relevant only in cases where prisoners claim that they have been removed from a job against their will, for instance by being confined to the SHU. Here, Plaintiff's claim is *not* that he was removed from the job of his choice but rather that he was forced to do a job that he claims he was physically unable to perform. Therefore, I find that the claim is more appropriately addressed as an Eighth Amendment medical care issue.

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance,* 143 F.3d at 702. Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702-03.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

At the time he was assigned to the porter position, Plaintiff had been diagnosed with degenerative disc disease. (Dkt. No. 41-15 at ¶ 6.) Degenerative disc disease can be classified as a serious medical condition, particularly if the pain associated with it lasts for an extended period of time. Mendoza v. McGinnis, No. 05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *10 (N.D.N.Y. Sept.11, 2008); Harris v. Morton, No. 9:05-CV-1049 (LEK/RFT), 2008 WL 596891, at *3 (N.D.N.Y. Feb.29, 2008).[FN28] Plaintiff alleges that he suffered from back and neck pain for an extended period of time.

> FN28. The undersigned will provide a copy of these unpublished decisions to Plaintiff in light of the Second Circuit's decision in Lebron v. Sanders, 557 F.3d 76 (2d Cir.2009).

Even if one classifies Plaintiff's condition as sufficiently serious, however, there is no evidence that the named defendants were deliberately indifferent to that condition. There is no evidence before the Court that any of the named Defendants were involved at all in the decision to assign Plaintiff to the porter job, much less that in doing so they were deliberately indifferent. " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 [2d Cir.1991] ).[FN29] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN30] Here, there is no evidence that Defendants Donelli, Weissman, or Fischer were in any way involved with Plaintiff's job assignment. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claims regarding his job assignment.

> FN29. Accord, McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

> FN30. Bass v. Jackson, 790 F.2d 260, 263 (2d

Cir.1986).

**D. Medical Care**

*12 Plaintiff claims that Defendants violated his Eighth Amendment right to medical care. (Dkt. No. 7 at ¶¶ 45-46.) Defendants argue that Plaintiff's claim is not supported by evidence raising a genuine issue of material fact. (Dkt. No. 41-16 at 14-18.) Defendants are correct.

As discussed above, to prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998). As discussed above, Plaintiff suffered from a serious medical need. The issue, then, is whether Defendants were deliberately indifferent to that need.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " Chance, 143 F.3d, 698, 703 (quoting Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. Farmer, 511 U.S. at 837; Chance, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. Farmer, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811; Ross v. Giambruno, 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." Estelle, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." Id. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id.; Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003) ("Because the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, the two-and-a-half month lapse of time between Plaintiff's fall and the examination by Dr. Ferrari, the delays in Plaintiff's receipt of pain medication that had been ordered for him, the four-month lapse of time between the examination by Dr. Ferrari and the examination by Defendant Dr. Weissman, the four-month lapse of time between Plaintiff's report that the pain medication that he had received was not effective and Dr. Weissman's prescription of a stronger medication, and the apparent failure to ensure that Plaintiff attended his last remaining physical therapy session are somewhat troubling. However, as Defendants note, Plaintiff's claims are quite similar to those raised in *Crum v. Marini*, No. 06-CV-0513 (GLS/DRH), 2007 WL 3104750 (N.D.N.Y. Oct.22, 2007), in which Judge Sharpe granted summary judgment for the defendants on the prisoner's medical care claims [FN31]

> FN31. The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.2009).

**\*13** In *Crum,* a prisoner suffering from degenerative cervical spondylosis alleged that the medical care provided to him violated the Eighth Amendment. The prisoner complained, in particular, that the defendants denied his numerous requests for an MRI and that he was only provided care by non-physicians. Judge Sharpe granted the defendants' motion for summary judgment dismissing the prisoner's Eighth Amendment claim. He noted that:

> Crum's medical records indicate that he was evaluated by various medical personnel on numerous occasions ...; that he was prescribed medication for his pain, that he was given x-rays and MRIs; and that defendant Dr. Marini periodically reviewed his medical records. There is no evidence, beyond Crum's conclusory allegations, that Crum's medical needs were ignored. That Crum may have preferred a system under which he had full

and unfettered access to Dr. Marini, as opposed to a system under which the first line of contract was with [a Health Services Administrator] or [a physician's assistant], is not enough to establish deliberate indifference.

*Crum,* 2007 WL 3104750, at * 4.

Here, Plaintiff was evaluated by medical personnel frequently, prescribed pain medication, and given x-rays. Dr. Ferrari and Dr. Weissman periodically examined him and reviewed his medical records. Thus, as in *Crum,* Plaintiff has not raised a genuine issue of material fact that Defendants were deliberately indifferent to his serious medical need. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Eighth Amendment medical care claim.

**E. Discrimination**

Plaintiff claims that another inmate told him that Dr. Weissman provided care more promptly to Jewish inmates than to non-Jewish inmates. (Dkt. No. 7 at ¶ 47.) Defendants argue that Plaintiff has not raised a triable issue of fact. (Dkt. No. 41-16 at 18-20.) Defendants are correct.

"To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Id.*

Here, there is no evidence that Dr. Weismann treated any similarly situated individuals any differently than he treated Plaintiff. Plaintiff's complaint alleges that *if* what he was told by the other inmate is true, *then* Dr. Weissman would be guilty of discrimination. (Dkt. No. 7 at ¶ 47.) In his opposition to the motion for summary judgment, Plaintiff states that he was denied discovery of the other

Slip Copy, 2009 WL 3165544 (N.D.N.Y.)
(Cite as: 2009 WL 3165544 (N.D.N.Y.))

inmate's medical records but that "[d]ates of requests for doctor visit of this inmate compared with dates of actual visits would show that the Jewish inmate ... was seen by Dr. Weissman within two weeks of the request whereas Plaintiff had to wait a minimum of four months." (Dkt. No. 43-4, Plaintiff's Response to Declaration of Dr. Weissman at ¶ 10.) Even if Plaintiff had been granted the discovery he sought and there were evidence before the Court establishing that the other inmate was seen more promptly than Plaintiff, there is no evidence that the other inmate was similarly situated to Plaintiff. The other inmate's medical condition, for instance, may have been more serious or time-sensitive than Plaintiff's. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's equal protection claim against Dr. Weissman.

**F. Personal Involvement**

**\*14** Plaintiff's claims against Defendants Fischer and Donelli are, essentially, that he was dissatisfied with their responses to his grievances. (Dkt. No. 7 at ¶¶ 22, 35-36, Ex. E.) Defendants argue that Plaintiff has failed to adequately allege that Defendants Fischer and Donelli were personally involved in any constitutional violation. (Dkt. No. 41-16 at 3-6.) Defendants are correct.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN32] Here, as discussed above, there was no constitutional violation. Therefore, Defendants Fischer and Donelli were not personally involved in any violation and are not liable. Accordingly, I recommend that the Court grant Defendants' motion for summary judgment and dismiss all claims against Defendants Fischer and Donelli.

FN32. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 41) be *GRANTED;* and it is further

**ORDERED** that the Clerk serve copies of *Mendoza v. McGinnis,* No. 05-CV-1124 (TJM/DEP), 2008 WL 4239760, at \*10 & n. 16 (N.D.N.Y. Sept.11, 2008), *Harris v. Morton,* No. 9:05-CV-1049 (LEK/RFT), 2008 WL 596891, at \*3 (N.D.N.Y. Feb.29, 2008), and *Crum v. Marini,* No.06-CV-0513 (GLS/DRH), 2007 WL 3104750 (N.D.N.Y. Oct.22, 2007) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.
Atkinson v. Fischer
Slip Copy, 2009 WL 3165544 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Milton THOMPSON, Plaintiff,
v.
Darwin LaCLAIR, Superintendent, A. McKee,
Correctional Officer and N. Irwin, Lieutenant,
Defendants.
No. 9:08-CV-0037 (FJS/DEP).

Aug. 25, 2009.

Milton Thompson, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Aaron M. Baldwin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**ORDER**

FREDERICK J. SCULLIN, JR., Senior District Judge.

**\*1** After carefully considering the entire file in this matter,
including Magistrate Judge Peebles' January 30, 2009
Report, Recommendation and Order, to which the parties
have not filed any objections, the Court hereby

**ORDERS** that Magistrate Judge Peebles' January 30,
2009 Report, Recommendation and Order is **ADOPTED**
in its entirety for the reasons stated therein; and the Court
further

**ORDERS** that Plaintiff's cross-motion for leave to amend
his complaint as proposed is **DENIED** as futile; and the
Court further

**ORDERS** that, if Plaintiff wishes to proceed with this
action, he must file an amended complaint within **thirty
(30) days** of the filing date of this Order; and the Court
further

**ORDERS** that, if Plaintiff does not file an amended
complaint within the required time frame, the Clerk of the
Court shall enter judgment dismissing this action without
further Order of this Court for the reasons set forth in
Magistrate Judge Peebles' Report, Recommendation and
Order; and the Court further

**ORDERS** that, if Plaintiff files an amended complaint
within the required time frame, Defendants shall file a
response to the amended complaint in compliance with the
Federal Rules of Civil Procedure and this Court's Local
Rules.

IT IS SO ORDERED.

*REPORT, RECOMMENDATION AND ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Milton Thompson, a New York State prison
inmate who is proceeding *pro se* and *in forma pauperis,*
has commenced this proceeding pursuant to 42 U.S.C. §
1983 alleging deprivation of his civil rights. In his
complaint, plaintiff asserts that he was issued a
misbehavior report accusing him of prison rule violations
which he did not commit, and that as a result of the
issuance of that report and an ensuing disciplinary hearing
he was placed in keeplock confinement and suffered the
loss of various privileges, including removal from various
prison programs. Plaintiff maintains that through their
actions defendants deprived him of procedural due process
and subjected him to cruel and unusual punishment, and
further asserts that they should be held liable for various
personal items he discovered missing at or around the time
of the hearing.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

Currently pending before the court in connection with the matter are cross-motions filed by the parties. The motion process was initiated by the defendants who, in response to plaintiff's complaint, have moved seeking its dismissal for failure to state a cause of action upon which relief may be granted. Plaintiff has since filed papers in opposition to defendants' motion and in support of a cross-motion for leave to amend his complaint to add claims, including those associated with the loss of good time credits which he attributes to the misbehavior report and disciplinary hearing. Defendants oppose plaintiff's motion for leave to amend on the ground of futility.

Having carefully considered the parties' submissions, I recommend the entry of an order granting defendants' dismissal motion, with leave to replead, and denying plaintiff's cross-motion for leave to amend on the basis of futility.

I. *BACKGROUND*[FN1]

> **FN1.** In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion, *see Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

**\*2** Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his claims plaintiff was designated to the Franklin Correctional Facility ("Franklin"), located in Malone, New York. *See generally* Complaint (Dkt. No. 1). On August 2, 2007, while apparently already subject to cell restriction as a result of a prior disciplinary hearing, plaintiff was observed outside of his cube by Corrections Officer A. McKee. Complaint (Dkt. No. 1) § 6, ¶ 1 and Exh. 1. As a result of the incident an inmate misbehavior report was prepared by defendant McKee, charging Thompson with

violating prison rules 109.10 (being out of place) and 181.10 (failure to comply with a hearing disposition); that charge was dated August 2, 2007, and was served upon Thompson the following day. *Id.*

A Tier II hearing was convened on August 6, 2007 to address the charges set forth in the misbehavior report.[FN2] Defendant N. Irwin, a Corrections Lieutenant, served as the hearing officer during the course of that proceeding. At the close of the hearing defendant Irwin issued a decision finding plaintiff guilty on both counts, and imposing a penalty which included thirty days of keeplock confinement, with a corresponding loss of recreation, package, commissary and telephone privileges.[FN3] Complaint (Dkt. No. 1) ¶ 14 and Exh. 2. That determination was affirmed on appeal to defendant Rock, the Deputy Superintendent of Security at the facility, by decision rendered on August 14, 2007, and later by defendant LaClair, the Superintendent at Franklin, on October 16, 2007. *Id.* ¶¶ 20, 22 and Exhs. 2, 3. There is no indication in plaintiff's complaint that he appealed the hearing officer's decision to the DOCS central office.

> **FN2.** The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

> **FN3.** Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens* ); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N .D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia,*

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

*Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). Inmate conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S .D.N.Y.1998). While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals. *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

As a direct consequence of the hearing determination, plaintiff was removed from certain programs in which he had been participating, including Alcohol and Substance Abuse Treatment ("ASAT"), Aggression Replacement Training ("ART"), and a Mobility Assistance Work Program ("MAWP"). *Id.* ¶¶ 15-17.

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 10, 2008. Dkt. No. 1. Plaintiff's complaint names Superintendent LaClair, Corrections Officer McKee and Corrections Lieutenant Irwin as defendants, and asserts two causes of action, alleging deprivation of procedural due process and the imposition of cruel and unusual punishment.[FN4] *Id.*

FN4. Defendants' motion references a third cause of action, based upon property lost or stolen from the plaintiff. *See* Defendants' Memorandum (Dkt. No. 12-2) at pp. 3, 12-13. The complaint on file with the court, however, does not appear to contain such a claim, *see* Dkt. No. 1, although the loss of properly is referenced in plaintiff's proposed amended complaint. *See* Dkt. No. 15-2, ¶¶ 28 and 33-34, and Causes of Action ¶ 2.

In response to plaintiff's complaint, defendants moved on March 27, 2008 seeking its dismissal for failure to state a cause of action upon which relief may be granted.[FN5] Dkt. No. 12. Plaintiff has since submitted responding papers in opposition to the motion and in support of a cross-motion seeking leave to amend his complaint. Dkt. No. 15. In his accompanying proposed amended complaint, plaintiff seeks to add a challenge to a determination of the facility time allowance committee ("TAC") on November 29, 2007, recommending that eighteen months and twenty days of good time credit be withheld pending plaintiff's successful completion of ASAT. Defendants have since replied in opposition to plaintiff's motion for leave to amend and in further support of their dismissal motion. Dkt. No. 16.

FN5. Defendants' motion also seeks a stay of discovery, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, pending final disposition on the parties' cross-motions. Because I find that the interests of justice and economy would not be served by permitting the parties to engage in discovery before the dismissal motion and plaintiff's cross-motion for leave to amend are addressed, I will exercise my discretion in favor of granting that relief.

*3 The parties' cross-motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly,* 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 127 S.Ct. at 1969, 1974; *see also Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") (quoting *Twombly* ). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator*

*Antitrust Litig.,* 502 F.3d 47, 50 (3d Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1974).

**\*4** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

B. *Plaintiff's Procedural Due Process Claim*

In his first cause of action plaintiff asserts that his procedural due process rights were abridged during the course of the August 6, 2007 disciplinary hearing and resulting determination. While the contours of this claim are less than clearly defined, it appears plaintiff maintains that he was denied due process because defendant Irwin, the assigned hearing officer, found him guilty when, in fact, he was innocent of the charges set forth in the misbehavior report. Defendants argue that the punishment resulting from that hearing, which included thirty days of keeplock confinement in the facility's special housing unit ("SHU"), did not constitute a deprivation of a cognizable liberty interest sufficient to trigger the protections of the Fourteenth Amendment, and that in any event plaintiff's complaint does not disclose a basis upon which to conclude that he was denied due process in conjunction with any such liberty interest deprivation.

To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both 1) possessed an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996).

*1. Deprivation of a Liberty Interest*

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that 1) the State actually created a protected liberty interest in being free from segregation; and that 2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84, 115 S.Ct. at 2300; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. Since the prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor, *see, e.g., LaBounty v. Coombe,* No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.), I must find that the conditions of plaintiff's keeplock confinement as alleged did not rise to the level of an atypical and significant hardship under *Sandin* in order to recommend that defendants' motion be granted.

*5 Atypicality in a *Sandin* inquiry is normally a question of law . [FN6] *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999). When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey,* 197 F.3d at 586; *Arce v. Walker,* 139 F.3d 329, 335-36 (2d Cir.1998); *Brooks v. DiFasi,* 112 F.3d 46, 48-49 (2d Cir.1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[FN7] *Hynes,* 143 F.3d at 658; *Arce,* 139 F.3d at 336; *Brooks v. DiFasi,* 112 F.3d 46, 48-49 (2d Cir.1997); *see also Williams v. Goord,* 111 F.Supp.2d 280, 289 (S.D.N.Y.2000) (citations omitted) (SHU confinement in New York generally does not impose atypical and significant hardship because it remains within

the normal range of prison custody). The essential comparison is not to the sentences of other inmates in restrictive confinement, but to periods of comparable deprivation suffered by other prisoners in the ordinary course of prison administration. *Welch v. Bartlett,* 196 F.3d 389, 393-94 (2d Cir.1999); *see also Kalwasinski v. Morse,* 201 F.3d 103, 107 (2d Cir.1999) (citing *Welch* ). This analysis should be case-specific, taking into account both the specific duration of confinement and the conditions at the prison at which it occurred. *Kalwasinski,* 201 F.3d at 107-08.

FN6. In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999).

FN7. While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin*. *Colon,* 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin, see id.* at 232 n. 5, the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not. *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure). In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

In this instance, according to the plaintiff's complaint and supporting exhibits, the disputed hearing resulted in a penalty which included thirty days of keeplock confinement. In *Sandin* the Supreme Court found that segregation for such a modest duration did not impose a

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

significant hardship on the inmate involved in that case, *see Sandin,* 515 U.S., 485-86, 115 S.Ct. at 2301, and "the decisions in the Second Circuit are unanimous that keeplock ... of thirty days or less in New York prisons is not 'atypical or significant hardship' under *Sandin."* *Williams v. Keane,* No. 95 Civ. 0379(AJP)(JGK), 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997); *see also Anderson,* 2008 WL 3285917, at *6 (stating that "confinements in SHU or keeplock of less than thirty days will not suffice to demonstrate a protected liberty interest absent other extraordinary circumstances of the confinement demonstrating that it was atypical or significant for other reasons") (citations omitted). Moreover, the fact that the hearing determination also included a provision for the loss of telephone, package, and commissary privileges does not suffice to establish the requisite atypicality. *Smart v. Goord,* 441 F.Supp.2d 631, 640 (S.D.N.Y.2006).

Plaintiff intimates that because of the hearing determination he was unable to participate in certain prison programs, including ASAT, ART, and the MAWP. Courts considering inmate claims regarding denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life. *See Shariff v. Artuz,* No. 99 CIV. 0321, 2000 WL 1219381, at *6 (S.D.N.Y. Aug. 28, 2000) (denial of extra privileges associated with honor block housing does not impose an "atypical and significant hardship" on plaintiffs); *Troy v. Kuhlmann,* No. 96 Civ. 7190, 1999 WL 825622, at *12 (S.D.N.Y. Oct. 15, 1999) (denial of telephone, package and commissary privileges does not impose "atypical and significant hardship"). Without denial of a cognizable liberty interest, there can be no due process violation.

2. *Due Process*

**\*6** In their motion, defendants also contend that plaintiff cannot establish a denial of the rights guaranteed under the Fourteenth Amendment, as illuminated by the Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 564-67, 94 S.Ct. 2963, 2978-80 (1974).

While plaintiff does not appear to challenge the

procedures leading up to and associated with the hearing as not being in compliance with *Wolff,* he does assert his innocence of the charges set forth in the misbehavior report, thus implicating the requirement under the Fourteenth Amendment that the hearing officer's determination must be supported by "some evidence." *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985). Since this is a determination which cannot be made at this juncture, without reviewing the hearing record, and in light of plaintiff's failure to make a threshold showing of the deprivation of a constitutionally significant liberty interest, I have chosen not to address this second prong of defendants' dismissal motion as it relates to plaintiff's due process claim.

In sum, because plaintiff has failed to allege the deprivation of a constitutionally significant liberty interest in connection with his procedural due process claim, it is subject to dismissal.

C. *Plaintiff's Eighth Amendment Claim*

In his second cause of action, plaintiff asserts that as a result of the hearing determination he was exposed to conditions tantamount to cruel and unusual punishment, in violation of his rights under the Eighth Amendment. Defendants similarly seek dismissal of this claim.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia,* Estelle). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain, 103 F.Supp.2d 542, 546 (N.D.N.Y.2000)* (Kahn, J.) (citing *Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991)*); *Waldo v. Goord, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998)* (Kahn, J. and Homer, M.J.); *see also, generally, Wilson, 501 U.S. 294, 111 S.Ct. 2321.* Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer, 511 U.S. at 837, 114 S.Ct. at 1978; Leach, 103 F.Supp.2d at 546 (citing Farmer); Waldo, 1998 WL 713809, at *2* (same).

**\*7** Plaintiff's complaint in this action is devoid of any allegations of exposure to conditions which would potentially support a plausible Eighth Amendment cruel and unusual punishment claim. Plaintiff merely asserts that he was subjected to keeplock confinement in an SHU for a period of thirty days, under otherwise ordinary conditions, and subjected to a concomitant loss of certain privileges and participation in prison programs. Even interpreted in a light most favorable to the plaintiff, and crediting the allegations set forth in his complaint, plaintiff has failed to allege that he experienced conditions which would suffice to establish a plausible Eighth Amendment cruel and unusual punishment claim. Accordingly, I recommend that this portion of defendants' motion be granted as well.

D. *Plaintiff's Motion For Leave To Amend*

In response to defendants' dismissal motion, plaintiff seeks leave to amend his complaint to add a challenge to the TAC's withholding of good time credits based upon his inability to complete the ASAT program due to the hearing officer's determination and resulting keeplock confinement, and additionally to recover for the loss or theft of certain of his property. Defendants assert that plaintiff's application should be rejected on the basis that it sets forth a claim which is destined for certain dismissal.

1. *Governing Standard*

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted based upon the circumstances (something which is not applicable in this action), a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). Under Rule 15(a), leave to amend ordinarily should be freely granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962); Elma R.T. v. Landesmann Int'l Mktg. Corp., No. 98-CIV.-662, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000)* (citing *Foman* ).

Notwithstanding the familiar and well-accepted precept that leave to amend should be granted freely and is typically permitted, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion then permitting amendment would be an act of futility which should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc., 938 F.Supp. 120, 124 (E.D.N.Y.1996); In re Boesky Sec. Litig., 882 F.Supp. 1371, 1379 (S.D.N.Y.1995)*. If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend. *Saxholm, 938 F.Supp. at 124* (citing *Allstate Ins. v. Administratia Asigurarilor De Stat, 875 F.Supp. 1022, 1029 (S.D.N .Y.1995)* and *Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986, 1003 (E.D.N.Y.1995)* (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)). In this instance defendants persuasively argue that the assertion of the additional claims set forth in plaintiff's proposed amended complaint would be futile.

2. *Lost Good Time Credits*

**\*8** In his proposed amended complaint, plaintiff complains of the loss of good time credits and requests,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

among the relief sought, that he be released from custody, following completion of the ASAT. The precise theory upon which this claim is predicated is not clear.

There is no indication from plaintiff's proposed amended complaint that the loss of good time credits was a *direct* result of his disciplinary hearing, and in fact the loss or recommended loss of good time credits is not a sanction authorized to be administered by a Tier II hearing officer. *See Rivera v. Coughlin,* No. 92 Civ. 3404, 1996 WL 22342, at *4-5 & n. 6 (S.D.N.Y. Jan. 22, 1996). It appears clear that the loss of good time credits was the result of a decision by the facility's TAC, and was based upon plaintiff's failure to complete the ASAT program. Since personal involvement in a constitutional deprivation is a prerequisite to a finding of liability under section 1983, and there is no allegation that any of the defendants in this case are members of TAC, the second cause of action in plaintiff's proposed amended complaint is futile. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)).

Plaintiff's theory appears to be that the loss of good time credits resulted, at least indirectly, from the hearing officer's determination, thereby elevating the resulting sanctions to a position of constitutional significance. This argument also fails, however, since as a prison inmate plaintiff does not enjoy a constitutional entitlement to participation in such programs as the ASAT. *See Thompson v. LaClair,* No. 9:08-CV-37, 2008 WL 191212, at *4 (N.D.N.Y. Jan. 22, 2008) (Scullin, S.J.) ("Inmates ... do not have a constitutional right ... to participate in prison programs.").

In sum, regardless of the precise theory on which plaintiff's second proposed cause of action is grounded, it fails to state a cause of action and his motion for leave to amend to add that claim therefore must be denied on the basis of futility. *See Brown v. Nassau County Dist. Attorney,* No. 08-CV-343, 2008 WL 4889108, at *2-3 (E.D.N.Y. Oct. 27, 2008).

### 3. *Plaintiff's Property Claim*

Although not specifically set out as a separate claim, plaintiff's proposed amended complaint also purports to add specific allegations regarding the loss of personal property suffered when he was transferred to the SHU for his keeplock confinement. *See* Proposed Amended Complaint (Dkt. No. 15-2) ¶¶ 11-18, 25-28, 33-34. Like his due process claim, plaintiff's property loss cause of action is futile, and destined for dismissal.

The precise theory upon which plaintiff's property loss claim is predicated is unclear. If plaintiff contends that he was denied procedural due process in connection with the property loss, that claim is subject to ready dismissal since it is well-established that New York provides an adequate post-deprivation remedy for such losses. *See Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996); *Brooks v. Chappius,* 450 F.Supp.2d 220, 226-27 (W.D.N.Y.2006). If, on the other hand, plaintiff's claim is said to arise under state tort law, whether for conversion or otherwise, such a claim would be barred under N.Y. Correction Law § Law 24.[FN8] *See Parker v. Fogg,* No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994) (McCurn, S.J.).

FN8. That section provides that

> 1.[n]o civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of [the Department of Correctional Services], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [the Department of Correctional Services] shall be brought and maintained in the court of claims as a claim against the state.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

N.Y. Correction Law § 24. It is well established, as defendants have argued, that this section, in combination with the Eleventh Amendment, precludes the assertion of pendent state law claims against corrections workers in their individual capacities, whether in state or federal court. *See Ierardi v. Sisco,* 119 F.3d 183, 186 (2d Cir.1997) (citations omitted); *Baker v. Coughlin,* 77 F.3d 12, 15-16 (2d Cir.1996); *Parker v. Fogg,* No. 85-CV-177, 1994 WL 49696, at *9 (N.D.N.Y. Feb. 17, 1994)* (McCurn, S.J.). I therefore recommend dismissal of plaintiff's various state law claims on this basis.

**\*9** Under the circumstances I find that the claims sought to be added through plaintiff's amended complaint are futile. I therefore recommend against the granting of plaintiff's motion for leave to amend.[FN9]

FN9. Ordinarily, the disposition of a motion for leave to amend would fall within my non-consensual jurisdiction as implicating a non-dispositive matter pursuant to 28 U.S.C. § 636(a). *Fielding v. Tollaksen,* 510 F.3d 175, 178 (2d Cir.2007). Because of the procedural setting, however, I have chosen to format this portion of my decision as a recommendation to the assigned district judge.

IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's initial complaint in this matter asserts two causes of action, neither of which is facially plausible. Plaintiff's procedural due process claim is legally insufficient since the deprivation which he claims to have suffered, including thirty days of keeplock confinement with a corresponding loss of privileges and participation in prison programs, is insufficient to implicate the procedural protections offered by the Fourteenth Amendment. Similarly, plaintiff's complaint is devoid of any allegations which would establish the existence of a sufficiently serious condition potentially constituting cruel and unusual punishment in violation of the Eighth Amendment. I therefore recommend dismissal of plaintiff's complaint, with leave to replead in deference to his *pro se*

status. *See Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991).

Turning to plaintiff's proposed amended complaint, I find that the claims which plaintiff seeks to add would be futile. Plaintiff has failed to establish defendants' personal involvement in the decision to deny him good time credits. Additionally, plaintiff's property loss claims are without merit, fail to implicate a cognizable constitutional right, and if construed as arising under state law, are barred by N.Y. Correction Law § 24.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss plaintiff's complaint (Dkt. No. 12) be GRANTED, and that plaintiff's cross-motion for leave to amend (Dkt. No. 15) be DENIED, and that plaintiff's complaint be DISMISSED in all respects, with leave to replead; and it is further hereby

ORDERED that pending final determination on this report and recommendation, all discovery in this action is temporarily STAYED pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report, Recommendation and Order upon the parties in accordance with this court's local rules.

N.D.N.Y.,2009.
Thompson v. LaClair
Slip Copy, 2009 WL 2762164 (N.D.N.Y.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2762164 (N.D.N.Y.)
(Cite as: 2009 WL 2762164 (N.D.N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

⚐

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Jack WILLIAMS, Plaintiff,
v.
J.P. KEANE, Superintendent, J. BUONATO,
Lieutenant, P. GIBSON, Lieutenant and J. BUMP,
Corrections Officer, Sing Sing Correctional Facility,
Defendants.
**No. 95 CIV. 0379 AJP JGK.**

Aug. 25, 1997.

*OPINION AND ORDER*

PECK, United States Magistrate Judge.

**\*1** In this 42 U.S.C. § 1983 action, pro se plaintiff Jack Williams has sued the Superintendent, two Lieutenants and a Corrections Officer at the Sing Sing Correctional Facility for alleged violations of due process, equal protection and cruel and unusual punishment in connection with an alleged sexual assault during a "pat-frisk," and Williams' subsequent alleged seven-day (actually six-day) keeplock confinement.

The parties have consented to disposition of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Presently before the Court is defendants' summary judgment motion. Under *Sandin v. Conner* and its progeny, seven days in keeplock does not state a constitutional claim for violation of due process. Under the Second Circuit's recent decision in *Boddie v. Schnieder,* Williams' allegation of sexual fondling during a single pat-frisk is not sufficiently egregious to state a harm of federal constitutional proportions under the Eighth Amendment. Accordingly, for the reasons set forth below, the Court grants defendants' summary judgment motion.

*FACTS*

*The Alleged Incident*

On November 15, 1994, at approximately 1:15 P.M., a metal detector was set off as plaintiff Jack Williams left the mess hall with several other inmates. (Williams Dep. at 29, 43; Defs' Rule 56.1 Stmt. ¶¶ 29-33.) Williams and other inmates were ordered to stand up against the wall for a routine "pat-frisk" and search for contraband. (Williams Dep. at 29-30; Bump Aff. ¶¶ 10-13; Defs' Rule 56.1 Stmt. ¶¶ 32-33.) It is undisputed that pat-frisks are a normal occurrence in prisons, especially for prisoners exiting the mess hall where metal utensils are used. (Williams Dep. at 29-31; Williams 3(g) Stmt. ¶ 10; Gibson Aff. ¶¶ 6-7; Bump Aff. ¶¶ 5-7; Defs' Rule 56.1 Stmt. ¶¶ 11, 13-24, 34; Defs' Ex. D: DOCS Directive No. 4910.)

However, the nature and extent of defendant Officer Bump's pat-frisk on Williams is disputed. Williams testified:

I had my hands up against the wall. He started fondling my chest. He went down, opened my pants up, put his hands down my pants, starts feeling me, but to keep repeatedly doing that. He felt my testicles, kept doing that. At the same time I was moving down the wall. I was telling him, "What are you doing?" You know, I got kind of hostile with him and other officers, they intervened and told me leave, told him to stop the procedure, told me to leave the mess hall, which I left, but I got his name before I left and wrote it up.

(Williams Dep. at 30; *see also id.* at 43-44). In contrast, Officer Bump stated that he conducted a routine pat-frisk of Williams that involved a "limited physical touching of the inmate's groin area, from the outside with clothes on, and genitals, which is a prime spot for hiding weapons and other contraband." (Bump Aff. ¶ 13.) Bump also stated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

that "[a]t no time did I 'fondle' or touch Mr. Williams sexually." (Bump Aff. ¶ 18.)

**\*2** Later that day, Officer Bump issued a misbehavior report for Williams' hostile, aggressive, and uncooperative behavior during the pat-frisk. (Bump Aff. ¶¶ 14-15; Defs' Ex. C at p. 6: Inmate Misbehavior Report.) Officer Bump's Inmate Misbehavior Report states:

> I gave him a direct order to place his hands on the wall and spread his legs -- and he refused to comply by continuously moving down the wall, and removing his hands. He eventually did comply when an additional officer stepped to him. Inmate Williams ... repeatedly cursed me by calling me "a mother fucker and a goddamn faggot." As a result of this inmate's action this misbehavior report is submitted.

(Defs' Ex. C.) Williams admits asking whether Bump was gay, but denies cursing at him. (Williams Dep. at 44.)

The Misbehavior Report, or "ticket," was then given to defendant Lieutenant Buonato[FN1] for review. (Bump Aff. ¶ 19; Defs' Rule 56.1 Stmt. ¶ 42.) In accordance with prison policy, the "review lieutenant" determines whether the allegations on the ticket support the charge and, if so, warrant the inmate's placement in keeplock. (Buonato Aff. ¶ 5; Defs' Rule 56.1 Stmt. ¶ 43; see Williams Dep. at 46.) Lieutenant Buonato filed his review on November 16, 1994, concluding that the charges were adequately set forth and that a Tier II disciplinary hearing was warranted. (Buonato Aff. ¶¶ 7-10; Defs' Rule 56.1 Stmt. ¶ 43.)

> **FN1.** Williams named Lieutenant Buonato as a defendant because he allegedly improperly reviewed the misbehavior report and unjustifiably placed Williams in keeplock. (Cplt. ¶ IV (E); Williams Dep. at 49-50; compare Buonato Aff. ¶¶ 7-10.)

*Williams' Placement in Keeplock and Subsequent Hearing*

Williams was placed in keeplock on November 16, 1994,

the day he received a copy of the Inmate Misbehavior Report and the day after the incident. (Williams Dep. at 32-33, 39-40; Defs' Rule 56.1 Stmt. ¶ 44.)

Prison guidelines provide that a hearing on the charges must be held as soon as practical, but in no case longer than seven days from when the inmate is placed in keeplock. See 7 N.Y.C.R.R. § 251-5.1. (See also Williams Dep. at 50-51; Cplt. ¶ IV (C).)[FN2]

> **FN2.** Section 251-5.1 provides:
>
> > Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.
>
> 7 N.Y.C.R.R. § 251-5.1.

Williams Tier II hearing took place on November 21, 1994 at 3:00 P.M. (Defs' Rule 56.1 Stmt. ¶¶ 47, 49; Gibson Aff. ¶ 11; Defs' Ex. C at p. 1; Williams Dep. at 40.) Defendant Lieutenant Gibson[FN3] found Williams not guilty at the conclusion of the Tier II disciplinary hearing. (Defs' Rule 56.1 Stmt. ¶ 51; Gibson Aff. ¶¶ 13, 15-16; Williams Dep. at 41-42; Defs' Ex. C at p. 1.) Lieutenant Gibson stated on the record that Williams was uncomfortable with the search, especially "where he was being touched." (Gibson Aff. ¶ 15; Defs' Rule 56.1 Stmt. ¶ 53; Defs' Ex. C at p. 2.) Gibson also found that Officer Bump conducted himself within the scope of his official duties and in accordance with prison rules. (Defs' Rule 56.1 Stmt. ¶ 54; Gibson Aff. ¶ 17.) Williams characterized Lieutenant Gibson's hearing as "fair." (Williams Dep. at 58, 60; Gibson Aff. ¶ 18; Defs' Rule 56.1 Stmt. ¶ 55.)

> **FN3.** Williams named Lieutenant Gibson as a defendant because Williams alleges that the

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

hearing should have been held within the 7-day period required by state law. (Cplt. ¶ IV (E); Williams Dep. at 51.)

**\*3** Williams was released from keeplock on November 21, 1994. (Williams Dep. at 42-43, 51, 53.) While Williams alleges that he spent seven days in keeplock (Cplt. ¶ IV(D); Williams Dep. at 51, 62; *see* Defs' Rule 56.1 Stmt. ¶ 48), it appears that Williams was in keeplock for six days (November 16 to November 21).

Williams named Superintendent Keane as a defendant, alleging that Keane did not properly train the corrections officers under his control. (Cplt. ¶ IV(E).) Keane also conducted an internal facility investigation into Officer Bump's conduct, which found that Bump complied with all prison rules. (Defs' Rule 56.1 Stmt. ¶¶ 58-59; Keane Aff. ¶¶ 11-12.)

*ANALYSIS*

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U.S.C. §1983; *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), *cert. denied*, 512 U.S. 1240, 114 S. Ct. 2749 (1994); *accord, e.g., Ruiz v. Selsky*, 96 Civ. 2003, 1997 WL 137448 at \*4 (S.D.N.Y. March 24, 1997) (Peck, M.J.); *Morris v. Dann*, No. 95-CV-975, 1996 WL 732559 at \*3 (N.D.N.Y. Dec. 11, 1996). Proof that state procedural law was violated does not by itself constitute a deprivation of due process because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990); *accord, e.g., Ruiz v. Selsky*, 1997 WL 137448 at \*4.

*I. UNDER SANDIN V. CONNER, SIX DAYS IN KEEPLOCK DOES NOT CONSTITUTE AN ATYPICAL AND SIGNIFICANT DEPRIVATION OF A PROTECTED LIBERTY INTEREST*

A. *Sandin v. Conner*

Defendants' summary judgment motion on the keeplock claim turns, in part, on application of the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), which significantly changed the prisoner due process landscape. The Supreme Court there held:

[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

**\*4** 115 S. Ct. at 2300 (fn. & citations omitted).

In *Sandin,* the prisoner was charged with a disciplinary infraction for physical interference with a correction officer, for using abusive or obscene language and for harassing employees. *Id.* at 2295-96. The disciplinary committee refused the prisoner's request to present witnesses, found him guilty of the alleged misconduct and sentenced him to 30 days disciplinary segregation in the prison's Special Holding Unit (SHU). *Id.* The Supreme Court found that the inmate was not entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963 (1974). *Sandin v. Conner*, 115 S. Ct. at 2302. The Supreme Court stated:

We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge 9 months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. Indeed, the conditions at Halawa [prison] involve significant amounts of "lockdown time" even for inmates in the general population. *Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.*

*Id.* at 2301 (footnotes omitted and emphasis added).

As a result of *Sandin,* the Second Circuit has announced a two-part standard which prisoners must satisfy to establish a procedural due process claim due to segregated confinement:

> To prevail, [the plaintiff inmate] must establish both that [1] the confinement or restraint creates an "atypical and significant hardship" under *Sandin,* and that [2] the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint.

*Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996); *accord,e.g., Santana v. Keane,* 90 Civ. 6309, 1996 WL 465751 at *3 (S.D.N.Y. Aug. 14, 1996). A prisoner who satisfies both of these elements would be entitled to the procedural due process protections enunciated by *Wolff v. McDonnell,* 418 U.S. at 556-58, 94 S. Ct. at 2974-75, and its progeny. *See, e.g., Barnes v. Starks,* 95 Civ. 4891, 1996 WL 648956 at *3 & n.4 (S.D.N.Y. Nov. 6, 1996); *Santana v. Keane,* 1996 WL 465751 at *3 & n.1.

B. *Williams' Action Fails Because It Is Based on A Miscalculation of the Time He Spent in Keeplock*

**\*5** Williams notes, correctly, that New York's prison regulations require a disciplinary hearing to be held within 7 days of the inmate's placement in keeplock for a disciplinary infraction. 7 N.Y.C.R.R. § 251-5.1. Williams then argues, incorrectly, that he spent 7 days in keeplock before the disciplinary hearing at which he was found not guilty and immediately released from keeplock. (*See* Williams Dep. at 50-51; Cplt. ¶ IV (C).) In fact, however, the incident occurred on November 15, 1994, Williams was placed in keeplock on November 16, and his hearing was held and he was released from keeplock on November 21, 1994. (*See* Fact section, above.) Thus, on the undisputed facts, Williams was in keeplock from November 16 to November 21, at most *six* days. Accordingly, the hearing was held and Williams was released from keeplock within the seven days required by New York's prison regulations. Since the regulations were not violated, it is not necessary to examine either prong of the two-prong *Sandin* analysis; defendants are entitled to summary judgment on the keeplock claim. *See Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (even a violation of 7 N.Y.C.R.R. § 251-5.1 "alone would not be enough generally to establish a constitutional claim"); *Dudley v. Coombe,* 96 Civ. 1665, 1997 WL 423074 at *2 (S.D.N.Y. July 28, 1997) (in light of 7 N.Y.C.R.R. § 251-5.1 requiring hearing within seven days, prisoner did not have liberty interest in five-day keeplock stay without hearing).

C. *Application of Sandin to Confinement of 6 Days in Keeplock*

Even if the Court were to assume, contrary to the undisputed evidence, that Williams' keeplock stay violated state regulations, defendants are entitled to summary judgment under the first prong of the *Sandin* analysis.

In recent decisions, the Second Circuit has clearly instructed that the *Sandin* analysis requires a factual inquiry as to the length and conditions of confinement:

> The language and analysis in *Sandin* make clear that the Court did not intend to suggest that discipline in segregated confinement could never present such an "atypical, significant deprivation." ... [W]e now state explicitly: *Sandin* did not create a per se blanket rule that disciplinary confinement may never implicate a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

liberty interest.... [D]istrict courts must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest.

**\*6** *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir. 1997); *see also, e.g., Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir. 1997); *Brooks v. Difasi,* 112 F.3d 46 (2d Cir. 1997).

While the courts have not yet determined what length of confinement will constitute an "atypical or significant hardship," the decisions in the Second Circuit are unanimous that keeplock or SHU confinement of 30 days or less in New York prisons is *not* "atypical or significant hardship" under *Sandin. See, e.g.: Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996) (12 days in SHU); *Johnson v. Coughlin,* 90 Civ. 1731, 1997 WL 431065 at *1 (S.D.N.Y. July 30, 1997) (8 days confinement prior to disciplinary hearing); *Sullivan v. Schweikhard,* 95 Civ. 0276, 1997 WL 349983 at *3 (S.D.N.Y. June 25, 1997) (9 days in keeplock); *Duncan v. Keane,* 95 Civ. 1090, 1997 WL 328070 at *2 (S.D.N.Y. June 13, 1997) (30 days keeplock); *Harris v. Keane,* 962 F. Supp. 397, 404 (S.D.N.Y. 1997) (23 days in keeplock; the "Second Circuit's post-Sandin decisions are unanimous that keeplock of 60 days or less in New York prisons is not an "atypical hardship.'"); *Saulter v. Hanslmaier,* 94 Civ. 6855, 1997 WL 177887 at *2 (S.D.N.Y. April 14, 1997) (7 days in keeplock); *Ragland v. Crawford,* 95 Civ. 10069, 1997 WL 53279 at *3 (S.D.N.Y. Feb. 7, 1997) (1 day in keeplock); *Torres v. Keane,* 94 Civ. 4845, 1997 WL 35507 at *1 (S.D.N.Y. January 30, 1997) (21 days in keeplock); *Grant v. Riley,* 89 Civ. 0359, 1996 W1727441 at *2-3 (S.D.N.Y. Dec. 17, 1996) (10 days in keeplock, only 5 of which were served); *Barnes v. Starks,* 95 Civ. 4891, 1996 WL 648956 at *3 (S.D.N.Y. Nov. 6, 1996) (21 days in keeplock); *Santana v. Keane,* 90 Civ. 6309, 1996 W1 465751 at *5 (S.D.N.Y. Aug. 14, 1996) (9 days in keeplock during a prison sentence of at least 7 years); *Pampalone v. Young,* 95 Civ. 2348, 1996 WL 511569 at *3 (S.D.N.Y. August 7, 1996) (Peck, M.J.) (10 days in keeplock); *McAllister v. Zydel,* 929 F. Supp. 102, 104 (W.D.N.Y. 1996) (15 days in keeplock); *Chambers v. Coughlin,* 95 Civ. 298, 1996 WL 243202 at *2 & n.6 (S.D.N.Y. May 10, 1996) (7 days in SHU); *Beaty v. Scully,* 92 Civ. 3407, 1996 WL 209933 at *2 (S.D.N.Y. April 30, 1996) (11 days in SHU); *Slaughter v. Coughlin,* 94 Civ. 6734, 1996 WL 200308 at *3 (S.D.N.Y. April 25, 1996) (10 or 11 days in keeplock); *Levro v. Kennedy,* 95

Civ. 0198, 1996 WL 191741 at *1 (S.D.N.Y. April 22, 1996) (several days in keeplock); *Ramirez v. Coughlin,* 93 Civ. 0765, 1996 WL 194324 at *3-4 (S.D.N.Y. April 22, 1996) (30 days combination of SHU and keeplock); *Dawkins v. Healy,* 94 Civ. 6382, 1996 WL 145989 at *2 (S.D.N.Y. April 1, 1996) (15 days in keeplock) *judgment vacated and reconsideration in part,* 1996 WL 280737 at *2 (S.D.N.Y. May 28, 1996) (reconsideration limited to issue of retaliation); *Powell v. Scully,* 92 Civ. 5334, 1996 WL 145962 at *3 (S.D.N.Y. April 1, 1996) (7 days of cell confinement); *Benton v. Keane,* 921 F. Supp. 1078, 1079 (S.D.N.Y. 1996) (9 days in administrative confinement); *Ketchmore v. Stormer,* 94 Civ. 8271, 1996 WL 117572 at *2-3 (S.D.N.Y. March 18, 1996) (10 days of cell confinement); *Moolenaar v. Finn,* 94 Civ. 6778, 1996 WL 112200 at *3 (S.D.N.Y. March 14, 1996) (15 days in keeplock); *Walker v. Mahoney,* 915 F. Supp. 548, 553-54 (E.D.N.Y. 1996) (23 days in administrative segregation) (citing unpublished 2d Cir. dispositions); *Ahlers v. Keane,* 94 Civ. 3297, 1995 WL 375920 (S.D.N.Y. June 22, 1995) (10 days keeplock), *aff'd* (unpublished decision), 101 F.3d 684, No. 95-2454, 1996 WL 281351 at *1 (2d Cir. May 22, 1996); *Martin v. Mitchell,* 92-CV-716, 1995 WL 760651 at *3 (N.D.N.Y. Nov. 24, 1995) (30 days keeplock); *Schmelzer v. Norfleet,* 903 F. Supp. 632, 634-35 (S.D.N.Y. 1995) (11 days in keeplock); *Jackson v. Keane,* 93 Civ. 6453, 1995 WL 622593 at *3 (S.D.N.Y. Oct. 24, 1995) (14 days in SHU); *Kozlek v. Papo,* 94 Civ. 1429, 1995 WL 479410 at *2 (S.D.N.Y. Aug. 11, 1995) (10 days in SHU); *Uzzell v. Scully,* 893 F. Supp. 259, 262-63 (S.D.N.Y. 1995) (23 days in keeplock).

**\*7** Indeed, decisions in this Circuit have held that keeplock or SHU confinement of longer than 30 days does not implicate a liberty interest. *See, e.g., Frazier v. Coughlin,* 81 F.3d at 317-18 (12 days in SHU and eleven months in "close supervision unit"); *Thompson v. Keane,* 95 Civ. 2442, slip op. at 5-6 (S.D.N.Y. Aug. 6, 1997) (91 days in SHU); *Ruiz v. Selsky,* 96 Civ. 2003, 1997 WL 137448 at * 5 (S.D.N.Y. March 24, 1997) (Peck, M.J.) (192 days in SHU during 10-20 year prison sentence); *Reaves v. Williams,* 95 Civ. 0281, 1997 WL 10132 at *4-5 (S.D.N.Y. Jan. 10, 1997) (90 days of keeplock imposed, of which 69 days were served); *Odom v. Keane,* 94 Civ. 8032, 1997 WL 3262 at *1 (S.D.N.Y. Jan. 6, 1997) (46 days of keeplock); *Coleman v. Galgano,* 95 Civ. 5835, 1996 WL 715533 at *1, 3 (S.D.N.Y. Dec. 11, 1996) (60 days in SHU and 180 days in keeplock); *Whitfield v. Scully,* 94 Civ. 3290, 1996 WL 706932 at *5 (S.D.N.Y.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

Dec. 6, 1996) (60 days in SHU); *Bennett v. Dolan,* 93 Civ. 5215, 1996 WL 499519 at *1, 3 (S.D.N.Y. Sept. 4, 1996) (45 days of keeplock imposed, 24 days served); *Nogueras v. Coughlin,* 94 Civ. 4094, 1996 WL 487951 at *5 (S.D.N.Y. Aug. 27, 1996) ("210 days in SHU does not in and of itself trigger due process concerns."); *Duncan v. Keane,* 93 Civ. 6026, 1996 WL 511573 at *3-5 (S.D.N.Y. Aug. 22, 1996) (Peck, M.J.) (58 days in keeplock); *Brown v. McClellan,* 93-CV-0901, 1996 WL 328209 at *5 (W.D.N.Y. June 11, 1996) (two confinements in SHU for 60 days each); *Guzman v. Kelly,* 88-CV-1391, 1996 WL 291985 at *3 (W.D.N.Y. May 28, 1996) (8 months in SHU); *Trice v. Clark,* 94 Civ. 6871, 1996 WL 257578 at *2-3 (S.D.N.Y. May 16, 1996) (150 days in SHU); *Arce v. Coughlin,* 93 Civ. 4702, 1996 WL 252371 at *6-7 (S.D.N.Y. May 14, 1996) (120 days in SHU); *Camacho v. Keane,* 95 Civ. 0182, 1996 WL 204483 at *2 (S.D.N.Y. April 25, 1996) (90 days, only 40 days of which were served, in keeplock); *Roucchio v. Coughlin,* 923 F. Supp. 360, 373 (E.D.N.Y. 1996) (47 days in SHU) (citing cases, including unpublished 2d Cir. decisions upholding 60 days SHU and 71 days segregated confinement); *Villano v. Irvin,* 93-CV-0196, 1996 WL 343251 at *3 (W.D.N.Y. March 18, 1996) (85 days in keeplock out of a 90-day keeplock sentence); *White v. Artuz,* 94 Civ. 4592, 1996 WL 84498 at *2 (S.D.N.Y. Feb. 27, 1996) (55 days in protective custody); *Walker v. Mahoney,* 915 F. Supp. 548, 553-54 (E.D.N.Y. 1996) (23 days in administrative segregation) (citing unpublished 2d Cir. decisions upholding 60 and 71-day confinements); *Rivera v. Coughlin,* 92 Civ. 3404, 1996 WL 22342 at *4-5 & n.6 (S.D.N.Y. Jan. 22, 1996) (89 days in disciplinary segregation; loss of good time credits reversed administratively so no effect on length of sentence); *Rosario v. Selsky,* 94 Civ. 6872, 1995 WL 764178 at *5-6 (S.D.N.Y. Dec. 28, 1995) (120 days imposed but inmate served less than 3 months in SHU during a ten-year sentence); *Tulloch v. Coughlin,* 91-CV-0211, 1995 WL 780970 at *1-2 (W.D.N.Y. Dec. 22, 1995) (180 days in SHU; loss of good time allowance restored through prior state proceeding; implies that any SHU confinement, regardless of length, is permissible under *Sandin*), *appeal dismissed on other grounds* (unpublished decision), 101 F.3d 1393, 1996 WL 414457 (2d Cir. 1996); *Morales v. Santor,* 94-CV-217, 1995 WL 760625 at *2 (N.D.N.Y. Dec. 4, 1995) (60 days in keeplock); *Ross v. Jewett,* 91-CV-1414, 1995 WL 760675 at *2, *4 (N.D.N.Y. Nov. 27, 1995) (60 days in keeplock), *aff'd* (unpublished decision), No. 96-2004, 1996 WL 304752 (2d Cir. June 7, 1996); *Zamakshari v. Dvoskin,* 899 F. Supp. 1097, 1108 (S.D.N.Y. 1995) (Peck, M.J.) (60 days in SHU); *Delaney v. Selsky,* 899 F. Supp. 923, 927-28 (N.D.N.Y. 1995) (365 days in SHU ordinarily not atypical but because plaintiff over 7 feet tall and SHU bed too small for him, summary judgment denied); *Medina v. Bartlett,* 94-CV-0358, 1995 WL 529624 at *2 (W.D.N.Y. Aug. 28, 1995) (no liberty interest created by 2,555 days in SHU); *McMiller v. Wolf,* 94 Civ. 0623, 1995 WL 529620 at *1, *3 (W.D.N.Y. Aug. 28, 1995) (365 days in SHU reduced to approximately 180 days in SHU); *Carter v. Carriero,* 905 F. Supp. 99, 104 (W.D.N.Y. 1995) (360 days reduced to 270 days in SHU); *Hutchinson v. Adorno,* 93-CV. 3949, 1994 WL 549568 (S.D.N.Y. Oct. 6, 1994), *aff'd* (unpublished decision), No. 94-2652, 1995 WL 737493 at *1-2 (2d Cir. Dec. 13, 1995) (1 year of segregated confinement and 90 days keeplock, reduced to 71 days in segregated confinement).

**\*8** Chief Judge McAvoy of the Northern District of New York concluded that "courts in this and other districts have subsequently [to *Sandin*] ruled that increasingly lengthy periods of segregated housing did not impose an 'atypical and significant hardship' within the meaning of *Sandin.* Indeed, *it now appears that any period of segregation of one year or less affords no protected liberty interest.*" *Polanco v. Allan,* No. 93-CV-1498, 1996 WL 250237 at *3 (N.D.N.Y. May 6, 1996)* (emphasis added) (365 days in SHU upheld), *reaffirmed on reconsideration,* 1996 WL 377074 at *2 (N.D.N.Y. July 5, 1996) ("the general rule of a year or less seems appropriate, absent extraordinary circumstances, which plaintiff has not offered"; 365 days in SHU was not "outside the parameters of plaintiff's sentence").[FN4]

FN4. *But see Wright v. Miller,* 96 Civ. 1224, 1997 WL 438795 at *3 (slip op. at p. 6) (S.D.N.Y. July 31, 1997) (12-15 months in SHU may create atypical and significant hardship; summary judgment denied); *Porter v. Coughlin,* 964 F. Supp. 97, 103 (W.D.N.Y. 1997) (36 months in SHU creates liberty interest; *Bishop v. Keane,* 92 Civ. 6061, 1995 WL 384443 at *3 n.4 (S.D.N.Y. June 28, 1995) (whether 87 days in keeplock imposes atypical or significant hardship is a question of fact precluding summary judgment); *Lee v. Coughlin,* 902 F. Supp. 424, 431 (S.D.N.Y. 1995) (376 days in SHU imposed an "atypical and significant hardship" for an inmate serving a 2-year

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

sentence), *motion for reconsideration granted,* *Lee v. Coughlin,* 914 F. Supp. 1004, 1005 (S.D.N.Y. 1996) (reconsideration granted for defendants to address recent *Sandin* decision); *Williams v. Fountain,* 77 F.3d 372, 374 n.3, 376 (11th Cir.) (assumes that a year of solitary confinement is a substantially "atypical and significant hardship" entitling plaintiff to due process, but finds that prisoner received sufficient due process), *cert. denied,* 117 S. Ct. 367 (1996).

Consistent with the above-cited cases, whatever *Sandin*'s outer limits, it is clear that Williams' confinement of 6 days[FN5] in keeplock does not constitute an "atypical or significant hardship" under *Sandin.*[FN6] Accordingly, the Court grants defendants' summary judgment motion on this first issue.

FN5. The Court's analysis would be no different if plaintiff had spent 7 days in keeplock as Williams originally alleged.

FN6. Because Williams has not established the first *Frazier* prong (that his 6 day keeplock confinement is an atypical and significant hardship under *Sandin*), the Court need not reach the second *Frazier* prong (of whether New York has granted its inmates a liberty interest in being free of disciplinary confinement).

II. *UNDER BODDIE v. SCHNIEDER, WILLIAMS' ALLEGATION OF SEXUAL ABUSE DOES NOT RISE TO A CONSTITUTIONAL DEPRIVATION*

A. *In Boddie v. Schnieder, the Second Circuit Recognized an Eighth Amendment Claim for Sexual Abuse*

*\*9* Williams' second claim, for alleged sexual abuse by Corrections Officer Bump, is governed by the Second Circuit's recent decision in *Boddie v. Schnieder,* 105 F.3d 857 (2d Cir. 1997), which recognized a § 1983 Eighth Amendment[FN7] claim for sexual abuse by a corrections officer, but also found the complaint of conduct there to

not involve a harm of federal constitutional proportions. The same is true of Williams' claim here.

FN7. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

In *Boddie,* the Second Circuit recognized that the "Eighth Amendment sets constitutional boundaries on the conditions of imprisonment. The 'unnecessary and wanton infliction of pain' on a prisoner constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Id.* at 861. The Eighth "Amendment proscribes more than physically barbarous punishments. The Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency,' against which we must evaluate penal measures." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S. Ct. 285, 290 (1976) (citations omitted).

*Boddie* reiterated a two-prong, objective-subjective test for Eighth Amendment violations, including claims of sexual abuse:

An official violates the Eighth Amendment when two requirements are met. First, the alleged "punishment" must be, "objectively, sufficiently serious." Under the objective standard, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Second, the prison official involved must have a "sufficiently culpable state of mind." Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims.

*Boddie,* 105 F.3d at 861 (citations omitted, including to *Farmer v. Branham,* 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)).[FN8]

FN8. *See also Mathie v. Fries,* No. 1274, Docket 96-9138, 1997 WL 426567 at *3 (2d Cir. July 31, 1997), *affirming* 935 F. Supp. 1284, 1299

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

(E.D.N.Y. 1996) (pretrial detainee awarded damages for sexual assault including sodomy by prison official). Decisions in other circuits similarly recognize a § 1983 Eighth Amendment claim for serious sexual abuse by prison personnel. See, e.g., Freitas v. Ault, 109 F.3d 1335 (8th Cir. 1997) (to prove a constitutional claim for sexual abuse, the inmate must demonstrate that the alleged abuse objectively caused "pain," and that the officer involved subjectively had a "sufficiently culpable state of mind."); Jordan v. Gardner, 986 F.2d 1521, 1527-31 (9th Cir. 1993) (female inmates stated valid § 1983 Eighth Amendment claim challenging prison policy allowing cross-gender clothed body searches; Watson v. Jones, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (summary judgment for defendant female correction officer reversed where inmates alleged sexual harassment and sexual fondling of male prisoners during pat frisks almost daily over a two-month period); Meriwether v. Faulkner, 821 F.2d 408 (7th Cir.) (complaint that transexual inmate is regularly forced to strip before male guards and inmates states Eighth Amendment claim), cert. denied, 484 U.S. 935, 108 S. Ct. 311 (1987); Thomas v. District of Columbia, 887 F. Supp. 1, 4-5 (D.D.C. 1995) (summary judgment for defendant denied where corrections officer sexually harassed plaintiff including touching his penis and tried to coerce prisoner to have sexual relations); Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia, 877 F. Supp. 634 (D.D.C. 1994) (court found numerous violations of the Eighth Amendment for repeated rape, sexual assaults and harassment of female prisoners), aff'd in part on other grounds, reversed in part on other grounds, 93 F.3d 910, 928 (D.C. Cir. 1996), cert. denied, 117 S. Ct. 1552 (1997), on remand, CA No. 93-2052, 1997 WL 361600 at *2-3 (D.D.C. June 16, 1997) (ordering remedial measures to eliminate sexual harassment); Galvan v. Carothers, 855 F. Supp. 285, 291 (D. Alaska 1994) ("minimal standards of privacy and decency include the right not to be subject to sexual advances, to use the toilet without being observed by members of the opposite sex, and to shower without being viewed by members of the opposite sex"; nevertheless, summary judgment

for defendant on qualified immunity grounds).

*10 Objectively, "[s]exual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm," and "has no legitimate penological purpose." Boddie, 105 F.3d at 861. As to the subjective prong of the test, "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Id.

The Second Circuit in Boddie nevertheless affirmed the district court's dismissal of Boddie's claim:

[A]llegations of sexual abuse may meet both the subjective and the objective elements of the constitutional test, thereby stating an Eighth Amendment claim under Section 1983. However, we agree with the district court that Boddie nevertheless failed to state an Eighth Amendment claim. He asserts a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent. No single incident that he described was severe enough to be "objectively, sufficiently serious." Nor were the incidents cumulatively egregious in the harm they inflicted. The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

Boddie, 105 F.3d at 861.[FN9]

FN9. The Second Circuit summarized Boddie's allegations as follows:

First, Boddie maintains that on March 3, 1993, Officer B. Schnieder, a female corrections officer, "made a statement" that Boddie believed to be "a pass" at him, but that he "could not be sure."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)
(Cite as: 1997 WL 527677 (S.D.N.Y.))

Second, Boddie claims that on the next day, Schnieder squeezed his hand, touched his penis, and said, "[Y]ou know your [sic] sexy black devil, I like you."

Third, Boddie alleges that on March 19, 1993, ... Schnieder stopped [him], accused him of wearing an orange sweatshirt, and told him to take off the sweatshirt. According to Boddie, he resisted, stating that he was a cardiac patient, that the hallway was very cold, and that he would give the sweatshirt to her when they returned to his cellblock. When Boddie began to walk past the officers, Schnieder stopped him, "bumping into [his] chest with both her breast so hard [he] could feel the points of her nipples against [his] chest." Boddie states that Schnieder did this to Boddie twice, pinning him to a door. When he tried to pass her again, Schnieder again bumped into him, this time "with her whole body vagina against penis pinning [him] to the door."

*Id.* at 859-60.

B. *Williams' Allegation of Sexual Abuse Fails to State a Valid Claim Under § 1983*

**\*11** Williams' allegations, like Boddie's, are not sufficient to state a valid § 1983 claim for sexual abuse. The conduct alleged by Williams, accepting his allegations as true, is no more egregious than the conduct in *Boddie*. Moreover, the instant case involves only a single incident of alleged abuse, whereas *Boddie* involved several. Thus, under *Boddie*, it is clear that Williams' claim does "not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Boddie*, 105 F.3d at 861; *see also, e.g., Green v. Elias,* 9 F.3d 1551 (9th Cir. 1993) (affirms grant of summary judgment to defendant correction officer where male prisoner alleged female guard grabbed his genitals during a clothed pat frisk of inmates leaving the dining hall); *Kaestner v. Mitchell,* No. C 96-2370, 1996 WL 428357 at *1 (N.D. Cal. July 24, 1996) (alleged unwarranted sexual advances including touching of prisoner's buttocks "does not rise to the level of egregious, pervasive and/or widespread sexual harassment necessary

to implicate the Eighth Amendment."); *Duncan v. Keane,* 95 Civ. 1090, 1995 WL 649931 at *5-6 (S.D.N.Y. Nov. 6, 1995) (claim that correction officer felt plaintiff's rear end does not provide sufficient facts to state Eighth Amendment claim); *Friedman v. Young,* 702 F. Supp. 433, 434, 436 (S.D.N.Y. 1988) (complaint that correction officer fondled plaintiff's genitals and anus during pat search dismissed; "[a]ccepting the allegations of the complaint [as true], the line between a pat down and a fondle is too insubstantial to support the burden of supporting a claim for constitutional tort.").

Accordingly, accepting for purposes of this motion Williams' version of the facts, this isolated incident during a routine pat-frisk fails to state an Eighth Amendment claim under *Boddie*. The Court grants defendants' summary judgment motion on this second issue.

*CONCLUSION*

For the reasons set forth above, defendants' summary judgment motion is granted. The Clerk of the Court is directed to enter judgment for defendants dismissing this action with prejudice.

SO ORDERED.

DATED:

S.D.N.Y.,1997.
Williams v. Keane
Not Reported in F.Supp., 1997 WL 527677 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Luis NIEVES, Plaintiff,
v.
D. ALDRICH, et al., Defendants.
**No. 9:07-CV-655 (DHN/GJD).**

Aug. 28, 2009.

West KeySummary
**Civil Rights 78 ⚷         1019(3)**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in
General
        78k1016 Handicap, Disability, or Illness
        78k1019 Who Is Disabled; What Is Disability
        78k1019(3) k. Particular Conditions,
Limitations, and Impairments. Most Cited Cases
Inmate failed to establish that he was disabled and thus
was unable to state a claim under the Americans with
Disabilities Act (ADA). Inmate was removed from
classroom study and given cell study time instead as odor
emitting from inmate caused other inmates to complain.
Inmate alleged that prison was discriminating against him
based on a disability because he had had nasal surgery
which was allegedly causing the strong odor. However,
odor from nose did not substantially limit a major life
activity. Americans with Disabilities Act of 1990, §
2(2)(A), 42 U.S.C.A. § 12101(2)(A).

Luis Nieves, pro se.

Heather R. Rubinstein, Ass't Attorney General, for
Defendants.

**REPORT-RECOMMENDATION**

GUSTAVE J. DiBIANCO, United States Magistrate
Judge.

**\*1** This matter has been referred to me for Report and
Recommendation by the Honorable David N. Hurd,
United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff brings this civil rights action pursuant to 42
U.S.C. § 1983, the Americans with Disabilities Act
(ADA), 42 U.S.C. § 12101 et seq., and the Rehabilitation
Act (RA), 29 U.S.C. § 794, alleging that defendants
violated his constitutional rights and discriminated against
him based upon his disability. Compl. ¶¶ 49-57. (Dkt. No.
1). Plaintiff seeks declaratory, injunctive,[FN1] and
substantial monetary relief. Compl. ¶¶ A-E.

> FN1. The court notes that plaintiff has been
> released from custody, thus, any claims for
> injunctive relief may be dismissed as moot. *Prins
> v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (a
> case is moot when the problem sought to be
> remedied has ceased, and where there is no
> reasonable expectation that the wrong will be
> repeated). Since plaintiff in this case has been
> released, there is nothing left for defendants to
> do if plaintiff were to succeed.

Presently before the court is defendants' motion for
judgment on the pleadings pursuant to FED. R. CIV. P.
12(c). (Dkt. No. 33). Plaintiff has not responded to the
motion. For the following reasons, this court agrees with
defendants and will recommend dismissal of the
complaint.

**DISCUSSION**

**1. *Judgment on the Pleadings***

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *Maggette v. Dalsheim,* 709 F.2d 800, 801 (2d Cir.1983) (citations omitted). *See* Fed.R.Civ.P. 12(b), 12(c) and 12(h)(2). The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir.2008) (quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007)). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." " *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007)). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (citations omitted). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia-Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) *per curiam* ).

## 2. *Facts and Contentions*

Plaintiff claims that due to some extensive nasal surgery in 1999, his nose emits a strong odor. Compl. ¶ 12. Plaintiff alleges that in September of 2006 he was assigned to Adult Basic Education (ABE), taught by defendant Aldrich. Compl. ¶ 13. Plaintiff claims that from September 2006 until November 19, 2006, he was

ridiculed and embarrassed by his classmates and the instructor because of plaintiff's condition. Compl. ¶ 15. Plaintiff alleges that on November 19, 2006, defendant Aldrich told plaintiff to leave the class. Compl. ¶ 16. Plaintiff claims that because of "the unprofessional and improper" way that plaintiff was removed from the class by defendant Aldrich, plaintiff "was discriminated against because of his disability." Compl. ¶ 17.

**\*2** Plaintiff states that defendant Aldrich completed an "Inmate Counseling Notification Form" and submitted the form to defendant T. Fauss, the Educational Supervisor. Compl. ¶ 18. Plaintiff claims that defendants Aldrich and Fauss discriminated against plaintiff based on his disability, "with deliberate indifference to plaintiffs [sic] need for an educational program" by taking steps to remove plaintiff from the classroom setting altogether. Compl. ¶ 20.

On November 20, 2006, when plaintiff attempted to go to defendant Aldrich's class, he was told to report to defendant Fauss's office. Compl. ¶¶ 20-21. Defendant Fauss discussed the "Inmate Counseling Notification Form" with plaintiff, but refused to show it to him. Compl. ¶¶ 22-23. Plaintiff attempted to explain that the problem was the result of his 1999 surgery. Compl. ¶ 24. Plaintiff claims that he was "threatened" with misbehavior reports based upon "unhygienic acts" and "creating a disturbance" if he did not discuss his medical [FN2] problems with defendant Fauss so that he could check with the medical department. Compl. ¶ 26.

> **FN2.** The complaint states that plaintiff was threatened if he did not disclose his "medication" problems with defendant Fauss, however, based on the rest of the complaint, it is probable that plaintiff means "medical" problems.

Plaintiff states that on November 20, 2006, defendant Aldrich submitted a "Request for Waiver from the Mandatory Education Policy" for plaintiff, based on the fact that plaintiff gave off an offensive odor and other students were complaining. Compl. ¶ 27. On November 27, 2006, defendant Fauss approved the request for waiver from the Mandatory Education Policy, and on November 29, 2006, defendant Deputy Superintendent J. Nichols also

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

approved the waiver. Compl. ¶¶ 28-30. Plaintiff states that one of these defendants made a notation on the form, that "[b]ased on [plaintiff's] medical condition, place in cell study." Compl. ¶ 31.

Plaintiff states that on November 30, 2006, he filed a grievance, alleging that the proper procedures were not followed for removing him from his educational program. Compl. ¶ 32. Plaintiff states that "as a result" of the grievance hearing, he filed a Freedom of Information Law (FOIL) request for the Inmate Counseling Notification Form and the Request for Waiver from the Mandatory Education Policy, but his request was denied. Compl. ¶¶ 33-34. The denial of plaintiff's grievance was affirmed by the Superintendent, defendant Pearlman and by the Central Office Review Committee (CORC). Compl. ¶¶ 35-37.

Plaintiff also claims that he filed a request for "Reasonable Accommodations for Inmates with Disabilities" pursuant to Department of Correctional Services (DOCS) Directive 2614 in which he requested "Minimum Security facility-Outside Clearance programs" because he had been waiting several months for a transfer. Compl. ¶ 38. On March 15, 2007, defendant Nichols informed plaintiff that he would be assigned to cell-study and assigned to the "Grounds crew," and that he was not expected to attend classroom study. Compl. ¶ 40. Plaintiff's request for transfer was denied because of "poor custody adjustment." *Id.*

**\*3** Plaintiff filed another grievance on March 15, 2007, challenging the denial of a "reasonable accommodation" and the denial of his transfer request. Compl. ¶ 42. Plaintiff states that on April 6, 2007, his grievance was accepted "to the extent that plaintiff was receiving reasonable accommodation by having independent study instead of classroom." Compl. ¶ 43. All transfer requests were to be addressed to plaintiff's counselor. *Id.* Superintendent Pearlman denied plaintiff's appeal, and the CORC upheld the Superintendent's findings. Compl. ¶¶ 44-45.

Plaintiff makes the following claims:

(1) Defendants Aldrich and Fauss violated the ADA as well as Due Process, Equal Protection, and the Eighth Amendment prohibition against cruel and unusual punishment. Compl. ¶¶ 49-50.

(2) Defendant Nichols violated plaintiff's rights to due process and equal protection rights when he failed to conduct a proper investigation into plaintiff's request for "reasonable accommodation." Compl. ¶ 51.

(3) Defendants Aldrich, Fauss, and Nichols violated New York State Public Health Law § 2780 when they disclosed plaintiff's private medical information. Compl. ¶ 52.

(4) Defendant Pearlman violated plaintiff's right to due process and equal protection when he failed to adequately investigate plaintiff's grievance appeals. Compl. ¶ 53.

(5) Defendant Raymond violated plaintiff's rights to due process and equal protection when he failed to properly investigate plaintiff's removal from the educational program and failed to ensure that DOCS was properly following the ADA. Plaintiff also claims that defendant Raymond's conduct constituted "deliberate indifference to plaintiff[']s educational needs." Compl. ¶ 54.

(6) Defendant Corrections Counselor Picente denied plaintiff due process when he changed plaintiff's program without adequate notice and based on his disability. Compl. ¶ 55.

(7) Defendant Eagan violated plaintiff's right to due process when he failed to obtain all the facts and failed to make an "independent determination" prior to affirming the denial of plaintiff's grievance appeal.

(8) Defendant DOCS violated plaintiff's right to due process, his right to be free from cruel and unusual punishment; and violated the ADA and the Rehabilitation Act.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

**3. *Eleventh Amendment***

**A. Section 1983**

The state itself cannot be sued under section 1983.
*Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d
Cir.1995) (citing *Will v. Michigan Department of Police,*
491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).
This is true whether the court is considering Eleventh
Amendment immunity or a statutory interpretation of
section 1983. *Id.* at 815 n. 3. An action against state
officers in their official capacities is tantamount to an
action against the state. *Yorktown Medical Laboratory,
Inc. v. Perales,* 948 F.2d 84, 87 & n. 1 (2d Cir.1991)
(citations omitted). Immunity from suit under the Eleventh
Amendment extends to State agencies and departments.
*Burnette v. Carothers,* 193 F.3d 52, 57 (2d Cir.1999),
*cert. denied,* 531 U .S. 1052 (2000).

**\*4** To the extent that plaintiff in this action is suing the
defendants under section *1983* for alleged constitutional
violations, plaintiff cannot name the defendants in their
official capacities, nor can he sue DOCS itself. Plaintiff
may, however, sue the defendants in their "individual
capacities" for constitutional violations under section
1983.

**B. *Statutory Relief***

The State of New York is a "public entity" within the
meaning of the ADA. 42 U.S.C. § 12131(1)(A). As stated
above, naming a state defendant in his or her "official
capacity" is tantamount to naming the State. *Henrietta D.
v. Bloomberg,* 331 F.3d 261, 288 (2d Cir.2003), *cert.
denied,* 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356
(2004). In *Henrietta D.,* the Second Circuit held that a
valid ADA claim may be stated against a state official in
his or her official capacity. *Id.* at 288-89. The ADA does
*not,* however, provide for "individual capacity" suits
against state officials. *Garcia v. S.U.N.Y. Health Science
Center of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). Thus,
any suit for statutory relief would be against the
defendants in their "official" capacities. Because plaintiff
in this case has been released from custody, there is no
injunctive relief that the defendants would be able to

provide, and thus, to the extent that injunctive relief would
have been available, plaintiff's case is moot.

Although plaintiff's claim for damages could have
proceeded, it is questionable whether the damages may
survive against the State. While it is clear that the State is
not ***immune*** under the Eleventh Amendment from an
action in Federal or State court for a violation of the
ADA,FN3 courts have been attempting to determine the
extent to which that sovereign immunity has been
abrogated by the ADA. *Bd. of Trustees of the Univ. of
Atlanta v. Garrett,* 531 U.S. 356, 360-74, 121 S.Ct. 955,
148 L.Ed.2d 866 (2001) (Title I); *Garcia,* 280 F.3d at
109-112. In *Garcia,* the Second Circuit stated that
plaintiffs must show that the Title II violation was
"motivated by discriminatory animus or ill will due to
disability." 280 F.3d at 112.

> FN3. A state may not claim sovereign immunity
> if it has specifically waived that immunity or if
> Congress has abrogated that immunity pursuant
> to its power under Section 5 of the Fourteenth
> Amendment. *Bd. of Trustees of the Univ. of
> Atlanta v. Garrett,* 531 U.S. 356, 363-64, 121
> S.Ct. 955, 148 L.Ed.2d 866 (2001). Title II of
> the ADA contains a section specifically stating
> that a State shall not be immune under the
> Eleventh Amendment from an action in Federal
> or State court for a violation of the ADA. 42
> U.S.C. § 12202.

In *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158
L.Ed.2d 820 (2004), the Supreme Court held that
Congress had the power to enforce the constitutional right
of access to courts. Lower courts have interpreted
*Tennessee v. Lane,* holding that a private suit for money
damages under Title II of the ADA may ***only*** be
maintained against the state if the Title II violation
involved a "fundamental right" such as access to courts.
*See Castells v. Fisher,* 05 CV 4866, 2007 U.S. Dist.
LEXIS 30188, * 12-13 (E.D.N.Y. March 24, 2007) (citing
cases). The court in Castells also interpreted language in
*United States v. Georgia* in making the determination that
a plaintiff must demonstrate that his fundamental rights
were violated because of his disability in order to prevail
in a private suit against the state entity under Title II of the
ADA.2007 U.S. Dist. LEXIS 30188 at *13 (citing *United*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

*States v. Georgia,* 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006)).

**\*5** In this case, the court does not have to reach the issue of whether any claim for damages survives sovereign immunity analysis because this court finds that plaintiff has not stated a claim under either the ADA or RA.

**4. *ADA and Rehabilitation Act***

The ADA and section 504 of the Rehabilitation Act are applicable to inmates in state correctional facilities. *Allah v. Goord,* 405 F.Supp.2d 265, 274 (S.D.N.Y.2005). In order to state a claim under section 504 of the Rehabilitation Act, the plaintiff must show that he (1) has a disability for purposes of the Act; (2) that he was "otherwise qualified" for a benefit that he was denied; (3) that he was denied the benefit solely because of his disability; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc.* 246 F.R.D. 432, 440 (S.D.N.Y.2007).

Under the ADA, the inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord,* 405 F.Supp.2d 265, 274 (S.D.N.Y.2005). The standards for determining whether plaintiff states a claim under the ADA and the RA are almost identical. The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch.,* 562 F.Supp.2d 294, 320 & n. 13 (D.Conn.2008).

In this case, plaintiff alleges that he had surgery on his nose in *1999,* and that as a result of that surgery, he emitted a "strong odor" in *2006,* such that he was removed from his educational program due to complaints from the instructor and other classmates about the odor. In order to establish a claim under either the ADA or RA, the plaintiff must first show that he has a *disability. Farid v. Bouey,* 554 F.Supp.2d 301, 326 (N.D.N.Y.2008). Under the Title

II of the ADA and section 504 of the RA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 147 (2d Cir.2002); *Doe v. Goord,* No. 04-CV-570, 2004 U.S. Dist. LEXIS 24808, \*62 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). Plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel,* 287 F.3d at 147.

Major life activities include, among others, caring for oneself; performing manual tasks; seeing; hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A). Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B). Plaintiff in this case has not specifically identified a disability, nor has he identified a "major life activity" that he claims has been "substantially limited." A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).[FN4] The court assumes that plaintiff is basing his claim of "disability" on the "strong odor" that he emits, allegedly as a result of his 1999 nasal surgery.

FN4. The court notes that amendments to the ADA, taking effect January 1, 2009 broadened the scope of the definition of disability, partially superceding *Toyota Mfg. See Guary v. Upstate Nat'l Bank,* 618 F.Supp.2d 272, 275 n. 1 (W.D.N.Y.2009) (citing ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008)). However, it has been held that these amendments do not apply retroactively, thus, they do not affect this Court's recommendation.

**\*6** However, plaintiff does not claim that his nasal surgery disfigured him in any way or that the nasal surgery caused plaintiff to be unable to perform any functions of daily living. Plaintiff does not claim that his odor substantially limits *his ability* to perform any major life activities.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

Plaintiff only claims that the odor was affecting other individuals in the classroom. Thus, plaintiff is unable to show that he has a disability for purposes of either the ADA or the RA.

Even if plaintiff had been able to show that he had a disability, he cannot show that he was denied a benefit based on his disability. Plaintiff was denied the opportunity to participate in a classroom environment based upon his odor, however, plaintiff was allowed "cell study." Although plaintiff states that this option was not a "reasonable accommodation," this court cannot agree. Plaintiff was afforded his educational program, albeit not in the way plaintiff preferred. The fact that plaintiff did not like the accommodation does not make it "unreasonable."

**5. *Due Process***

Plaintiff alleges that he was removed from his classroom setting without due process, and he claims that defendants Nichols, Pearlman, Raymond, and Eagan failed to properly investigate plaintiff's grievances.

**A. Educational Programs**

The law is well-settled that there is *no* property or liberty interest in a particular educational program in prison. *Toney v. Goord,* 2006 U.S. Dist. LEXIS 60987, *3-7 (S.D.N.Y. Aug. 28, 2006). The plaintiff in *Toney* argued that inmates were entitled to a particularized educational program, tailored to meet their own individual needs. *Id.* at *4. In analyzing plaintiff's claim, the *Toney* court cited various other cases in which courts in the Second Circuit, including the Second Circuit itself, have decided that N.Y. CORRECT. LAWW § 136 does not confer a property *or* liberty interest in an educational or any other type of program. *Id.* at *5 (citing *inter alia Handberry v. Thompson,* 446 F.3d 335 (2d Cir.2006); *Wright v. Coughlin,* 31 F.Supp.2d 301, 311 (W.D.N.Y.1998); *Giano v. Cuomo,* 94-CV-809, 1998 U.S. Dist. LEXIS 17215, *10 (N.D.N.Y. Oct. 28, 1998); *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y.1983)).

Because plaintiff has no due process right to any particular educational program, the defendants were not required to give plaintiff a formal hearing prior to his removal from the classroom setting. Plaintiff claims that defendant Aldrich submitted an Inmate Counseling Notification, and that plaintiff was called into defendant Fauss's office to discuss the issue. Plaintiff was well-aware of the reason for the termination of his classroom participation and had the opportunity to discuss it with defendant Fauss. No more was required. Thus, any due process claims or any claims of "deliberate indifference" to plaintiff's "educational program" may be dismissed.

**B. Grievance Procedures**

**\*7** The law is also clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003). A violation of the inmate grievance procedures does *not* give rise to a claim under section 1983. *Cancel v. Goord,* No. 00-Civ.2042, 2001 U.S. Dist. LEXIS 3440 (S.D.N.Y. Mar. 29, 2001). A claim that defendants improperly or inadequately investigated plaintiff's grievance is not actionable. Thus, plaintiff's claims that defendants Nichols, Pearlman, Raymond, and Eagan failed to properly investigate plaintiff's grievances may be dismissed.

**6. *Cruel and Unusual Punishment***

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const. amend. 8. Cruel and unusual punishment takes the form of "unnecessary and wanton infliction of pain" by prison officials. *Wilson v. Setter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In order to prevail on an Eighth Amendment claim, the plaintiff must prove both objectively, that the deprivation

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3063051 (N.D.N.Y.)
(Cite as: 2009 WL 3063051 (N.D.N.Y.))

Plaintiff alleges that defendants Aldrich, Fauss, and Nichols somehow violated N.Y. PUB. HEALTH LAW § 2780 *et seq.* by "disclosing" plaintiff's private health information. Compl. ¶ 52. The court would first point out that Article 27 of the Public Health Law deals with "HIV and AIDS Related Information." *Id.* Nowhere in plaintiff's complaint does he mention HIV or AIDS-related information. Plaintiff states only that he was "threatened" with a misbehavior report if he did not reveal his "medication" problems to defendant Fauss so that the defendant could "check with the medical department" about plaintiff's odor problem. Thus, any claim under this article of the Public Health Law may be dismissed.[FN7]

> **FN7.** Plaintiff does not make a constitutional privacy claim, however, the court notes that although prison inmates retain a right to privacy, the right is not absolute, and prison officials may impinge upon that right if it is "reasonably related to legitimate penological interests." *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999) (citations omitted). In this case, to the extent that any of plaintiff's medical information was disclosed, it was disclosed in order to determine what plaintiff's problem might be in relation to his ability to be placed in a classroom setting. Plaintiff states that he raised the issue in his grievance. Plaintiff cannot complain that the defendants did not properly investigate his complaint and then argue that they required him to disclose medical information regarding the very condition of which he was complaining.

In any event, there is no indication in plaintiff's statement of facts that there was any disclosure of medical information. Plaintiff claims he was threatened with misbehavior if he did not allow defendant Fauss to check with the medical department about his plaintiff's medical condition. Plaintiff seems to forget that he was complaining about being excluded from his classroom study. It was not unreasonable for defendant Fauss to ask to check with the medical department regarding plaintiff's claims.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for judgment on the pleadings (Dkt. No. 33) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY.**

**\*9** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2009.
Nieves v. Aldrich
Slip Copy, 2009 WL 3063051 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

C   Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Karus LAFAVE, Plaintiff,
v.
CLINTON COUNTY, Defendants.
**No. CIV.9:00CV0744DNHGLS.**

April 3, 2002.

Karus Lafave, Plaintiff, Pro Se, Plattsburgh, for the Plaintiff.

Maynard, O'Connor Law Firm, Albany, Edwin J. Tobin, Jr., Esq., for the Defendants.

### REPORT-RECOMMENDATION [FN1]

FN1. This matter was referred to the undersigned for Report-Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.3(c).

SHARPE, Magistrate J.

### I. INTRODUCTION

*1 Plaintiff, *pro se,* Karus LaFave ("LaFave") originally filed this action in Clinton County Supreme Court. The defendant filed a Notice of Removal because the complaint presented a federal question concerning a violation of LaFave's Eighth Amendment rights (Dkt. No. 1). Currently before the court is the defendant's motion to dismiss made pursuant to Rule 12(b)(6) and in the alternative, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Dkt. No. 5). LaFave, in response, is requesting that the court deny the motion, excuse his inability to timely file several motions, and to permit the

matter to be bought before a jury [FN2]. After reviewing LaFave's claims and for the reasons set forth below, the defendant's converted motion for summary judgment should be granted.

FN2. It should be noted that the date for dispositive motions was February 16, 2001. The defendant's motion to dismiss was filed on September 29, 2000. On January 9, 2001, this court converted the defendant's motion to dismiss to a motion for summary judgment, and gave LaFave a month to respond. On April 16, 2001, after three months and four extensions, LaFave finally responded.

### II. BACKGROUND

LaFave brings this action under 42 U.S.C. § 1983 claiming that the defendant violated his civil rights under the Eighth Amendment [FN3]. He alleges that the defendant failed to provide adequate medical and dental care causing three different teeth to be extracted.

FN3. LaFave does not specifically state that the defendant violated his Eighth Amendment rights but this conclusion is appropriate after reviewing the complaint.

### III. FACTS [FN4]

FN4. While the defendant provided the court with a "statement of material facts not in issue" and LaFave provided the court with "statement of material facts genuine in issue," neither provided the court with the exact nature of the facts.

Between January and July of 1999, LaFave, on several occasions, requested dental treatment because he was experiencing severe pain with three of his teeth. After being seen on several occasions by a Clinton County

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

Correctional Facility ("Clinton") doctor, he was referred to a dentist. Initially, LaFave's mother had made an appointment for him to see a dentist, but he alleges that Nurse LaBarge ("LaBarge") did not permit him to be released to the dentist's office [FN5]. Subsequently, he was seen by Dr. Boule, D.D.S ., on two occasions for dental examinations and tooth extractions.

> FN5. This appears to be in dispute because the medical records show that LaFave at first stated that his mother was going to make arrangements, but later requested that the facility provide a dentist.

IV. DISCUSSION

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc ., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); accord F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994).* The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).* Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. *Fed.R.Civ.P. 56(e);* see *Smythe v. American Red Cross Blood Services Northeastern New York Region, 797 F.Supp. 147, 151 (N.D.N.Y.1992).*

Finally, when considering summary judgment motions, *pro se* parties are held to a less stringent standard than attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).* Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).* With this standard in mind, the court

now turns to the sufficiency of LaFave's claims.

B. *Eighth Amendment Claims*

**\*2** LaFave alleges that his Eighth Amendment rights were violated when the defendant failed to provide adequate medical care for his dental condition. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1975, 128 L.Ed.2d 811 (1994).* Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)* (*quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)*).

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d (1976).* Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society." ' *Id.* (*quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)* (plurality opinion)). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain." ' *Id. at 103,97 S.Ct. at 290* (*quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)*).

In light of these elementary principles, a state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988).* By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. *See Estelle, 429 U.S. at 103, 97 S.Ct. at 290.* The essence of an improper medical treatment claim lies in proof of "deliberate indifference to serious medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

needs." *Id.* at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105, 97 S.Ct. at 291.

The standard of deliberate indifference includes both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. See *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety.' " *Id.* (*quoting Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979). However, " 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.*

**\*3** However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. See *Murphy v. Grabo,* 1998 WL 166840, at \*4 (N.D.N.Y. April 9, 1998) (*citation omitted* ). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. See *Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. See *Murphy,* 1998 WL 166840, at \*4 (*citation omitted* ).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated what injuries and medical conditions are serious enough to implicate the Eighth Amendment. See *Chance,* 143 F.3d at 702-703. In *Chance,* the Second Circuit held that an inmate complaining of a dental condition stated a serious medical need by showing that he suffered from great pain for six months. The inmate was also unable to chew food and lost several teeth. The Circuit also recognized that dental conditions, along with medical conditions, can vary in severity and may not all be severe. *Id.* at 702. The court acknowledged that while some injuries are not serious enough to violate a constitutional right, other very similar

injuries can violate a constitutional right under different factual circumstances. *Id.*

The Second Circuit provided some of the factors to be considered when determining if a serious medical condition exists. *Id.* at 702-703. The court stated that " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" ' are highly relevant. *Id.* at 702-703 (*citation omitted* ). Moreover, when seeking to impose liability on a municipality, as LaFave does in this case, he must show that a municipal "policy" or "custom caused the deprivation." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999).

In this case, the defendant maintains that the medical staff was not deliberately indifferent to his serious medical needs. As a basis for their assertion, they provide LaFave's medical records and an affidavit from Dr. Viqar Qudsi [FN6], M.D, who treated LaFave while he was incarcerated at Clinton. The medical records show that he was repeatedly seen, and prescribed medication for his pain. In addition, the record shows that on various occasions, LaFave refused medication because "he was too lazy" to get out of bed when the nurse with the medication came to his cell (*Def. ['s] Ex. A, P. 4*) .

FN6. Dr. Qudsi is not a party to this action.

According to the documents provided, Dr. Qudsi, examined LaFave on January 13, 1999, after LaFave reported to LaBarge that he had a headache and discomfort in his bottom left molar (*Qudsi Aff., P. 2*). Dr. Qudsi noted that a cavity was present in his left lower molar. *Id.* He prescribed Tylenol as needed for the pain and 500 milligrams ("mg") of erythromycin twice daily to prevent bacteria and infection. *Id.* On January 18, 19, and 20, 1999, the medical records show that LaFave refused his erythromycin medication (*Def. ['s] Ex. B, P. 1).*

**\*4** Between January 20, and April 12, 1999, LaFave made no complaints concerning his alleged mouth pain. On

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

April 12, 1999, LaFave was examined by LaBarge due to a complaint of pain in his lower left molar (*Def. ['s] Ex. A, P. 4* ). Dr. Qudsi examined him again on April 14, 1999. *Id.* He noted a cavity with pulp decay and slight swelling with no discharge. *Id.* He noted an abscess in his left lower molar and again prescribed 500 mg erythromycin tablets twice daily and 600 mg of Motrin three times daily for ten days with instructions to see the dentist. *Id.* On the same day, LaBarge made an appointment for LaFave to see an outside dentist that provides dental service to facility inmates, Dr. Boule *(Qudsi Aff., P. 3).*

On May 3, 1999, LaBarge was informed by LaFave that his mother would be making a dental appointment with their own dentist and that the family would pay for the treatment (*Def. ['s] Ex. A, P. 4* ). On that same day, Superintendent Major Smith authorized an outside dental visit. *Id.* On May 12, 1999, he was seen by LaBarge for an unrelated injury and he complained about his lower left molar (*Def .['s] Ex. A, P. 5* ). At that time, LaFave requested that LaBarge schedule a new appointment with Dr. Boule because the family had changed their mind about paying an outside dentist. *Id.* LaBarge noted that he was eating candy and informed him of the deleterious effects of candy on his dental condition. *Id.* Thereafter, LaBarge scheduled him for the next available date which was June 24, 1999, at noon. *Id.*

On June 2, 1999, LaFave again requested sick call complaining for the first time about tooth pain in his upper right molar and his other lower left molar (*Def. ['s] Ex. A, P. 6* ). He claimed that both molars caused him discomfort and bothered him most at night. *Id.* LaFave confirmed that he had received treatment from Dr. Boule for his first lower left molar one week before. *Id.* The area of his prior extraction was clean and dry. *Id.* There was no abscess, infection, swelling, drainage or foul odor noted. *Id.* LaBarge recommended Tylenol as needed for any further tooth discomfort. *Id.*

On June 21, 1999, LaFave again requested a sick call and was seen by LaBarge (*Def. ['s] Ex. A, P. 6* ). No swelling, drainage or infection was observed. *Id.* However, LaBarge noted cavities in LaFave's lower left molar and right lower molars. *Id.* LaBarge made arrangements for Dr. Qudsi to further assess LaFave. *Id.* On June 23, 1999, Dr. Qudsi examined his right lower molar and noted cavitation with

decay in that area (*Def. ['s] Ex. A, P. 7* ). In addition, he noted that LaFave had a cavity in his second left lower molar. *Id.* He prescribed 500 mg of erythromycin twice daily for 10 days and 600 mg of Motrin three times daily for 10 days, with instructions to see a dentist. *Id.*

On June 30, 1999, Officer Carroll reported that LaFave was again non-compliant with his medication regimen as he refused to get up to receive his medication (*Def. ['s] Ex. A, P. 8* ). On July 7, 1999, he again requested sick call complaining of a toothache in his lower right molar (*Def. ['s] Ex. A, P. 9* ). Again, LaFave was non-compliant as he had only taken his erythromycin for five days instead of the ten days prescribed. *Id.* During the examination, Dr. Qudsi informed LaFave that extraction of these teeth could be necessary if he did not respond to conservative treatment. *Id.* At that time, LaFave informed Dr. Qudsi that he was going to be transferred to another facility. *Id.* Dr. Qudsi advised LaFave to follow-up with a dentist when he arrived at the new facility. *Id.* Dr. Qudsi prescribed 500 mg Naproxin twice daily for thirty days with instructions to follow-up with him in two weeks if the pain increased. *Id.* The following day, LaFave requested sick call complaining to LaBarge that he had taken one dose of Naproxin and it was not relieving the pain. *Id.* He was advised that he needed to take more than one dose to allow the Naproxin to take effect. *Id.*

**\*5** On July 17, 1999, LaFave was again seen by Dr. Qudsi and he indicated that he did not believe he was benefitting from the prescribed course of conservative treatment with medication (*Def. ['s] Ex. A, P. 10* ). Subsequently, LaBarge made a dental appointment for him on July 23 [FN7], 1999, at 3:15 p.m. *Id.* On July 23, 1999, a second extraction was conducted. *Id.* On July 28, 1999, he was again seen by Dr. Qudsi, for an ulceration at the left angle of his mouth for which he prescribed bacitracin ointment. *Id.* At this time, LaFave continued to complain of tooth pain so he was prescribed 600 mg of Motrin three times daily. *Id.*

FN7. The medical records contain an error on the July 17, 1999, note which indicted that an appointment was set for June 23, 1999, however, it should have been recorded as July 23, 1999.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

On August 4, 1999, he was seen for feeling a sharp piece of bone residing in the area of his lower left molar (*Def. ['s] Ex. A, P. 11* ). Dr. Qudsi recommended observation and to follow-up with dental care if his condition continued. *Id.* The defendant maintains that given all of the documentation that he was seen when he requested to be seen and prescribed numerous medications, the medical staff was not deliberately indifferent to his serious medical needs. The defendant contends that at all times, professional and contentious dental and medical treatment were provided in regards to his various complaints.

In his response, LaFave disagrees alleging that the county had a custom or policy not to provide medical treatment to prisoners. However, LaFave does not allege in his complaint that the county had a "custom or policy" which deprived him of a right to adequate medical or dental care. In his response to the motion for summary judgment, for the first time, LaFave alleges that the county had a policy which deprived him of his rights. He maintains that his continued complaints of pain were ignored and although he was prescribed medication, it simply did not relieve his severe pain.

This court finds that the defendant was not deliberately indifferent to his serious dental and medical needs. Moreover, even if this court construed his complaint to state a viable claim against the county, LaFave has failed to show that the county provided inadequate medical and dental treatment. As previously stated, an inmate does not have the right to the treatment of his choice. The record shows that he was seen numerous times, and referred to a dentist on two occasions over a six month period. While LaFave argues that the dental appointments were untimely, the record shows that the initial delay occurred because he claimed that his mother was going to make the appointment but later changed her mind. In addition, the record demonstrates that he did not adhere to the prescribed medication regime. On various occasions, LaFave failed to get out of bed to obtain his medication in order to prevent infection in his mouth. Although it is apparent that LaFave disagreed with the treatment provided by Clinton, the record does not show that the defendant was deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendant's motion for summary judgment should be granted.

*6 WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that the defendant's motion for summary judgment (Dkt. No. 5) be GRANTED in favor of the defendant in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2002.
Lafave v. Clinton County
Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. *See* Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

> FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

### I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

### II. Motion to Dismiss

*2 When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied,513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

### III. Discussion

#### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

#### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord*, 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare* *Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and* *Zolnowski v. County of Erie*, 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with* *Harris v. Murray*, 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer*, 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See* *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer*, 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jamal KEARSEY, Plaintiff,
v.
Adeyemi WILLIAMS, Defendant.
No. 99 Civ. 8646 DAB.

Sept. 1, 2005.

*MEMORANDUM & ORDER*

BATTS, J.

**\*1** Plaintiff Jamal Kearsey, proceeding *prose,* has filed the above-captioned case against Defendant Dr. Adeyemi Williams ("Dr.Williams") pursuant to 42 U.S.C. § 1983 alleging that Dr. Williams violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. Defendant has moved to dismiss the Complaint for failure to exhaust administrative remedies, for failure to state a claim, and because Defendant is shielded by qualified immunity.[FN1] For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

> FN1. This Court granted Defendant's Motion to Dismiss for failure to exhaust administrative remedies in its June 6, 2002 Order but vacated that Order on September 20, 2004 upon Plaintiff's motion pursuant to Fed.R.Civ.P. 60(b). *See Kearsey v. Williams,* No. 99 Civ. 8646, 2004 WL 2093548 (S.D.N.Y. Sept. 20, 2004).

I. BACKGROUND

In his Complaint, Plaintiff alleges that while he was incarcerated at Rikers Island Correctional Facility ("Rikers"), Defendant, a doctor at Rikers, violated Plaintiff's Eighth Amendment rights by refusing to provide him with an asthma pump when Plaintiff experienced breathing difficulties. Specifically, on April 4, 1999, Plaintiff requested to speak with a doctor because the heat in his cell was aggravating his asthma. (Compl. at 3-4.) When Dr. Williams went to Plaintiff's cell, Plaintiff stated that his chest had "tighten[ed] up" and that he "couldn't breath[e]," and requested that Dr. Williams take him "downstairs" to get an asthma pump. (Id. at 4.) Dr. Williams declined to take Plaintiff downstairs but said that he would send a pump to Plaintiff's cell that evening. (Id.) After a period of time, a corrections officer called Dr. Williams and he also informed him of Plaintiff's medical condition. (Id.) Dr. Williams told the officer that he would bring the asthma pump. (Id.) Plaintiff alleges that Dr. Williams forgot to bring the pump. (Id.)

Plaintiff complained for a third time to Dr. Williams of his inability to breathe and stated that he was experiencing chest pain. (Id.) Once again, Dr. Williams responded by promising to send an asthma pump that evening. (Id.) Plaintiff subsequently asked for Defendant's name, to which Dr. Williams allegedly responded, "I won't send you anything now!" (Id.) Dr. Williams then handed Plaintiff a note with his name. (Id. at 5.) No pump was given to Plaintiff. Shortly after Dr. Williams left, Plaintiff borrowed an asthma pump from a fellow minute, although that pump was different from the one Plaintiff was used to. (Id.) Plaintiff complained of chest pains and breathing difficulties for the rest of the day. (Id.) On April 6, 1999, Plaintiff was having blood work done and spoke with a nurse about his medical condition. (Id.) The nurse ordered an emergency pump that arrived later in the day. (Id.)

On June 24, 1999, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant exhibited deliberate indifference to his serious medical needs in violation of Plaintiff's Eighth Amendment rights. Defendant has filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to exhaust administrative

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and, in particular, the exhaustion procedure established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, that Plaintiff failed to state a cause of action for which relief can be granted, and that Defendant is shielded from liability based on the doctrine of qualified immunity. (Def.'s Mem. Law at 1, 3, 20.) On June 6, 2002, this Court issued an Order granting Defendant's Motion to Dismiss on the ground that Plaintiff failed to comply with the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Kearsey v. Williams,* No. 99 Civ. 8646, 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002).

*2 Plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[FN2] Plaintiff argued that the Court had erred in holding that he was required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, because those procedures are required only of inmates at state-run facilities, whereas Rikers, as a municipally-run facility, has different grievance procedures. *Kearsey,* No. 99 Civ. 8646, 2004 WL 2093548, at *2 (S.D.N.Y. Sept. 20, 2004). In its September 20, 2004 Order, the Court vacated its dismissal Order, finding Plaintiff was not required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Id.* at *4.

> FN2. Plaintiff was represented by counsel when he filed the 60(b) Motion.

Because the Court's June 6, 2002 Order did not reach the additional grounds in Defendant's Motion to Dismiss, the remaining motions were *subjudice.* In this Order, the Court considers Defendant's remaining arguments: that Plaintiff has failed to state a cause of action and that Defendant is entitled to qualified immunity.

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing [the] plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burnheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In fact, it may appear to the court that "a recovery is very remote and unlikely but that is not the test." *Branham v. Meachum,* 72 F.3d 626, 628 (2d Cir.1996).

These liberal pleading standards "appl[y] with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *prose."Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). It is well-settled that *prose* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 521 (1972).

### B. Eighth Amendment

Defendant moves to dismiss the Complaint on the grounds that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

### 1. Standard for § 1983 deliberate indifference claim

Section 1983 of Title 42, United States Code, enables a plaintiff to bring a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, a plaintiff bringing a § 1983 action must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

demonstrate that "the conduct complained of was committed by a person acting under color of state law ... [and that] this conduct deprived a person of rights ... secured by the Constitution or laws of the United States." *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 29-30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)) (internal quotations omitted). Section 1983 is not in itself "a source of substantive rights," but instead "provides a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

**\*3** One such source of federal rights is the Eighth Amendment of the Constitution, which states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Estelle v. Gamble,* the Supreme Court held that prison employees' "deliberate indifference [to an inmate's] serious medical needs" violates the inmate's Eighth Amendment rights and is actionable under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). A plaintiff pursuing a § 1983 claim for deliberate indifference to serious medical needs must meet a two-prong standard by demonstrating a serious medical need (the objective prong) and by showing that the defendant employee possessed the requisite culpable mental state (the subjective prong). See*Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Serious medical need

The objective prong of the deliberate indifference standard requires a showing of a "sufficiently serious" medical need. *Hathaway,* 99 F.3d at 553 (internal quotations and citations omitted). While "it is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage," several factors are helpful in determining the seriousness of a medical condition. *Chance,* 143 F.3d at 702-03 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)).

A serious medical need is generally characterized by "a condition of urgency that may result in degeneration or extreme pain" or "the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702 (citation omitted). Whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment" reflects on the seriousness of the medical need, as does the effect of the condition on the inmate's "daily activities" and the extent to which the condition causes "chronic and substantial pain." *Id.* (citation omitted). The refusal to treat a patient suffering from what ordinarily would not be considered a serious medical condition also raises Eighth Amendment concerns if the condition is easily treatable and degenerative. See*Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (holding that "the refusal to treat an inmate's tooth cavity unless the inmate consents to extraction of another diseased tooth constitutes a violation of the Eighth Amendment"). The constitutional implications of a decision not to treat an inmate's medical condition depend on the specific facts of the case-"a prisoner with a hang-nail has no constitutional right to treatment, but ... prison officials [who] deliberately ignore an infected gash ... might well violate the Eighth Amendment." *Id.* at 137-37 (internal quotations and citations omitted).

**\*4** While the failure to treat an inmate's generalized asthmatic condition may not implicate the Eighth Amendment, "an actual asthma attack, depending on the severity, may be a serious medical condition." *Scott v. DelSignore,* No. 02 Civ. 029F, 2005 WL 425473, at \*9 (W.D.N.Y. Feb. 18, 2005); see*also Patterson v. Lilley,* No. 02 Civ. 6056, 2003 WL 21507345, at \*3-4 (S.D.N.Y. June 30, 2003). Indeed, "it is common knowledge that a respiratory ailment, such as asthma, can be serious and life-threatening." *Whitley v. Westchester County,* No. 97 Civ. 0420, 1997 WL 659100, at \*4 (S.D.N.Y. Oct. 22, 1997). An acute asthma attack is inarguably a "condition of urgency" that may cause "substantial pain" and that "reasonable doctor[s] or patient[s] would find important and worthy of comment or treatment." *Chance,* 143 F.3d at 702 (citation omitted); see*Whitley,* No. 97 Civ. 0420(SS), 1997 WL 659100, at \*4.

Plaintiff has alleged that on three separate occasions, he

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

informed Defendant that he was unable to breathe. (Compl. at 4-5.) He also complained that his chest had "tighten[ed] up," and, later, that he was experiencing "chest pains." (Id.) Plaintiff resorted to using a fellow inmate's inhaler when Defendant refused to provide him with one, which suggests the seriousness of his need. (Id. at 5.) Moreover, by alleging in his Complaint that his asthma "started to act up," Plaintiff describes a time-specific incident more in line with an asthma attack than with a generalized asthmatic condition. (Id. at 4.)

Defendant cites *Reyes v. Corrections Officer Bay,* No. 97 Civ. 6419, 1999 WL 681490 (S.D.N.Y. Sept. 1, 1999), as a case similar to this one where the court found that the plaintiff did not allege a sufficiently serious medical condition. However, unlike the plaintiff in *Reyes,* who went ahead with his scheduled visit with his family after complaining of an asthma attack, Plaintiff continued to complain to officers of his condition. Plaintiff resorted to self-medication, by borrowing an asthma pump from a fellow inmate in order to alleviate his condition. In light of these facts, it can hardly be said that Plaintiff was merely suffering from "discomfort."

Accordingly, the Court finds that in his Complaint, Plaintiff alleges facts that he experienced an asthma attack, serious enough to constitute a sufficiently serious medical need for purposes of an Eighth Amendment claim.

3. Deliberate indifference

To satisfy the subjective prong of the deliberate indifference standard, Plaintiff must prove that the prison official was aware of, and consciously disregarded, the prisoner's medical condition. *Chance,* 143 F.3d at 703; *see also Farmer,* 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance,* 143 F.3d at 702 (quoting *Farmer,* 511 U.S. at 837). While purposefully refusing to treat a serious medical condition constitutes deliberate indifference, it need not be the official's purpose to harm the inmate; "a state of mind that is the equivalent of criminal recklessness" is sufficient. *Hathaway,* 37 F.3d at 553.

**\*5** A physician's mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a § 1983 action. *Estelle,* 429 U.S. at 105-06; *Chance,* 143 F.3d at 703. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

In the instant case, Plaintiff informed Defendant on a number of occasions that he was unable to breathe and that he was experiencing chest pains. (Compl. at 4.) While Defendant's initial decision not to take Plaintiff downstairs for immediate treatment is the sort of prisoner-physician dispute regarding the particularities of medical care that is outside the scope of the Eighth Amendment, the unmistakable inference to be drawn from Plaintiff's allegation that Defendant refused to provide an asthma pump when Plaintiff asked for Defendant's name is that Defendant withheld medical care as retaliation or punishment for Plaintiff's conduct. (Id.) Because consciously delaying treatment in order to punish or retaliate against an inmate meets the subjective standard for deliberate indifference, the Court finds that the Complaint adequately alleges that Defendant acted with the requisite culpable mental state in refusing to treat Plaintiff's asthma attack.

C. Qualified Immunity

Defendant's final argument for dismissal is that, as a government official, Dr. Williams is entitled to qualified immunity.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

At the outset, the Court notes that while a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir.2004). This is because "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (internal quotations and citations omitted). The plaintiff thus benefits from all reasonable inferences against the defendant's qualified immunity defense on a Rule 12(b)(6) motion. *Id.*

The defense of qualified immunity protects public officers, including prison physicians, from civil actions related to their conduct while they are acting in an official capacity so long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003). Such a defense "serves important interests in our political system. It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct." *Sound Aircraft Services, Inc. v. Town of East,* 192 F.3d 329, 334 (2d Cir.1999). Qualified immunity also serves the important public interest of "protecting public officials from the costs associated with the defense of damages action ... [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public positions." *Crawford-El v. Britton,* 523 U.S. 574, 590 at fn. 12 (1998).

**\*6** Qualified immunity shields a defendant from liability "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Englarged Sch. Dist.,* 293 F.3d 246, 250 (2d Cir.2001); *Brosseau v. Haugen,* 125 S.Ct. 596, 599 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *see*

*alsoHarlow,* 457 U.S. at 818-19.

"[A] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). Determining the constitutional question first serves two purposes: it spares the defendant of unwarranted demands and liability "customarily imposed upon those defending a long drawn-out lawsuit" and determining the constitutional question first "promotes clarity in the legal standards for official conduct, for the benefit of both the officers and the general public ." *Id.*

If a deprivation of a constitutional right has been alleged, a court must determine whether the constitutional right was clearly established by determining: (1) if the law was defined with reasonable clarity, (2) if the Supreme Court or the law of the Second Circuit affirmed the rule, and (3) whether a reasonable defendant would have understood from existing law that the conduct was lawful. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 634, 640 (1987).

As the Supreme Court made clear in *Saucier,* determining whether the right in question was clearly established requires particularized, case-specific analysis. *Id.* at 201-02. The case-specific nature of the inquiry does not mean that official conduct is protected by qualified immunity whenever "courts had not agreed on one verbal formulation of the controlling standard." *Id* . at 202-03. A "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct" even if courts have not ruled on the constitutionality of the specific act in question, and previously decided cases with comparable but not identical facts influence the clarity of the right in question. *Hope v. Pelzer,* 536 U.S. 730 at 741 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The fundamental question is whether "the state of the law" at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

the time of the alleged violation gave the defendant "fair warning" that his conduct was unconstitutional. *Id.*

**\*7** Even if the right is clearly established, "defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established protection." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). "[R]easonableness is judged against the backdrop of the law at the time of the conduct.... [T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau,* 125 S.Ct. at 599.

In the present matter, the Court has already determined that Plaintiff's allegations, taken as true, indicate that Defendant violated Plaintiff's Eighth Amendment rights by refusing to treat Plaintiff's asthma attack in retaliation for Plaintiff's request for Defendant's name. *Seesupra* at 10-13.

With regard to whether the right allegedly violated was clearly established at the time of the violation, neither the Supreme Court nor the Second Circuit has held that an asthma attack constitutes a serious medical condition for purposes of a deliberate indifference claim. In considering whether Defendant nonetheless had fair warning of the unconstitutionality of the conduct he is alleged to have engaged in, the Court notes that the Second Circuit has repeatedly held as unlawful denials of treatment that "cause or perpetuate pain" falling short of torture and not resulting in death. *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003). Among the conditions the Second Circuit has deemed serious for Eighth Amendment purposes are a tooth cavity, *Harrison,* 219 F.3d at 137; a degenerative hip condition, *Hathaway,* 99 F.3d 550, 551-52; a painful tissue growth, *Brock,* 315 F.3d at 161; a ruptured Achilles tendon that caused pain and swelling, *Hemmings v. Gorczyk,* 134 F.3d 104, 106-07 (2d Cir.1998); and an eye condition that led to blindness in one eye, *Koehl v. Dalsheim,* 85 F.3d 86, 87 (2d Cir.1996). These various conditions, held to be sufficiently serious, are not life-threatening, although they are painful. An asthma attack, however, can be both painful and fatal. Given the state of the law in the Second Circuit, Defendant had ample warning that the law prohibits a prison doctor from

consciously withholding medical care from an inmate with a painful and potentially fatal medical condition.

The Court finds that at this early stage of litigation, Defendant has not shown that he is entitled to qualified immunity.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED.

Defendant shall file an Answer to the Complaint within thirty (30) days of this Order.

SO ORDERED.

S.D.N.Y.,2005.
Kearsey v. Williams
Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Larry FERNANDEZ, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
CORRECTION, Warden Robert Shaw, Correction
Captain John Doe, and Correction Officer Thornton,
Defendants.
**No. 08 CV 4294(KMW).**

March 29, 2010.

*OPINION AND ORDER*

KIMBA M. WOOD, District Judge.

**\*1** Plaintiff Larry Fernandez, proceeding *pro se,* brings this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while incarcerated at Rikers Island, he suffered a fractured jaw as a result of an assault by another **inmate**. Plaintiff claims that Defendants New York City Department of Correction ("DOC"), Warden Robert Shaw, Correction Captain "John Doe," and Correction Officer Thornton ("Defendants") failed to protect him from the assault, and failed to attend to his medical needs, in violation of the Eighth and Fourteenth Amendments.

Defendants DOC and Warden Shaw move to dismiss the complaint pursuant Rule 12( b)( 6) of the Federal Rules of Civil Procedure on the grounds that (1) Plaintiff fails to state a claim for deliberate **indifference** to his safety under § 1983; (2) Plaintiff fails to state a claim for deliberate **indifference** to his **medical** needs under § 1983; (3) Plaintiff's claims against Warden Shaw must be **dismissed** because he was not personally involved in the alleged deprivations; (4) Plaintiff's claims against DOC must be **dismissed** because DOC is not a suable entity; (5) to the extent Plaintiff's Complaint is construed to name the City

of New York as a defendant, Plaintiff has failed to state a *Monell* claim for municipal liability; and finally (6) Plaintiff's claims must be **dismissed**, in any event, because he failed to exhaust administrative remedies as required by Section 1997e(a) of the Prison Litigation Reform Act ("PLRA").

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss. Specifically, the Court concludes that (1) Plaintiff fails to state a clam for deliberate indifference to his safety; (2) Plaintiff fails to state a claim for deliberate indifference to his medical needs; (3) Plaintiff's claims against Warden Shaw must also be dismissed for lack of personal involvement; and (4) Plaintiff fails to state a claim for municipal liability against either DOC or the City.<sup>FN1</sup> As set forth in greater detail below, the Court dismisses Plaintiff's claims without prejudice. If Plaintiff wishes to continue this action, Plaintiff shall file an amended complaint not later than May 26, 2010.

> **FN1.** Plaintiff, it appears, has not served his complaint on Correction Officer Thornton. Nonetheless, because the Court finds that Plaintiff fails to state a claim for liability under § 1983 against any official at the prison, the Court dismisses Plaintiff's claims against Correction Officer Thornton. For the same reason, the Court dismisses Plaintiff's claims against Correction Captain "John Doe."

*BACKGROUND*

I. *Factual Allegations*

Plaintiff alleges that, on or about December 24, 2005, he was incarcerated at the Vernon C. Bain Correction Center ("VCBC") on Rikers Island. Plaintiff alleges that, at approximately 2:00 p.m., he was brushing his teeth in the bathroom of the "dorm" area, when another **inmate**, Simmon Elliot, "[c]rept up [ ] behi[n]d[ ]" him, and began punching him in the jaw with a closed fist. <sup>FN2</sup> (Compl.¶ II.) Plaintiff alleges that, at the time of the assault, no

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

officers were monitoring the dorm area (which the complaint refers to as station "B"). Plaintiff alleges that Correction Officer "Thornton" was at another station (station "A"), where she was "joking around with [ ]other officers." (*Id.*) Plaintiff alleges that when Officer Thornton saw the altercation between Plaintiff and **inmate** Simmons, she came to the dorm area, separated Plaintiff from **inmate** Simmons, and "after a couple of hours" removed **inmate** Simmons from the dorm area.<sup>FN3</sup> (*Id.*) Plaintiff alleges that, at around 8:15 p.m., he noticed that his face "had started to swell up," and that he then requested medical attention. Plaintiff alleges that the officer on duty called a captain, and that the captain sent Plaintiff to the medical clinic. The doctors at the clinic informed Plaintiff that his jawbone was fractured. (*Id.*)

> FN2. Defendants assert that, it appears from their review of the prison records, that the **inmate** who allegedly assaulted Plaintiff was named "Leon Simmons." (Defs. Mem. at 3 n. 2.)

> FN3. Defendants assert, from their review of the prison records, that Plaintiff's complaint incorrectly identifies Correction Officer "Thornton" as the officer involved, and that, instead, Correction Officer "Bolling" appears to have responded to the altercation. For the purposes of this motion, the Court will continue to refer to the officer involved as Officer "Thornton."

**\*2** Plaintiff alleges that he was taken to Bellevue hospital where he underwent surgery to repair his jaw. (*Id.*) Plaintiff alleges that, on or about December 28, 2005, Plaintiff was released from Bellevue hospital and taken back to Rikers Island. Plaintiff alleges that he was unable to eat for "a couple of days" because his "mouth was wired shut." (*Id.*) Plaintiff claims that, for the remainder of his stay at Rikers Island, he "never received medical treatment [ ]or medication," and that he was not transferred to a "medical facility to receive proper medical care." (*Id.*)

Finally, Plaintiff states that he never filed a grievance at the prison because he did not understand prison rules and "did not know about Grievance or law." (*Id.* ¶ IV, E, F.)

## II. *Procedural History*

On May 7, 2008, Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging a deprivation of his civil rights under the Eighth and Fourteenth Amendments. (Dkt. No. 2.) Plaintiff seeks an award, from each defendant, of $1500 per month for six years "for negligence of Plaintiff's safety." Plaintiff also seeks an award, from the DOC, of $8 million for pain and suffering. (Compl.¶ V.)

On March 9, 2010, Plaintiff served his summons and complaint on DOC and Warden Shaw. By order dated April 7, 2009, Magistrate Judge Ellis granted defendants DOC and Warden Shaw an extension of time until June 1, 2009 to answer or otherwise respond to the complaint. (Dkt. No. 10.) Magistrate Judge Ellis subsequently extended the deadline until July 22, 2009.

On July 22, 2009, Defendants DOC and Warden Shaw timely filed this motion to dismiss. Plaintiff's opposition was due on August 21, 2009, and Defendants' reply, if any, was due September 4, 2009. Plaintiff did not submit anything in opposition, and on September 9, 2009, Defendants requested that the court deem the motion fully submitted.

On October 1, 2009, this case was transferred from Judge Lynch to the undersigned. By order dated December 1, 2009, this Court *sua sponte* extended the time for Plaintiff to file a response to January 15, 2010. Plaintiff did not submit anything in opposition or request an extension of time.<sup>FN4</sup> Thus, the Court's decision on Defendants' motion to dismiss follows.

> FN4. In its December 1, 2009 Order, the Court warned that, if Plaintiff did not file an opposition or request an extension of time by January 15, 2010, the Court would consider dismissing Plaintiff's complaint for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Court also explained that, after that date, the Court would not consider any subsequent submission by Plaintiff in opposition

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

to Defendants' motion to dismiss.

## STANDARD OF REVIEW

For a complaint to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, Twombly, 550 U.S. at 555, and "draw[ ] all inferences in the plaintiff's favor," Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir.2006). When considering a motion to dismiss a pro se complaint, courts must construe the complaint liberally, and interpret it to raise the strongest arguments that it suggests. See, e.g., Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000). "This is especially true when dealing with civil rights complaints." See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir.2001).

## DISCUSSION

*3 The Court construes Plaintiff's complaint as raising two separate claims pursuant to § 1983:(1) a claim for deliberate indifference to Plaintiff's safety based on the officials' failure to prevent the assault, and (2) a claim for deliberate indifference to Plaintiff's medical needs based on the officials' failure to provide him any additional treatment at VCBC following the surgery to repair his fractured jawbone. As set forth below, Plaintiff has not alleged facts that permit the Court to reasonably infer that any officer or municipality is liable to Plaintiff for a violation of his civil rights.

### I. § 1983 Claim For Deliberate Indifference to Prisoner's Safety

#### A. Legal Standards

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir.1996) (citing Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Prison officials [thus] have a duty ... to protect prisoners from violence at the hands of other prisoner." Farmer, 511 U.S. at 833; see also id. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal quotation marks omitted).

However, "not ... every injury suffered by one prisoner at the hands of another" warrants imposition of constitutional liability pursuant to § 1983. Id. Liability for such an injury is imposed only when the prison officials' actions or omissions demonstrate "deliberate indifference" to the safety of the inmates in their custody. Hayes, 84 F.3d at 620.

Where, as here, a plaintiff's claim is based on a failure to prevent harm, the test for deliberate indifference is twofold: (1) a plaintiff must first demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm"; (2) a plaintiff must then demonstrate that the "defendant prison officials possessed sufficient culpable intent." Id. A prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm, and he disregards that risk by failing to take reasonable measures to abate the harm. Id.; see Farmer, 511 U.S. at 837 (explaining that this state of mind is "more blameworthy than negligence" and is "equivalent to criminal recklessness").

#### B. Application

##### 1. Substantial Risk of Harm

Plaintiff argues that the absence of officers in the immediate vicinity of the dorm area (station-B) posed a substantial risk of serious harm to inmate safety. Defendants argue that Plaintiff fails to explain how having an officer present could have prevented the attack by inmate Simmons. (See Compl. ¶ 2 (alleging that Simmons "[c]rept up[ ] behi[n]d[ ]" him, and began punching him in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

the jaw with a closed fist).) Defendants also argue that Officer Thornton's actions demonstrate that reasonable measures were taken to protect **inmates** in the area according to the Complaint, when Officer Thornton saw the altercation, she came to the area, separated **inmate** Simmons from Plaintiff, and, "after a couple of hours," removed **inmate** Simmons from the dorm area. *See George v. Burton,* No. 00-Civ-143 (NRB), 2001 WL 12010, at * 3 (S.D.N.Y. Jan. 4, 2001) (noting that conditions posing a substantial risk of harm are present where "prison guards simply stand by and permit an attack to proceed"); *see also McGriff v. Coughlin,* 640 F.Supp. 877, 880 (S.D.N.Y.1986) (Leval, J.) ("The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection.")

**\*4** It is difficult to determine, on the present record, whether and to what extent the alleged failure to station an officer at the dorm area contributed to a risk of harm to **inmates** at the facility. In this case, for example, it is possible that had Officer Thornton been in the dorm area at the time of Simmons' attack, he could have prevented or interrupted the attack. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has alleged facts from which a court could reasonably infer a substantial risk of serious harm. Plaintiff, however, has still failed to allege that any officer possessed sufficiently culpable intent, which is required for a finding of liability under § 1983.

### 2. *Sufficiently Culpable Intent*

Plaintiff's complaint fails to state facts from which a court can reasonably infer that any officer at DOC had knowledge of a risk to Plaintiff, and disregarded that risk by failing to take reasonable measures to protect Plaintiff's safety. Plaintiff has not pled, for example, that he and **inmate** Simmons were involved in a prior altercation, that Simmons had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between Plaintiff and **inmate** Simmons. Absent clear notice of a risk of harm to the **prisoner**, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks." *Zimmerman v. Macomber,* No. 95 Civ. 882, 2001 WL 946383, at * 5 (S.D.N.Y. Aug.21, 2001); *see King v. Dep't of Corr. .,* No. 95 Civ. 3057, 1998 WL 67669, at * 4

(S.D.N.Y.1998) (failure to protect **inmate** from isolated attack did not sustain § 1983 claim).

Plaintiff does complain that, at the time of the assault, Officer Thornton was at another station "joking around" with other officers. This allegation, however, at most supports a claim of negligence against Officer Thornton for failing to station herself at her assigned area.[FN5] Mere negligence by a prison officer does not establish a claim for "deliberate indifference" to **prisoner's** safety. *Hayes,* 84 F.3d at 620; *see Zimmerman,* 2001 WL 946383, at * 6 (holding that, where officer did not have knowledge of substantial risk to **inmate's** safety, "his failure to station himself at the officer's desk does not raise a constitutional question"). The facts as stated in Plaintiff's complaint thus do not support a finding of constitutional liability.

> FN5. In fact, Plaintiff specifically identified, as the basis for his requested relief, "negl[i]gence of plaintiff's safety." (Compl.¶ 5.) *See George v. Burton,* No. 00 Civ.143, 2001 WL 12010, at * 4 (S.D.N.Y. Jan. 4, 2001).

Accordingly, Plaintiff fails to state a claim for deliberate indifference to his safety.

### II. *§ 1983 Claim For Deliberate Indifference to **Prisoner's** Medical Needs*

#### A. *Legal Standards*

To establish a claim for deliberate indifference to a **prisoner's** medical needs, a **prisoner** must show that: (1) as an objective matter, the alleged deprivation is "sufficiently serious"; and (2) as a subjective matter, that the "charged official [acted] with a sufficiently culpable state of mind." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). In determining whether a condition is sufficiently serious, courts consider factors such as "the existence of an injury that a reasonable medical doctor would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v.*

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

*Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). In order for a prison official to possess a sufficiently culpable state of mind, he must know of, and disregard, an excessive risk to an **inmate's** health or safety. *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005); *see Farmer,* 511 U.S. at 837.

### B. *Application*

**\*5** In this case, Plaintiff has failed to allege facts from which a court can reasonably infer that any prison official acted with deliberate indifference to his medical needs. Plaintiff alleges, in sum, that upon returning from Bellevue for surgery on his jaw, his mouth was kept wired shut, he could not eat for three days, and that he did not receive any additional medicine or treatment.[FN6] Plaintiff, however, has not alleged that he sought any additional treatment, that any additional treatment was required, or that there was anything prison officials could or should have done to appropriately treat Plaintiff's post-surgery condition. Plaintiff has failed to identify any prison official who was aware he needed treatment, or who denied him medical care after his release from the hospital.[FN7] Thus, Plaintiff fails to state a claim for deliberate indifference to his medical needs.

> **FN6.** For purposes of Defendants' motion to dismiss, the Court will assume that the condition described by Plaintiff, *i.e.,* having his mouth wired shut and being unable to eat for several days, is "sufficiently serious" under the first prong of the constitutional standard.

> **FN7.** To the extent that Plaintiff also claims that he was improperly denied treatment immediately following **inmate** Simmons' attack, this claim is clearly without merit. Plaintiff alleges that he, himself, discovered only at around 8:15 p.m. that evening that his face had swelled up. Plaintiff alleges that he notified the officer on duty; that the officer called a captain; that the captain sent him to the clinic; and that he was then sent to Bellevue. If Plaintiff himself was unaware of the extent of his injuries following the altercation, Plaintiff cannot show that prison officials knew of and disregarded a risk to his medical needs.

### III. *Personal Involvement*

Defendants argue that Warden Shaw must be dismissed from the litigation for lack of "personal involvement" in the alleged constitutional deprivations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted); *see Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") In the case of a defendant-supervisor, personal involvement is established when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of **inmates** by failing to act on information indicating that constitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (internal citations omitted).

Plaintiff has not alleged how Warden Shaw was personally involved in either failing to prevent the attack or failing to attend to Plaintiff's medical needs. Accordingly, Plaintiff's claims against Warden Shaw must also be dismissed for lack of personal involvement.[FN8]

> **FN8.** In fact, Plaintiff mentions Warden Shaw only in the caption of the complaint and in a heading titled "parties in this complaint." (*See* Compl. ¶ 1.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

IV. *Municipal Liability*

Plaintiff named DOC as a defendant, rather than naming the City itself. Section 396 of the New York City Charter, however, provides that "[a]ll proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of an agency, except otherwise provided by law." Accordingly, DOC is not a suable entity and all claims against DOC must be dismissed. *See George,* 2001 WL 12010, at *2; *Echevarria v. Dep't of Corr.,* 48 F.Supp.2d 388, 391 (S.D.N.Y.1999).

**\*6** Even if the Court construes Plaintiff's Complaint as naming the City as a defendant, this claim must be dismissed for failing to state a claim for municipal liability under § 1983. To establish a § 1983 claim against a municipality, a plaintiff must show that the officials who deprived him of a constitutional right acted pursuant to an official municipal policy or custom. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see Reynolds v. Guliani,* 506 F.3d 183, 190-91 (2d Cir.2007). Here, Plaintiff has failed to allege that any prison official acted pursuant to a municipal policy or custom. Plaintiff has also failed to allege any facts from which a court could reasonably infer that a relevant policy or custom existed, and that it contributed to Plaintiff's injuries. Instead, Plaintiff appears to allege a single, isolated episode of misconduct by correction officers at VCBC in failing to adequately provide for his safety and medical needs. Thus, Plaintiff's claim for municipal liability must be dismissed.

V. *Failure to Exhaust Administrative Remedies Pursuant to the PLRA*

Under the Prison Litigation Reform Act ("PLRA"), an **inmate** is required to exhaust administrative remedies before filing any federal action challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 531, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). As a general rule, when a plaintiff fails to exhaust his administrative remedies, the district court must dismiss the action. *Neal v. Goord,* 267 F.3d 116, 117-18 (2d Cir.2001).

There are circumstances, however, in which an **inmate** is excused from the PLRA's exhaustion requirement. Courts in the Second Circuit consider (1) whether the administrative remedies were available to the **inmate**; (2) whether defendants' action interfered with plaintiff's ability to exhaust his administrative remedies; and (3) whether special circumstances justify an **inmate's** failure to comply with this exhaustion requirement. *Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006).

In this case, Plaintiff concedes in his Complaint that he never filed a grievance under DOC's **Inmate** Grievance Resolution Program.[FN9] Defendants have submitted the New York City DOC **Inmate** Grievance Resolution Program Directive, as evidence of the availability of administrative remedies to Plaintiff. (*See* Nguyen Decl.; Ex. C.) However, according to the Directive, "complaints pertaining to an alleged assault" are "non-grievable" issues under the program. (*Id.* at II.B.) Therefore, it appears that Plaintiff Plaintiff was not required to file an administrative grievance with respect to his assault claim, and that only Plaintiff's medical needs claim is subject to the PLRA's exhaustion requirement.

> **FN9.** Plaintiff states that he did not file a grievance because he did not understand prison rules and because he "did not know about Grievance [procedure] or law." (Compl.¶ IV, E, F.)

It is not clear, however, whether a medical needs claim that is reasonably intertwined with a claim pertaining to an alleged assault is subject to the requirement of exhaustion of administrative remedies under the DOC policy, and if so, whether the DOC policy is nonetheless sufficiently ambiguous such that an **inmate** may be justifiably excused from complying with the exhaustion requirement in a case such as this one. *See Harris v. Bowden,* No. 03 Civ. 1617(LAP), 2006 WL 738110, at * 3 (S.D.N.Y. Mar.23, 2006) (noting that a claim for deliberate indifference to medical needs is subject to the requirement of exhaustion of administrative remedies under the City's grievance program, but failing to consider whether a medical needs claim reasonably intertwined with a non-grievable issue is also subject to the exhaustion requirement); *see also Hemphill v. New York,* 380 F.3d 680, 690 (2d Cir.2004) (explaining that "a reasonable interpretation of prison

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1222017 (S.D.N.Y.)
(Cite as: 2010 WL 1222017 (S.D.N.Y.))

grievance regulations may justify an **inmate's** failure to follow procedural rules to the letter"). Defendants have not addressed this issue in their briefing. Because the Court grants Defendants' motion to dismiss Plaintiff's claims, the Court does not also consider whether Plaintiff's medical needs claim is barred by the PLRA.

***CONCLUSION***

**\*7** For the reasons stated above, Defendant's motion to dismiss is GRANTED. (Dkt. No. 14.) The Court dismisses Plaintiff's claims against Defendants Warden Shaw, Correction Officer John Doe, and Correction Officer Thornton *without prejudice.* The Court dismisses Plaintiff's claims DOC *with prejudice.* If Plaintiff wishes to bring a claim for municipal liability, he must bring this claim against the City of New York. Plaintiff shall file any amended complaint *not later than May 26, 2010.* If Plaintiff fails to file an amended complaint by that date, the Court will enter a final order of dismissal.

Petitioner is provided with a copy of all unpublished decisions cited in this Order.

SO ORDERED.

S.D.N.Y.,2010.
Fernandez v. New York City Dept. of Correction
Slip Copy, 2010 WL 1222017 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4810066 (C.A.2 (N.Y.)))

**C**

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Pierre FRANSUA, Plaintiff-Appellant,
v.
Dr. VADLAMUDI, T.G. Eagen, Dr. Sturtz,
Defendants-Appellees.
**No. 05-1715-pr.**

Nov. 3, 2008.

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge* ).
Brian Hail, Goodwin Procter LLP (Warren D. Dodson, Haynes and Boone LLP, of counsel), New York, NY, for Appellant.

Andrew M. Cuomo, Attorney General of the State of New York (Barbara D. Underwood, Solicitor General, Nancy A. Spiegel, Senior Assistant Solicitor General, Julie S. Mereson, Assistant Solicitor General, of counsel) Albany, NY, for Appellee.

Present ROBERT D. SACK and ROBERT A. KATZMANN, Circuit Judges, PAUL J. KELLY,[FN*] Circuit Judge.

FN* The Honorable Paul J. Kelly, of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY ORDER**

**\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of dismissal be, and it hereby is, VACATED and the case REMANDED to the district court for further proceedings.

Pierre Fransua appeals the judgment of the district court granting a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss his complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

By order of this court, Fransua, who had been proceeding *pro se,* was appointed counsel to represent him on appeal as to his claim that Dr. Sturtz, Dr. Vadlamudi, and T.G. Eagen violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs. The remainder of his appeal was dismissed.

We review a district court's dismissal of a complaint for failure to state a claim de novo. *Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir.2002) (per curiam). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007). To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

To prevail on an Eighth Amendment claim for medical mistreatment in prison, the prisoner must show that the defendant acted with deliberate indifference to a serious medical need. *See Farmer v. Brennan,* 511 U.S. 825 (1994). The prisoner must satisfy two requirements: "First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious-that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration or extreme pain. Second, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind." *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (internal quotation marks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4810066 (C.A.2 (N.Y.)))

and citations omitted). This state of mind "need not reach the level of knowing and purposeful infliction of harm.... Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir.2006)* (citations omitted).

While Fransua makes several allegations regarding the seriousness of his medical needs and the lack of adequate care given to him by state prison officials and doctors, his complaint does not allege facts upon which a reasonable juror could infer that defendant doctors possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claim. He does not allege that defendant doctors were aware of the serious risks to which they allegedly subjected him. Fransua's claim against defendant Eagen was, therefore, also properly dismissed, because Fransua failed to plead an underlying constitutional violation needed to ground a claim based on supervisory liability. *See id.* at 283.

*2 Because Fransua failed adequately to plead a cause of action, the grant of a motion to dismiss without leave to replead would ordinarily be appropriate. But under the unusual circumstances of this case, where he was proceeding *pro se* when he filed the complaint, but is now represented by counsel, we conclude that he should be permitted leave to amend his complaint to attempt to state a claim upon which relief can be granted. *See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999)* ("[D]ismissal of [this] case would normally be proper. However, 'a *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " (quoting *Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)*)).

We therefore vacate the district court's dismissal of Fransua's complaint with prejudice, and direct the court to enter a similar order of dismissal without prejudice.

For the foregoing reasons, the judgment of the District Court is hereby VACATED and the case is REMANDED to the district court.

C.A.2 (N.Y.),2008.
Fransua v. Vadlamudi
Slip Copy, 2008 WL 4810066 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony D. AMAKER, Plaintiff,
v.
T. KELLEY, J. Landry, P.T. Justine, O. Mayo, T.G.
Egan, D.A. Senkowski, M. Allard, R. Girdich, G.S.
Goord, J. Wood, Doctor I. Ellen, J. Mitchell, H.
Worley, Doctor L.N. Wright, S. Nye, M. McKinnon, M.
Rivers, L. Coryer, A. Pavone, L. Cayea, D. Armitage, J.
Carey, P.W. Annetts, R. Rivers, E. Aiken, S.Gideon, R.
Lincoln, D. Linsley, C.O. Gordon, J. Reyell, D.
Champagne, J. Kelsh, W. Carter, F. Bushey, Cho
Phillip, Cho Drom, A.J. Annucci, L.J. Leclair, D.
Laclair, T.L. Ricks, A. Boucaud, H. Perry, B. Baniler,
R. Lamora, E. Liberty, G. Ronsom, R. Maynard, C.
Daggett, D. Selksky, K.M. Lapp, R. Sears, J. Babbie,
Sgt. Champagne, Doctor K. Lee, R. Vaughan, and M.
Nisoff,[FN1] Defendants.

FN1. Plaintiff filed an amended complaint
purporting to add the New York State Senate and
New York State Assembly as Defendants, *see*
Dkt. No. 78; however, in its May 13, 2002
Order, the Court, while granting Plaintiff leave to
amend, denied Plaintiff leave to add these
entities as defendants, *see* Dkt. No. 75.

No. 9:01-CV-877 (FJS/DEP).

Feb. 9, 2009.

Anthony D. Amaker, Wallkill, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General
State of New York, David B. Roberts, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

**ORDER**

SCULLIN, Senior District Judge.

*1 In a Report and Recommendation dated September 9,
2008, Magistrate Judge Peebles recommended that this
Court grant Defendants' motion for summary judgment on
all claims and that the Court deny Defendant Rivera's
motion to dismiss as moot. *See* Dkt. No. 249. Plaintiff
filed objections to those recommendations. *See* Dkt. No.
251.

Plaintiff makes two objections that have nothing to do
with the merits of his claims,. He objects to the fact that
Magistrate Judge Peebles did not attach unpublished cases
cited in the Report and Recommendation to it and to the
recommendation that the Court dismiss Defendants who
have not answered or otherwise opposed the complaint.
*See id.* 1-2. Plaintiff also objects, generally, to the
application of preclusion and other legal doctrines to his
claims. Plaintiff's remaining objections, for the most part,
are not actually objections, but consist of further legal
argument regarding his claims. *See id.* at 2-6. The Court's
review of Magistrate Judge Peebles' Report and
Recommendation, in light of Plaintiff's objections,
demonstrates that Magistrate Judge Peebles correctly
applied the appropriate law and that Plaintiff's objections
are without merit.[FN2]

FN2. The Court notes that, in addition to
Magistrate Judge Peebles' reasoning regarding
Plaintiff's complaint about Defendants' allegedly
retaliatory searches of his cell, cell searches,
even if retaliatory, do not offend the Constitution
and are not actionable. *See Bumpus v. Canfield,*
495 F.Supp.2d 316, 327 (W.D.N.Y.2007) (citing
*Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct.
3194, 82 L.Ed.2d 393 (1984)) (other citation
omitted).

Therefore, after carefully considering Magistrate Judge
Peebles' Report and Recommendation, Plaintiff's
objections thereto, as well as the applicable law, and for
the reasons stated herein and in Magistrate Judge Peebles'
Report and Recommendation, the Court hereby

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

**ORDERS** that Magistrate Judge Peebles' September 9, 2008 Report and Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that Defendant Rivera's motion to dismiss is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendants and close this case.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Anthony D. Amaker, a New York State prison **inmate** who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983, claiming deprivation of his civil rights. Plaintiff's complaint, as amended, contains an amalgamation of claims based upon a series of events alleged to have occurred at the two correctional facilities in which he was housed during the relevant period, naming in excess of fifty individuals as well as the New York State Senate and Assembly as defendants, and seeking both injunctive and monetary relief.

Currently pending before the court are two motions brought by the defendants. In the first, defendants seek the entry of summary judgment dismissing plaintiff's claims on a variety of grounds, principally on the merits, though additionally urging their entitlement to qualified immunity from suit. One of the named defendants, Rafael Rivera, a corrections officer, has additionally moved requesting dismissal of plaintiff's claims against him for failure to state a claim upon which relief may be granted, arguing that plaintiff's allegations are facially insufficient to support a cognizable claim against him. For the reasons set

forth below I recommend that defendants' summary judgment motion be granted, and in light of that recommendation find it unnecessary to address defendant Rivera's separate motion.

I. *BACKGROUND*

**\*2** Plaintiff is a prison **inmate** entrusted to the care and custody of the New York State Department of Correctional Services (the "DOCS"). Amended Complaint (Dkt. No. 78) ¶ 3. Plaintiff's incarceration results from a 1989 conviction for murder in the second degree, for which he was sentenced to a period of imprisonment of between twenty-five years and life. Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 229-2) ¶ 1. At the times relevant to his claims plaintiff was designated initially to the Clinton Correctional Facility ("Clinton"), where he was housed beginning in June of 1998, and later the Upstate Correctional Facility ("Upstate"), into which he was transferred on or about October 31, 2001.[FN1] Amended Complaint (Dkt. No. 78) ¶¶ 3, 5, 21.

> FN1. Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which **inmates** are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

In his amended complaint plaintiff has interposed a wide range of claims, many of which are unrelated and some of which, as will be seen, were included in a subsequent action brought by the plaintiff in this court, based upon events occurring at Clinton, and later at Upstate, between June, 1998 and January of 2002. One of the more prominent claims now asserted by the plaintiff concerns efforts by DOCS authorities to obtain a Deoxyribonucleic Acid ("DNA") sample from him as authorized under New York's DNA Indexing Statute, N.Y. Executive Law Art. 49-B, as well as disciplinary action taken by prison officials based upon his refusal to comply with that request. Plaintiff also alleges, *inter alia,* that defendants were deliberately indifferent to his serious medical needs, and that he was 1) exposed to inhumane conditions of confinement; 2) denied meaningful access to the law

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

library facilities and deprived of court papers; 3) retaliated against for exercising his right to file grievances and seek other forms of redress; 4) subjected to unlawful racial discrimination and cell searches; and 5) unlawfully required to pay for food and spices required to enjoy meals consonant with his religious beliefs.[FN2]

> **FN2.** The specifics of plaintiff's various causes of action will be discussed in more detail in the portions of this report addressing each grouping of claims.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on June 1, 2001, Dkt. No. 1, and on June 6, 2002 filed a second amended complaint-the operative pleading currently before the court.[FN3] Dkt. No. 78. In his amended complaint, plaintiff asserts a variety of constitutional and statutory claims against fifty-five named defendants, including the Commissioner of the DOCS and many of the agency's employees.[FN4] *Id.*

> **FN3.** In addition to this action, plaintiff has commenced two other suits in this court. The first, *Anthony D. Amaker v. Glenn S. Goord, et al.,* Civil Action No. 03-CV-1003 (NAM/DRH) (N.D.N.Y., filed 2003) (*"Amaker II"* ), addresses incidents occurring at Upstate as well as subsequent to plaintiff's transfer into the Downstate Correctional Facility, and later to the Great Meadow Correctional Facility. A review of the relevant pleadings from that case reflects significant overlap between the claims asserted in that action and those now before the court. The other action, commenced by plaintiff on March 22, 2006 and encaptioned *Anthony D. Amaker, et al. v. Glenn S. Goord, et al.,* Civil Action No. 06-CV-0369 (GLS/RFT) (N.D.N.Y., filed 2006) (*"Amaker III"* ), was transferred to the Western District of New York on July 6, 2006, pursuant to 28 U.S.C. § 1404(a).

> **FN4.** Also named as defendants in plaintiff's amended complaint were the New York State

Senate and the New York State Assembly. *See* Dkt. No. 78. Those entities, which are clearly not parties amenable to suit, have not been formally joined as defendants in the action, however, in light of the issuance of an order on May 13, 2002 denying plaintiff's application for leave to amend to the extent that he sought permission to add them as defendants. *See* Dkt. No. 75.

Since its inception some seven years ago, this case has developed a tortured procedural history which has included the filing of more than one motion for interim injunctive relief and various interlocutory appeals, all of which have been dismissed. Now that discovery has been completed, by motion filed on February 13, 2007 defendants have moved for summary judgment dismissing plaintiff's claims on a variety of grounds. Dkt. No. 229. In addition, Corrections Officer R. Rivera, a named defendant who has yet to answer plaintiff's complaint, has also moved seeking dismissal of plaintiff's claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted as against him. Dkt. No. 237. Plaintiff has since responded to defendants' summary judgment motion by the filing on May 25, 2007 of a memorandum, affidavit, and various other materials, Dkt. No. 240, but has not opposed defendant Rivera's dismissal motion.[FN5]

> **FN5.** Among plaintiff's submissions in opposition to the pending motions is a request that the court strike an affirmation submitted by defendants' counsel, Jeffrey P. Mans, Esq., as well as declarations of Dr. Vonda Johnson and James Bell, from the record. Dkt. No. 240-03. Having reviewed the Johnson and Bell declarations, I discern no basis to strike them from the record. Turning to Attorney Mans' declaration, I find that it appears to be offered principally to describe the exhibits being submitted in connection with defendants' motion and to set forth legal argument to supplement their memorandum. While the inclusion of legal argument in such an attorney's affidavit is ordinarily not appropriate, *Donahue v. Uno Restaurants, LLC,* No. 3:06-CV-53, 1006 WL 1373094, at *1 n. 1 (N.D.N.Y. May 16, 2006) (McAvoy, J.), and it is doubtful that defendants'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

attorney is positioned to include in an affidavit assertions of fact beyond his personal knowledge, *Housing Works, Inc. v. Turner,* No. 00 Civ. 1122, 2003 WL 22096475, at *1 (S.D.N.Y. Sept. 9, 2003), I have chosen not to strike the affidavit, and instead to consider it solely for the limited purpose for which it is being offered.

**\*3** Defendants' motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Standards of Review*

1. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint

to support his or her claim. *Twombly,* 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 127 S.Ct. at 1969, 1974; *see also Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") (quoting *Twombly* ). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (3d Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1974).

**\*4** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

2. *Summary Judgment Standard*

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When the entry of summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511

n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

**\*5** When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. *DNA Testing*

In or about September of 2001, prison officials at Upstate initiated efforts to obtain a DNA sample from the plaintiff. Amended Complaint (Dkt. No. 78) ¶ ¶ 18-19. Plaintiff's refusal to cooperate with those efforts led to the issuance by Corrections Sergeant Cayea of a misbehavior report charging Amaker with failing to obey an order. *Id.; see also* Mans Aff. (Dkt. No. 229-14) Exh. B. A Tier II hearing was convened to address the charges lodged in the misbehavior report, resulting in a finding of guilt and the imposition of a penalty which included thirty days of keeplock confinement, with a corresponding loss of privileges.[FN6],[FN7] *Id.*

> FN6. The DOCS conducts three types of **inmate** disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,*

Page 6

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

FN7. Keeplock is a form of confinement restricting an **inmate** to his or her cell, separating the **inmate** from others, and depriving him or her of participation in normal prison activities. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989); *Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998) (citing *Gittens* ); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N .D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia,* *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). **Inmate** conditions while keeplocked are substantially the same as in the general population. *Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). While on keeplock confinement an **inmate** is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise. *Id.* Keeplocked **inmates** can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals, *Id.* The primary difference between keeplock and the general population confinement conditions is that keeplocked **inmates** do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

On October 10, 2001 plaintiff was again directed to provide a DNA sample, but similarly refused to honor the request. Amended Complaint (Dkt. No. 78) ¶ 20. A second misbehavior report was issued to Amaker as a result of that failure to comply with the directive of prison staff, resulting in a finding of guilt, following a Tier III hearing, and the imposition of a penalty which included six months of disciplinary confinement in a special housing unit ("SHU"), again with a corresponding loss of privileges.[FN8] *Id.; see also* Mans Aff. (Dkt. No. 229-14) Exh. C.

FN8. In New York, SHU cells are utilized for segregating **prisoners** from general population areas for various reasons including, predominantly, disciplinary purposes. *Lee v. Coughlin,* 26 F.Supp.2d 615, 618 (S.D.N.Y.1998) (citing 7 NYCRR pts. 253, 254, and 301). The conditions typically experienced by **inmates** confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books. *Husbands v. McClellan,* 990 F.Supp. 214, 218 (W.D.N.Y.1998) (citing 7 NYCRR pt. 304).

On December 26, 2001 the DOCS Deputy Commissioner for Correctional Facilities, Lucien J. LeClaire, Jr., wrote to the plaintiff to inform him that in the event of an **inmate's** refusal to provide requested DNA samples corrections officials were authorized to obtain the required sample through the use of reasonable force, and that "appropriate additional disciplinary sanctions" could be imposed, further noting that upon investigation into the matter, apparently based upon a complaint lodged by the plaintiff, it was determined that in the course of their dealings with him corrections staff had "acted appropriately and in accordance with policies and procedures set by the [DOCS] governing DNA testing." Amended Complaint (Dkt. No. 78) Exh. A-5; *see also* Mans Aff. (Dkt. No. 229-14) Exh. D. Despite that letter, Amaker persisted in his refusal to provide the required DNA sample, leading to further disciplinary action against him.[FN9] Amended Complaint (Dkt. No. 78) ¶¶ 23-26.

FN9. The subsequent disciplinary proceedings necessitated by virtue of plaintiff's refusal to provide a DNA sample are chronicled in a report and recommendation issued in another action brought by plaintiff Amaker. *See Amaker II,* Dkt. No. 160, slip op. at pp. 3-4.

Among the claims interposed by the plaintiff in his second amended complaint are those surrounding the requirement that he provide a DNA sample pursuant to New York's Statutory DNA database regime and the imposition of the discipline based upon his repeated refusals to comply with directives to that effect. In asserting those claims plaintiff does not chart a new path, but instead raises claims similar to those which have previously been raised by him and other fellow **inmates**, and uniformly rejected by the courts.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

**\*6** On the heels of the decision by the New York Court of Appeals in *People v. Wesley,* 83 N.Y.2d 417, 611 N.Y.S.2d 97, 633 N.E.2d 451 (1994) holding, *inter alia,* that DNA evidence is admissible in a criminal trial, the New York Legislature enacted a series of provisions aimed at the creation of a DNA databank. *Zarie v. Beringer,* No. Civ. 9:01-CV-1865, 2003 WL 57918, at \*3 (N.D.N.Y. Jan. 7, 2003) (Sharpe, M.J.). Among those was a statute authorizing the gathering of DNA samples from individuals convicted of certain offenses after January 1, 1996. *See* 1994 N.Y. Laws, ch. 737, §§ 1, 3; *see also Nicholas v. Goord,* 430 F.3d 652, 654 n. 1 (2d Cir.2005). In 1999 that provision was amended to apply to any person convicted of certain prescribed offenses, including murder, prior to the statute's effective date, provided that at the time of amendment he or she was still serving a prison sentence imposed in connection with the earlier offense. 1999 N.Y. Laws, ch 560, § 9; *see Nicholas,* 430 F.3d at 654 n. 1.

Since its enactment New York's DNA indexing provision, like similar provisions from other jurisdictions, has withstood various challenges, including to its constitutionality. *See, e.g., United States v. Amerson,* 483 F.3d 73, 75 (2d Cir.2007); *Nicholas,* 430 F.3d at 672. In response to one such challenge, the Second Circuit has held that the DNA indexing provision is lawful, concluding that special needs of the state giving rise to enactment of the statute trump the relatively minimal privacy interests and intrusion associated with a DNA sampling requirement. *Nicholas,* 430 F.3d at 671-72; *see also Roe v. Marcotte,* 193 F.3d 72, 78-80 (2d Cir.1999) (upholding a Connecticut DNA indexing statute substantially similar to New York's DNA provisions).

The basis for plaintiff's challenge in this case to the constitutionality of the DNA collection requirement is not entirely clear from his amended complaint and motion opposition papers. This uncertainty is of no moment, however, since the validity of New York's DNA indexing statute has been upheld by courts, including in this circuit, "over almost every conceivable constitutional challenge." *Jackson v. Ricks,* No. 9:02-CV-00773, 2006 WL 2023570, at \*23 (N.D.N.Y. July 18, 2006) (Sharpe, D.J. and Lowe, M.J.) (collecting cases); *see also Doe v. Moore,* 410 F.3d 1337, 1349-50 (11th Cir.2005) (upholding Florida's sex offender DNA collection statute in the face of equal protection and due process challenges).

In challenging New York's DNA enactment plaintiff appears to be crafting an argument which is based upon alleged non-compliance with its statutory empowering provisions, under which the Division of Criminal Justice Services ("DCJS") is tasked with establishing the required notification procedures. That argument, however, appears to present questions of compliance with state law and regulation which are not cognizable under section 1983. *See Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir.1985).

**\*7** Regardless of the nature of his challenge to New York's indexing provision, Amaker is now precluded from pursuing that claim by virtue of a prior decision from this court addressing a similar challenge by him. Among the claims which he raised in *Amaker II* were those addressed to the efforts of DOCS employees, including corrections officials at Upstate, to collect a DNA sample from him. Plaintiff's challenge in that action to the constitutionality of New York's DNA indexing provisions was resolved against him based upon the issuance on November 30, 2007 of a report and recommendation by United States Magistrate Judge David R. Homer, and approval of that report, in pertinent part, by Chief Judge Norman A. Mordue on July 10, 2008. *See Amaker II,* Dkt. Nos. 160, 167.

Since the arguments now asserted in connection with the DNA challenge were or could have been raised by Amaker in his prior action, he is precluded from now relitigating those claims. *See Akhenaten v. Najee, LLC,* 544 F.Supp.2d 320, 327-28 (S.D.N.Y.2008). Accordingly, the portion of plaintiff's amended complaint which challenges the testing requirements under the DNA identification indexing law lacks merit, and is subject to dismissal.

C. *The Torture Victim Protection Act of 1991*

Among the claims set forth in plaintiff's complaint, as amended, is a cause of action under the Torture Victim Protection Act of 1991, (the "TVPA"), Pub.L. No. 102-256, 106 S. Stat. 73 (1992), based upon defendants' actions toward him. Amended Complaint (Dkt. No. 78) ¶¶ 28, 34, 36. In their motion, defendants also seek summary dismissal of this claim, as a matter of law.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

The TVPA provides, in relevant part, that

> [a]n individual who, under actual or apparent authority, or color of law, *of any foreign nation* (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; ...

Pub.L. No. 105-256, § 2(a), 106 Stat. at 73 (emphasis added). As can be seen, by its express terms the TVPA applies only to those who act under the authority of a foreign nation. *See In re: Agent Orange Product Liability Litig.,* 373 F.Supp.2d 7, 110-13 (E.D.N.Y.2005); *see also Arar v. Ashcroft,* 414 F.Supp.2d 250, 264 (E.D.N.Y.2006), *aff'd,* 532 F.3d 157 (2d Cir.2008). Since Amaker plainly cannot meet this requirement, his cause of action under the TVPA is deficient as a matter of law, and thus subject to dismissal.

D. *Property Loss*

Although the portion of his complaint in which he summarizes his claims does not reference such a cause of action, elsewhere in that pleading Amaker alleges that certain of his property was withheld by defendants Perry and Baniler, and later destroyed by defendant LaClair.[FN10] Amended Complaint (Dkt. No. 78) ¶ 21. Defendants also seek dismissal of this potential claim as being without merit.

> FN10. To some extent there is overlap between plaintiff's property loss claims and his contention that through confiscation or destruction of documents and other materials related to his ongoing litigation, he has been deprived of access to the courts. The property loss at issue in connection with this claim could also potentially serve as adverse action alleged by the plaintiff in connection with his retaliation claim. Both of these claims are addressed elsewhere in this report. *See* pp. 21-26, and 42-48, *post.*

It is well-settled that no constitutionally cognizable cause of action exists for the destruction or loss of a prison **inmate's** property, provided that an adequate remedy is afforded by the state courts for such deprivation. *Griffin v. Komenecky,* No. 95-CV-796, 1997 WL 204313, at *2 (N.D.N.Y. Apr. 14, 1997) (Scullin, J.). In this instance, plaintiff was entitled to avail himself of the mechanism prescribed under section nine of the New York Court of Claims Act to redress his loss of property claim. *See id.; see also Brooks v. Chappius,* 450 F.Supp.2d 220, 226-27 (W.D.N.Y.2006). Accordingly, plaintiff's loss of property cause of action is without merit, and subject to dismissal as a matter of law. *See Brooks,* 450 F.Supp.2d at 227.

E. *Eleventh Amendment/Sovereign Immunity*

**\*8** Plaintiff's claims in this action are brought against the various named defendants, both as individuals and in their official capacities. *See, e.g.,* Amended Complaint (Dkt. No. 78) ¶ 1. Noting that plaintiff's claims against the defendants in their official capacities are tantamount to those against the State, defendants seek their dismissal.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[FN11] *Richards v. State of New York Appellate Division, Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91, 102 S.Ct. 2325, 2328-29 (1982)). "To the extent that a state official is sued for damages in his official capacity ... the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[FN12] *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991); *Kentucky v. Graham,* 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105 (1985).

> FN11. In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. _Northern Ins. Co. of New York v. Chatham County,_ 547 U.S. 189, 193, 126 S.Ct. 1689, 1693 (2006).

FN12. By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. _See Hafer,_ 502 U.S. at 30-31, 112 S.Ct. at 364-65.

Since plaintiff's damage claims against the named defendants in their official capacities are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal. _Daisernia v. State of New York,_ 582 F.Supp. 792, 798-99 (N.D.N.Y.1984) (McCurn, J.). I therefore recommend that this portion of defendants' motion be granted, and that plaintiff's damage claim against the defendants in their capacities as state officials be dismissed.

F. _Plaintiff's Court Access Claims_

Scattered intermittently throughout plaintiff's complaint are allegations that through their actions defendants denied him access to the courts, in violation of his rights under the First Amendment. Plaintiff's court access denial claims are based principally upon his contention that prison law library facilities available to him were inadequate, and additionally that through their actions corrections workers precluded him from accessing those materials. _See_ Amended Complaint (Dkt. No. 78) ¶¶ 7, 16, 32. Defendants seek dismissal of those claims based principally upon plaintiff's failure to demonstrate the existence of any injury or prejudice experienced as a result of their actions.

An **inmate's** constitutional right to "meaningful" access to the courts is well-recognized and firmly established. _Bounds v. Smith,_ 430 U.S. 817, 823, 97 S.Ct. 1491, 1495 (1977) (citations and internal quotation marks omitted). Although in _Bounds_ the Supreme Court held that this right

of access requires prison authorities "to assist **inmates** in the preparation and filing of meaningful legal papers by providing **prisoners** with adequate law libraries or adequate assistance from persons trained in the law[,]" _id._ at 828, 97 S.Ct. at 1498, the Court later clarified that

**\*9** prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Because _Bounds_ did not create an abstract, freestanding right to a law library or legal assistance, an **inmate** cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.

_Lewis v. Casey,_ 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996) (internal quotations and citations omitted). Instead, an **inmate** "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." _Id._ In other words, to establish a violation of the right of access to the courts, a plaintiff must demonstrate that defendants' interference caused him or her actual injury-that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" as a result of defendants' conduct.[FN13] _Id._ at 353, 116 S.Ct. at 2181.

FN13. Among the court access arguments asserted by plaintiff is the claim that on one occasion on September 10, 1998 plaintiff gave legal mail of an unspecified nature to Corrections Officer R. Lincoln, who never delivered it. Amended Complaint (Dkt. No. 78) ¶ 7. Since neither plaintiff's complaint nor the record now before the court discloses, however, that plaintiff suffered any prejudice as a result of that failure, this claim lacks merit. _See Govan v. Campbell,_ 289 F.Supp.2d 289, 297-98 (N.D.N.Y.2003) (Sharpe, M.J.). Moreover, to the extent that the failure to promptly deliver that mail might be proven to have legal consequences, it is noted that that significance is substantially ameliorated by the prison mailbox rule which provides, in essence, that court papers are deemed filed when delivered by a prison **inmate** to corrections officials. _See Houston v. Lack,_ 487 U.S. 266,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

270-72, 108 S.Ct. 2379, 2382-83 (1988); Mingues v. Nelson, No. 96 CV 5396, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004).

In support of his court access claim plaintiff maintains that he was denied law library access between January 2, 2001 and January 18, 2001, and again from the filing of a second grievance related to library access on February 26, 2001 until March 5, 2001. Amended Complaint (Dkt. No. 78) ¶ 16. Plaintiff contends that this lack of access effectively precluded him from filing a motion to compel-presumably related to discovery-in a pending federal court action.[FN14] Id.

> FN14. As defendants note, many of plaintiff's allegations regarding library access denial fail to identify any particular defendant to whom the denial can be fairly attributed. Since personal involvement in a constitutional deprivation is an essential requirement of a civil rights claim under 42 U.S.C. § 1983, Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995), this failure thus provides an additional, independent basis for dismissal of at least portions of plaintiff's court access claims.

Plaintiff's library access claims are addressed in a declaration given by Michael McKinnon, the DOCS employee charged with oversight of the law library at Clinton. See McKinnon Decl. (Dkt. No. 229-4) ¶¶ 1-2. In that declaration McKinnon describes the law library facilities and procedures at Clinton, including the established protocol for requesting library access. Id. ¶¶ 2-3. McKinnon notes that despite plaintiff's allegations to the contrary, see Amended Complaint (Dkt. No. 78) ¶ 7, he never denied library services to the plaintiff or any other **inmate** when faced with a court imposed deadline. Id. ¶ 6. McKinnon also notes that over the four month period during which the plaintiff could have commenced a proceeding under New York Civil Practice Law and Rules Article 78 to challenge the disciplinary action initiated in June of 1998, one of the potential legal proceedings for which he could have requested access to library facilities, he was granted library access on seven occasions during July, eleven times in August, five times in September and on six occasions in October of 1998, and that in the following months he was permitted use of the library facilities on approximately ten days in

November of 1998 and nine times in December of that year. Id. ¶ 6. According to that declaration, records at Clinton also show that between June of 1999 and September, 2001, plaintiff was scheduled for more than four hundred library call outs, and was granted special access status on February 24, 2001 in light of an impending March 26, 2001 court deadline. Id. ¶ 9.

**\*10** The existence of prejudice is an essential element of a First Amendment court access denial claim. Lewis, 518 U.S. at 353, 116 S.Ct. at 2181. It is true that in his amended complaint plaintiff does claim, although in general and conclusory terms, that he was prejudiced by defendants' actions, allegedly having missed a court ordered deadline on more than one occasion, causing adverse consequences in connection with his legal actions. See, e.g., Amended Complaint (Dkt. No. 78) ¶¶ 16, 32. Faced with defendants' motion raising lack of prejudice, however, plaintiff has failed to offer any specifics regarding those claims and to adduce proof from which a reasonable factfinder could conclude that he did indeed experience prejudice by virtue of defendants' failure to provide him with library access, and to mail court documents, leaving instead only his conclusory allegations without underlying evidentiary support.

In sum, the record now before the court neither supports plaintiff's claim that he was denied access to adequate library facilities while at Clinton, nor does it establish the existence of prejudice suffered as a result of any such deprivation, if indeed it did occur. Accordingly, I recommend dismissal of plaintiff's court access claims as a matter of law.

## G. Plaintiff's RICO Cause of Action

In broad and conclusory terms devoid of specifics, plaintiff alleges that various of the defendants named in the action have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Amended Complaint (Dkt. No. 78) ¶¶ 26, 35. Plaintiff's RICO claim appears to be predicated upon an alleged mail fraud scheme engaged in by corrections workers and "approved by Comm. Goord, Supt. Senkowski" to steal **inmate** mail, and includes his request that the court refer the matter to the United States Attorney

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

for prosecution. *Id.* at ¶¶ 26, 35, 39. Interpreting plaintiff's complaint as seeking criminal prosecution for the alleged violation, and noting that the prerequisite for establishing a claim under that provision cannot be met in this instance, defendants seek dismissal of plaintiff's RICO claim. Despite his submission of comprehensive materials in opposition to defendants' motion, including a thirty-eight page affidavit and a twenty-one page memorandum of law, plaintiff does not address this portion of defendants' motion.

The substantive prohibitions under RICO are set forth principally in 18 U.S.C. § 1962(a)-(c); subdivision (d) of that provision prohibits parties from conspiring to violate one or more of those substantive provisions. In relevant part, section 1962 provides that

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**\*11** 18 U.S.C. § 1962(c); *see Salinas v. United States,* 522 U.S. 52, 62, 118 S.Ct. 469, 476 (1997).

In addition to providing for potential criminal prosecution, RICO also affords a civil right of action for violation of its provisions, authorizing recovery of treble damages as well as costs of the action, including reasonable attorneys' fees, in the event of an established violation 18 U.S.C. § 1964(c). *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 183, 117 S.Ct. 1984, 1987-88 (1997). To plead a cognizable civil RICO claim, a party must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity," as well as "injury to business or property as a result of the RICO violation." *Anatian v. Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999).

The pleading of a civil RICO violation is subject to the heightened requirement that its supporting allegations must be pleaded with particularity. *See* Fed.R.Civ.P. 9(b); *see also Anatian,* 193 F.3d at 88-89. Additionally, the

court's local rules require that when a civil RICO claim is asserted before this court, a RICO statement containing certain specified information must be filed by the party raising the claim. N.D.N.Y.L.R. 9.2. A review of the record in this case reveals that neither of these critical requirements has been met, thereby providing a threshold basis for dismissal of plaintiff's RICO claim. *See Spoto v. Herkimer County Trust,* No. 99-CV-1476, 2000 WL 533293, at *3 n. 2 (N.D.N.Y. Apr. 27, 2000) (Munson, J.).

Turning to the merits, it is clear that the record falls considerably short of establishing a basis upon which a reasonable factfinder could conclude that the requisite elements of a RICO claim have been established. While plaintiff alleges in conclusory fashion the existence of mail fraud at the prison facilities in which he was housed, and mail fraud potentially qualifies as racketeering activity, *see Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 454, 125 S.Ct. 1991, 1995 (2006), the record fails to disclose the existence of a conspiracy of two or more persons, lacks evidence of two or more acts constituting a pattern of racketeering activity, does not identify the relevant "enterprise", fails to demonstrate how the conspirators, through the pattern of racketeering activity, conducted the enterprise, and alleges no injury to business or property resulting from defendants' actions. *See* Amended Complaint (Dkt. No. 78) ¶¶ 26, 35. Since the record fails to disclose evidence from which a reasonable factfinder in this case could conclude that the requisite elements to sustain a civil RICO claim have been met, I recommend dismissal of that cause of action on the merits.[FN15]

> FN15. In light of this finding I also recommend against referral of this matter to the United States Attorney, a matter which, while within the court's inherent authority in the event of a perceived criminal violation, *see, e.g., ACLI Gov'n't Sec., Inc. v. Rhoades,* 989 F.Supp. 462, 467 (S.D.N.Y.1997), does not appear to be warranted. This determination, of course, does not preclude the plaintiff from filing a complaint with the United States Attorney or other appropriate federal authorities.

H. *Deliberate Medical Indifference*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

One of the central themes presented in plaintiff's prolix, narrative-styled amended complaint is his claim that certain of the defendants have failed to properly treat his various medical conditions, many of which are not specified with any degree of particularity. Defendants contend that based upon the record now before the court they are entitled to dismissal of that claim as a matter of law, arguing that plaintiff neither suffers from a serious medical need, nor were the named defendants subjectively and deliberately indifferent to any such need.

**\*12** The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an **inmate's** confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at \*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M .J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to **inmate** health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at \*2 (same).

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, " 'sufficiently serious' ". *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citing *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108 (1995). A medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). A serious medical need can also exist where " 'failure to treat a **prisoner's** condition could result in further significant injury or the unnecessary and wanton infliction of pain' "; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley,* 219 F.3d 132, 136-37 (2d Cir.2000) (quoting, *inter alia, Chance* ). Relevant factors in making this determination include injury that a " 'reasonable doctor or patient would find important and worthy of comment or treatment' ", a condition that " 'significantly affects' " a **prisoner's** daily activities, or causes " 'chronic and substantial pain.' " *Chance,* 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at \*2-3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

**\*13** Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to **inmate** health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at \*2 (same). It is well-established, however, that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance,* 143 F.3d at 703; *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828 (1992). The question of what diagnostic techniques and treatments should be administered to an **inmate** is a "classic example of a matter for medical judgment"; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

to their patients. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703; *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998).

Plaintiff's **medical indifference** claims, while referenced elsewhere, are summarized in paragraph twenty-seven of his amended complaint, and augmented in considerably greater detail in his summary judgment submissions including, notably, his affidavit. Plaintiff's medical concerns appear to center upon **disagreement** over the course of defendants' treatment of his diminished eyesight; chronic back pain, diagnosed as degenerative disc disease; and pain, "clicking and popping" in his knee. Amended Complaint (Dkt. No. 78) ¶¶ 12, 27. Generally speaking, plaintiff's **medical indifference** claim recites a litany of instances in which plaintiff did not receive desired medication, medical equipment, physical therapy, or treatment for his conditions.[FN16] *See* Amended Complaint (Dkt. No. 78) ¶ 27.

> FN16. From a comparison of plaintiff's medical indifference claims in this case with those rejected in *Amaker II,* it appears that there is considerable overlap.

### 1. *Serious Medical Needs*

In their motion, defendants maintain that none of the conditions upon which plaintiff's medical indifference claims are predicated rise to a level of constitutional significance. In *Amaker II* the court found that plaintiff's claims regarding his vision and delay in eye treatment did not establish the existence of a serious medical need or injury. *See* Report and Recommendation in *Amaker II* (Dkt. No. 160) at pp. 15-16 and Memorandum-Decision and Order (Dkt. No. 167) at pp. 3, 6. Similarly, the *Amaker II* court concluded that in complaining regarding the treatment of his knee, including denial of magnetic resonance imaging ("MRI") testing and knee braces, plaintiff also failed to make the threshold requirement of establishing a serious physical injury or need. *Id .* at 16-17. Likewise, while noting a division among the courts regarding this issue, the court in that case nonetheless concluded that plaintiff's claim of abdominal pain, as drafted, did not successfully present a material issue of fact regarding serious medical need. *Id.* at 17.

*14 Having carefully reviewed the record now presented, like the court in *Amaker II* I doubt plaintiff's ability to establish, at trial, the existence of a serious medical condition of constitutional significance to which the defendants were deliberately indifferent. Because I find that Amaker cannot establish indifference on the part of defendants to any of his medical needs, regardless of whether they were sufficiently serious to trigger protections of the Eighth Amendment, and defendants do not appear to press the issue, I nonetheless find it unnecessary to address the sufficiency of plaintiff's allegations in this regard.

### 2. *Deliberate Indifference*

Turning to the subjective element of the deliberate indifference inquiry I find, as did the court in *Amaker II,* that rather than disclosing any indifference on the part of prison medical officials to plaintiff's medical needs, the record instead reflects a comprehensive and at times intense pattern of treatment for plaintiff's various medical conditions which, though plainly not to his complete liking, easily fulfills constitutionally mandated minimal requirements.

Plaintiff's medical indifference claim appears to relate to treatment received at both of the correctional facilities at issue in this case, although the vast majority of those allegations relate to his complaints regarding medical attention received while at Clinton. To the extent that plaintiff's claims involve the sufficiency of medical treatment administered at Upstate, similar claims were carefully reviewed by the court in *Amaker II,* resulting in a finding that the defendants were not deliberately indifferent to his serious medical needs during the time of his incarceration at Upstate. *See* Report and Recommendation in *Amaker II* (Dkt. No. 160) at pp. 15-17. That determination is dispositive of the portion of plaintiff's medical indifference claim in this action related to his medical care at Upstate.[FN17] *See* *Akhenaten,* 544 F.Supp.2d at 327-28.

> FN17. Plaintiff's medical indifference claims carry forward to his time at Upstate, following a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

transfer into that facility on October 31, 2001. In his complaint, as amended, plaintiff asserts that during the course of that transfer he was "made to walk in waist chain hurting his herniated discs in his lower back causing his legs to go numbed [sic] [and that he] never was send [sic] to a medical doctor ...." Amended Complaint (Dkt. No. 78) ¶¶ 21, 24. This claim is contradicted by plaintiff's medical records, however, which reveal that upon his arrival at Upstate he was medically examined, screened and orientated, with no indication of any complaints of pain or numbness at that time; in fact, according to his medical records, plaintiff denied having any injury or current medical complaint when questioned during that process. *See* Mans Aff. (Dkt. No. 229-14) Exh. A, 10/31/08 Entrance Exam Form, Screening and Physical Assessment Form, **Inmate** Orientation Form, and Incoming Draft Form. Despite plaintiff's further claim that he was not seen by medical officials at Upstate, the records once again reveal otherwise, reflecting that prior to the time of his transfer out of that facility on April 22, 2002, he was seen by medical personnel at Upstate more than forty times, with various complaints being registered by him along the way.

Turning to plaintiff's medical treatment while at Clinton, medical records of plaintiff's care at that facility reflect that between June 8, 1999 and December 1, 1999-the period covered by his complaints regarding medical care at Clinton-he was seen on approximately one hundred occasions regarding complaints concerning his back, knee, and neck pain, chronic headaches, and various other symptoms by an array of health care providers which included prison doctors, outside specialists, physician assistants, therapists and nurses. *See* Mans Aff. (Dkt. No. 229-14) Exh. A (filed under seal); *see also* Johnson Decl. (Dkt. No. 229-3) ¶ 7. During that time plaintiff was provided with medical examinations, consultations, physical therapy, knee braces and supports, and various medications, and additionally was the subject of x-rays and magnetic resonance imaging ("MRI") testing. *Id.*

One of the conditions of which plaintiff complains relates to chronic back pain. Plaintiff's medical records reveal that he has been diagnosed as suffering from degenerative disc

disease. Mans Aff. (Dkt. No. 229-14) Exh. A; *see also* Johnson Decl. (Dkt. No. 229-3) ¶ 7. According to Dr. Vonda Johnson, the Medical Director at Clinton, while certain treatment regimens may afford some measure of relief for that condition, depending upon the particular patient, it cannot necessarily be "fixed" through surgery, medication, or physical therapy. Johnson Decl. (Dkt. No. 229-3) ¶ 9. In any event, plaintiff's health records reveal that plaintiff was provided considerable testing and treatment, including physical therapy, in an effort to address that condition. *See generally* Mans Aff. (Dkt. No. 229-14) Exh. A; Johnson Decl. (Dkt. No. 229-3) ¶ 11. Evaluations arranged by prison officials regarding plaintiff's back condition have included MRI testing as well as an EMG study/ nerve conduction study on November 1, 1999, ordered by Dr. Ellen. Johnson Decl. (Dkt. No. 229-3) ¶ 11.

**\*15** Another of plaintiff's complaints relates to treatment received for his knee. Plaintiff's medical records reveal that a bilateral physical examination of Amaker's knees was conducted on November 15, 1999 by Dr. Ellen. Manns Aff. (Dkt. No. 229-14) Exh. A, 11/1/99, 11/8/99, 11/15/99 Entries; Johnson Decl. (Dkt. No. 229-3) ¶ 11. Neither the results of Dr. Ellen's examination nor anything contained in plaintiff's records was viewed as indicating the need to perform MRI testing on his knees. *Id.*

The specifics of plaintiff's complaints regarding his knee condition include allegations that prison medical personnel failed to provide him with proper knee braces, failed to order MRI testing, and denied his requests to see a specialist to address the pain, clicking and popping being experienced in both knees. Plaintiff's conclusory allegations of not being provided with a knee brace are belied by the record. On April 13, 1999 one neoprene right knee brace was received at the facility for the plaintiff, with an indication that the other was back-ordered. *See* Mans Aff. (Dkt. No. 229-14) Exh. A, 4/13/99 entry. In any event upon receipt of the special neoprene knee braces, they were refused by the plaintiff. *Id.,* 1/6/00 Interdepartmental Communication.

Plaintiff's medical records reflect that medical officials at Clinton were in fact fully cognizant of plaintiff's complaints regarding knee pain, and took measures to address that condition. On November 8, 1999 a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

neurological examination of plaintiff's lower extremities was conducted, followed by a physical examination of both of plaintiff's knees on November 15, 1999. Johnson Decl. (Dkt. No. 229-3) ¶ 11; Mans Aff. (Dkt. No. 229-14) Exh. A, 11/1/99, 11/8/99, 11/15/99 entries. The results of those examinations by Dr. Ellen revealed nothing to indicate the need for MRI testing. While plaintiff challenges this determination, unsupported by any evidence suggesting that the opinions of Dr. Ellen were not medically appropriate, his claim in this regard represents nothing more than disagreement over a chosen course of treatment, and is insufficient to support a claim of indifference. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance,* 143 F.3d at 703; *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.3d 296 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828 (1992).

Another of plaintiff's medical complaints stems from the claim that while at Clinton he was denied treatment by Dr. Lee for a period of three months. Amended Complaint (Dkt. No. 78) ¶ 8. Neither plaintiff's complaint nor his motion submission, however, contains specifics regarding the time period involved. Moreover, while there may well have been periods of such a duration over which he was not seen by a doctor, a review of plaintiff's medical records fails to disclose any three month interval during which he was not medically treated by any DOCS medical personnel at Clinton. *See* Mans Aff. (Dkt. No. 229-14) Exh. A. Despite plaintiff's apparent belief to the contrary, the Eighth Amendment does not guarantee a prison **inmate** unfettered access to a prison physician at his or her insistence. *See Harrison v. Barkley,* 219 F.3d 132, 142 (2d Cir.2000) (" '[S]ociety does not expect that **prisoners** will have unqualified access to health care ....' ") (quoting *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995 (1992)).

**\*16** The vast majority of plaintiff's medical complaints surround the belief that he was not provided with adequate physical therapy, his **disagreement** over being told that he would have to pay for replacement of his broken eyeglasses, and the denial of appropriate shower and gym passes.[FN18] These complaints fall well short of establishing deliberate **medical indifference** of constitutional proportions on the part of prison officials at Clinton and Upstate. As the Second Circuit has noted,

[FN18.] According to his health records, plaintiff was seen at Clinton by Nurse Rizoff on June 16, 1998, claiming that his eyeglasses were broken and requesting an eye examination and new glasses. *See* Mans Aff. (Dkt. No. 229-14) Exh. A, 6/16/98. Nurse Rizoff inquired as to how the glasses were broken, and advised the plaintiff that pursuant to the DOCS health services policy regarding vision care services he might be held accountable for the cost of any replacement that occurred within two years of his last eye examination and the issuance of glasses. *See id.,* Interdepartmental Communications from Dr. Lee to Plaintiff Regarding DOCS Policy for Eyeglasses, dated February 26, 1999. Plaintiff's records reveal that his eyes were subsequently examined on July 8, 1998, at which time he received a pair of glasses, and that he was retested on April 26, 1999 after complaining of eye pain. *See Id.,* 7/9/98 and 4/26/99 Entries. While there is considerable question as to whether plaintiff's eye condition constitutes a serious medical need for purposes of the Eight Amendment, particularly in view of the lack of allegations that his condition degenerated or he experienced severe pain as a result of the delay in providing him with an eye examination and glasses, *see Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996); *Abdush-Shahid v. Coughlin,* 933 F.Supp. 168, 181 (N.D.N.Y.1996) (Koeltl, J.), it is clear that the defendants were not, as alleged, indifferent to his vision impairment.

[i]t must be remembered that the State is not constitutionally obligated, much as it may be desired by **inmates**, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of ... **prisoners** would not in freedom or on parole enjoy the excellence in [medical] care which the plaintiffs understandably seek .... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. The Constitution does not command that **inmates** be given the kind of medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

attention that judges would wish to have for themselves.... The essential test is one of medical necessity and not one simply of desirability.

    Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir.1986) (internal quotations and citations omitted).

Plaintiff's ambulatory health record, which is both extensive and comprehensive, has been reviewed by Dr. Vonda Johnson, the Medical Director at Clinton. Based upon her professional judgment, Dr. Johnson opines that the plaintiff neither suffered from any acute medical condition requiring immediate medical care and treatment or which resulted in harm to his health or well-being, nor was he denied appropriate treatment by medical and nursing staff both at Clinton and Upstate, as well as by any outside specialists required under the circumstances. Johnson Decl. (Dkt. No. 299-3) ¶¶ 14-15. Having engaged in a careful review of plaintiff's medical records, informed by plaintiff's arguments as well as Dr. Johnson's opinions, I am of the view that no reasonable factfinder could conclude that defendants were deliberately indifferent to any serious medical condition suffered by the plaintiff, and therefore recommend dismissal of plaintiff's deliberate indifference claims as a matter of law.

I. *Retaliation*

In his amended complaint, although with the same degree of indefiniteness that has plagued his submissions in other substantive areas, plaintiff also asserts claims of violation of his First Amendment rights based upon retaliation for having engaged in protected activity, including the filing of grievances. Defendants also seek dismissal of plaintiff's retaliation claim as fatally nebulous and unsupported.

**\*17** When adverse action is taken by prison officials against an **inmate**, motivated by the **inmate's** exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly,* 854 F.2d 584, 588-90 (2d Cir.1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and **inmates** often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular

care." *Dawes v. Walker,* 239 F .3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Dawes,* 239 F.3d at 492 (2d Cir.2001). If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the **inmate** plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty,* 713 F.2d at 13.

It should also be noted that personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977),

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

*cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation. *See Abascal v. Hilton,* No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

*18 Analysis of plaintiff's retaliation cause of action is complicated by virtue of his failure in most instances to state, with any modicum of clarity, what specific protected activity triggered the retaliatory response and what the resulting adverse action was, including to articulate the timeframe involved. Among the actions apparently attributed by Amaker to retaliatory animus are searches of his cell, conducted on March 22 and 23, 1999. Amended Complaint (Dkt. No. 78) ¶ 10. Defendants' submissions, however, reveal that the first of those two searches was based upon suspicion that the plaintiff, one of several **inmates** present in the law library at the time a corrections officer's handcuff key case was discovered missing, could be in possession of that contraband.[FN19] Bell Decl. (Dkt. No. 229-10) ¶ 6. The second of those searches was a routine search performed in accordance with DOCS directives requiring periodic random cell searches. *Id.* ¶¶ 6-8. Since it therefore appears that both of those actions were taken for independent and legitimate reasons, they cannot form the basis of a retaliation claim. *Mount Healthy City Bd. of Ed.,* 429 U.S. at 287, 97 S.Ct. at 576; *see also Lawrence v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994).

FN19. It is well-established that as a prison **inmate** plaintiff has no Fourth Amendment right to privacy which would preclude a search of his cell, accomplished for legitimate reasons. *Hudson v. Palmer,* 468 U.S. 517, 525-26, 104 S.Ct. 3194, 3200 (1984). A cell search motivated out of retaliatory animus, however, could be found to support a claim of unlawful retaliation provided that all of the prerequisites for establishing a First Amendment claim were met. *See H'Shaka v. Drown,* No. 9:03-CV-937, 2007 WL 1017275, at *12 (N.D.N.y. Mar. 30, 2007) (Kahn, D.J. and Treece, M.J.).

Although it is far from clear, plaintiff also appears to assert that the requirement imposed by prison officials that he pay for spices and food consumed in connection with his celebration of Ramadan was retaliatory. Amended Complaint (Dkt. No. 78) ¶ 13. It is doubtful that a reasonable factfinder could conclude that this requirement rose to a level sufficient to constitute an adverse action. *Cf. Kole v. Lappin,* 551 F.Supp.2d 149, 155 (D.Conn.2008) (dismissing plaintiff's retaliation claim based on her complaint that the prison reduced the number of items sold as kosher-for-Passover for **inmates** in response to her filing a grievance regarding the one hundred dollar spending limit). In any event, more importantly, there is no evidence among any of plaintiff's submissions which would establish the requisite nexus between the imposition of that requirement and plaintiff having engaged in protected activity.

Undeniably, it appears that the plaintiff in this case frequently avails himself of his First Amendment right to complain, by instituting litigation, filing grievances, and pursuing other channels, regarding prison conditions and his treatment as a DOCS **inmate**. It is also clear that the plaintiff has been subject to disciplinary action by prison officials with some regularity. While these two circumstances could suffice to establish two of the three requisite elements to establish a claim of unlawful retaliation, at least at the summary judgment stage, the record is wholly lacking in evidence from which a reasonable factfinder could conclude that the third and critical element, linking one or more of the adverse actions to plaintiff's protected activity, has been satisfied. Accordingly, I recommend dismissal of plaintiff's retaliation claim as a matter of law.

### J. *Equal Protection*

*19 Plaintiff's complaint, as amended, also makes passing reference to the denial by defendants of his right to equal protection. *See, e.g.,* Amended Complaint (Dkt. No. 78) ¶ 28, 33.

The Equal Protection Clause directs state actors to treat similarly situated people alike. *See City of Cleburne,*

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

*Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia, McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767 (1987)). The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

In this instance neither plaintiff's complaint, as amended, nor the record now before the court provides specifics to flesh out plaintiff's equal protection claim. Presumably, the claim is rooted in the alleged differentiation of prison officials in their treatment of him, based upon his race. To be sure, plaintiff's submissions indicate the use of at least one racial epithet by prison officials. The record, however, is otherwise devoid of evidence from which a reasonable factfinder could conclude that the defendants discriminated as against the plaintiff based upon his race or some other protected criteria. Instead, plaintiff's allegations fall within the category of those observed by the Second Circuit to be insufficient, the court noting that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrahams,* 810 F.2d 358, 363 (2d Cir.1987). Discerning no basis upon which a reasonable factfinder could conclude that the defendants have violated Amaker's right to equal protection under the Fourteenth Amendment, I similarly recommend dismissal of that claim.

K. *Procedural Due Process*

Plaintiff's amended complaint also asserts, once again in wholly conclusory fashion, that his right to due process was violated by the defendants. Conspicuously absent from plaintiff's submissions, however, is an indication of what cognizable liberty interests are implicated in this cause of action, as well as illumination as to the reasons for his claim that due process was not afforded.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996). The procedural safeguards to which a prison **inmate** is entitled before being deprived of a constitutionally cognizable liberty interest are wellestablished, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U .S. 539, 564-67, 94 S.Ct. 2963, 2978-80 (1974). Under Wolff, the constitutionally mandated due process requirements, include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564-67, 94 S.Ct. at 2978-80; *see also Eng v. Coughlin,* 858 F .2d 889, 897-98 (2d Cir.1988). In order to pass muster under the Fourteenth Amendment, hearing officer's disciplinary determination must garner the support of at least "some evidence". *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768 (1985).

*20 Having carefully searched the record now before the court, I am unable to find that Amaker experienced the deprivation of a constitutionally cognizable liberty interest sufficient to trigger the protections afforded under the Fourteenth Amendment. Moreover, even assuming *arguendo* the existence of such a liberty interest, plaintiff's submissions do not disclose any failure to comply with the constitutional mandates of the Fourteenth Amendment, including those articulated by the Supreme Court in *Wolff.* Accordingly, I recommend dismissal of plaintiff's procedural due process cause of action, as a matter of law.

IV. *SUMMARY AND RECOMMENDATION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 385413 (N.D.N.Y.)
(Cite as: 2009 WL 385413 (N.D.N.Y.))

Plaintiff's amended complaint, though rambling and consisting of varied and wide-ranging claims based upon acts allegedly occurring at both Clinton and Upstate, when boiled down to its essence asserts claims of medical indifference, constitutional violations based on DNA testing, retaliation, and denial of access to the courts. Having carefully considered the record now before the court I conclude that no factfinder could find in plaintiff's favor on any of these claims, and that defendants are thus entitled to dismissal of all claims against them, as a matter of law.[FN20] Accordingly, it is hereby

> [FN20.] Based upon this finding I have opted not to address the defendants' additional arguments of lack of personal involvement and entitlement to qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001). Similarly, I have chosen not to address the motion filed on behalf of defendant R. Rivera seeking dismissal for failure to state a cause of action in light of my recommendation regarding defendants' summary judgment motion.

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 229) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety; and it is further hereby

RECOMMENDED that in light of this disposition the motion of defendant R. Rivera to dismiss plaintiff's claims against him for failure to state a cause of action upon which relief may be granted (Dkt. No. 237) be DENIED as moot.

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties

in accordance with this court's local rules.

N.D.N.Y.,2009.
Amaker v. Kelley
Slip Copy, 2009 WL 385413 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

**H** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John COOKE, Plaintiff,
v.
STERN, Supt. Programs, Bare Hill Correctional
Facility,[FN1] and Ms. S. Flanagan, Defendants.

> FN1. This defendant's last name is actually
> "Stearns," and this court will refer to him as
> such.

No. 9:07-CV-1292 (GLS/ATB).

Aug. 2, 2010.

John Cooke, pro se.

Christopher W. Hall, Ass't Attorney General, for
Defendant.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

*1 This matter was referred for Report and
Recommendation, pursuant to 28 U.S.C. § 636(b) and
Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L.
Sharpe, United States District Judge. On January 4, 2010,
the case was re-assigned to me, following the retirement of
Magistrate Judge Gustave J. Di Bianco.

In this amended civil rights complaint ("AC"), plaintiff
alleges that the two remaining defendants [FN2] were
deliberately indifferent to his health and safety when they
improperly assigned him to a particular work detail at
Bare Hill Correctional Facility ("Bare Hill") that was not
appropriate, given his physical disability. (Dkt. No. 7).
Plaintiff, now released from custody, seeks substantial
monetary damages. (Id.).

> FN2. Judge Sharpe previously dismissed all
> claims against defendant K. Mullerville, R.N.
> without prejudice, because the amended
> complaint failed to allege any involvement of
> Nurse Mullerville in the purported violation of
> plaintiff's constitutional rights. (Dkt. No. 8). In a
> Memorandum Decision and Order dated March
> 4, 2009 (Dkt. No. 16), Judge Sharpe partially
> granted defendants' first summary judgment
> motion (Dkt. No. 14). He dismissed, for failure
> to exhaust administrative remedies, a claim that
> defendant Stearns further violated plaintiff's
> **Eighth Amendment** rights by assigning him to
> a housing unit that was inappropriate, given
> plaintiff had just returned from the hospital
> following surgery.

Presently before this court is defendants' second motion
for summary judgment, pursuant to FED. R. CIV. P. 56.
(Dkt. No. 24). Defense counsel argues that neither name
defendant was personally involved in the decision to
assign plaintiff to his work program, and that plaintiff
cannot establish that the defendants were deliberately
indifferent to his health and safety.

Plaintiff initially failed to respond to the second summary
judgment motion. Upon learning of the possibility that
plaintiff had not received the motion [FN3] the court took
steps to verify plaintiff's current mailing address and to
serve him (perhaps for a second time) with the relevant
papers. (See Text Orders dated 7/14/2010 & 7/20/2010).
Only July 26, 2010, plaintiff submitted a confirmation of
his new mailing address and provided some documents
responsive to the summary judgment motion. (Dkt. No.
29). On July 27, 2010, plaintiff telephoned my chambers
to confirm his receipt of defendants' summary judgment
motion, and to advise the court that he did not intend to
file any further response. (See Text Order dated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

7/27/2010).

FN3. When plaintiff was deposed on August 13, 2009, defense counsel questioned plaintiff, who had by then been released from custody, about his plans to move to a different apartment. Plaintiff was reminded that he was required to notify the court and the parties of any change of address. (Pltf. Deposition ("Dep.") at 10-11, Dkt. No. 24-4). On November 6, 2009, the defendants served their second summary judgment motion on plaintiff by mail, directed to a new address that plaintiff provided to defense counsel by telephone, without advising the court. (Notice of Motion, Dkt. No. 24 at 3-4; Hall Attorney Affirmation ¶¶ 2-14, Dkt. No. 26). Although defense counsel had no indication that the summary judgment motion had not been received by plaintiff, counsel was advised by telephone in early December 2009 that plaintiff had yet another new mailing address. (Hall Aff. ¶ 15). Although it was not his obligation to do so, defense counsel apparently did not follow up with plaintiff to ensure that he received the summary judgment motion. *Dumpson v. Goord*, 00-CV-6039, 2004 WL 1638183, at *3 (W.D.N.Y. July 22, 2004) ("The demand that plaintiffs provide contact information is ... the obvious minimal requirement for pursuing a lawsuit.").

Although this court originally gave plaintiff until August 20, 2010 to file a response to the summary judgment motion, it is ripe for decision now, given that plaintiff has indicated that he does not intend to file any further response. For the following reasons, this court recommends that the defendant's motion for summary judgment be granted and the sole remaining claim in the amended complaint dismissed in its entirety.

**DISCUSSION**

**I. *Facts*[FN4]**

FN4. This court will review only the facts and

procedural history relevant to the pending summary judgment motion. In his Memorandum Decision and Order dated March 4, 2009 (Dkt. No. 16), Judge Sharpe more fully discusses the facts and procedural history of this and the related case (No. 9:09-CV-74).

Plaintiff's right foot and some of his right leg were amputated and replaced by a prosthesis shortly before he was returned to state prison in August 2007, following a parole violation. (Pltf. Deposition ("Dep.") at 27-28, 31-33, Dkt. No. 24-4). Plaintiff claims that, on August 18, 2007, he was assigned to work as a cook in the mess hall at Bare Hill by defendant Sharon Flanagan, who was in charge of the Program Committee. (AC, Dkt. No. 7 at 1 [FN5]; Dep. at 22-25, 46-47, 56-61). Plaintiff states that he asked the Program Committee not to be assigned to the mess hall because it was difficult for him to stand and walk on his prosthetic leg, and because he didn't want "to move around and put pressure on [that] leg ...." (AC at 1, 7; Dep. at 22-24). Plaintiff asked to work in the commissary or at a job outside, but the sergeant stated that neither job was available. (Dep. at 60-61). One of the female committee members then told plaintiff there was an opening for a cook in the mess hall, and "you take it or you do not take it." Plaintiff said he would take it because he knew he would not be at Bare Hill "for long." (Dep. at 61). [FN6]

FN5. Because the paragraph and page numbering of the amended complaint is inconsistent, the court will reference the page numbers created by the CM-ECF system, which appears in the header of the filed document.

FN6. Plaintiff had prior training and experience as a cook, both in and out of prison. (Dep. at 29-30). During his deposition, plaintiff stated he "did not mind working in the kitchen," (Dep. at 35; but he also was concerned that, if he turned down his work assignment, he would be assigned to segregated housing and subject to discipline and/or a delay in his eventual release (Dep. at 49-50, 53-54).

*2 Defendants have submitted documentation indicating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

that plaintiff actually met with the Bare Hill Program Committee on August **16**, 2007, not Saturday, August **18th,** as plaintiff contended. (Flanagan Aff., Dkt. No. 24-3, ¶¶ 5-8, 11-13 & Ex. A; Stearns Aff., Dkt. No. 24-2, ¶¶ 13-16, 25-26 & Ex. A).[FN7] According to plaintiff, a male sergeant and two women were committee members that day. (Dep. at 24-25, 56-57). Plaintiff knew that "Ms. Flanagan was in charge of the program ..." (Dep. at 58), and believed that she was the woman who appeared to be running the committee meeting. (Dep. at 57-59, 63-64). Plaintiff could not describe the woman at the meeting he believes was Ms. Flanagan, except to note she was "Caucasian." (Dep. at 63-64).

> **FN7.** This committee would not meet on weekends. (Flanagan Aff. ¶¶ 11-13; Stearns Aff. ¶ 26 & Ex. B)

Defendant Flanagan was, in fact, in charge of the program committee and would normally preside at meetings to make program assignments to **inmates**. (Stearns Aff. ¶ 20; Flanagan Aff. ¶ 10). However, defendants submitted extensive documentation indicating that defendant Flanagan was not at work on August 16, 2007, and did not participate in the meeting that resulted in plaintiff's assignment to work in the mess hall. (Flanagan Aff. ¶¶ 5-10, 14-19, & Exs. A, B; Stearns Aff. ¶¶ 13-16, 18-24, & Exs. A, B).[FN8] The record documenting the decision of the Program Committee assigning plaintiff to the mess hall detail was dated August 16, 2007 and was signed by someone other than defendant Flanagan, who would, as the committee chair, sign such forms on days that she worked. (Flanagan Aff. ¶¶ 5-10 & Ex. A).

> **FN8.** Defendant Flanagan submitted a copy of her employee time sheet showing she had taken eight hours of personal leave the day plaintiff met with the Program Committee. (Flanagan Aff. ¶¶ 14-16 & Ex. B). Defendant Stearns also noted her absence on August 16, 2007 on his personal calendar for that day. (Stearns Aff. ¶¶ 18-23 & Ex. B).

Defendant Stearns was the Deputy Superintendent for Program Services at Bare Hill, and supervised the Program Committee. However, he was "not a member [of

that committee] and ha[d] no direct involvement in its meetings and decisions." (Stearns Aff. ¶ 9). He "was not present at the Committee meeting [on August 16th] and had nothing to do with the Committee's decision to assign Cooke to the mess hall." (Stearns Aff. ¶ 17). Plaintiff admitted as much during his deposition. (Dep. at 75, 82).[FN9]

> **FN9.** *See* Dep. at 75 ("Mr. Sterns doesn't assign people to a program. He is the director of programs ...."); 82 (Stearns not at committee meeting and had no role in mess hall assignment).

About a week before plaintiff met with the Program Committee, he had been cleared by the medical department at Bare Hill to work in the mess hall. (Stearns Aff. ¶¶ 33-35 & Ex. E). Plaintiff recalled being interviewed and examined by a nurse, but opined that it was not a thorough examination, and he disagreed with her conclusion that he was physically able to do mess hall work. (Dep. at 34-42, 48). He told her about his recent surgery and said he could not do strenuous work. (Dep. at 37, 41). Plaintiff told the nurse he was able to participate in programs, but claims that neither he, nor the nurse, specifically discussed mess hall work. (Dep. at 36, 41).

On August 18, 2007, plaintiff submitted a handwritten "Request for Reasonable Accommodation," and was instructed to re-submit his request on the proper form, which plaintiff did on August 24th. (3/4/2009 Memo. Decision and Order of Judge Sharpe, Dkt. No. 16, at 12-13; AC at 10). Plaintiff requested a change in program and facility due to the problems with his right foot and leg. (*Id.* at 13-14; AC at 10). The request was forwarded to the medical staff for evaluation on or before August 28, 2007.[FN10] On September 11, 2007, Dr. Connally, a facility physician, told Defendant Stearns "that Mr. Cooke's leg was infected, that Cooke was not caring for it properly and that he should be transferred to a wheel chair access facility." (Stearns Aff. ¶¶ 27-29 & Ex. C; AC at 10). On September 12th, defendant Stearns signed the "Determination" section of the form which stated that plaintiff's transfer to a wheelchair-accessible facility was being processed, and noted that the doctor had recommended removal from the mess hall work assignment. (3/4/2009 Memorandum Decision and Order

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

at 14; AC at 10). In the "**Inmate** Receipt" portion of the form, plaintiff stated that he agreed with defendant Stearns's determination. (*Id* . at 14-15; AC at 10).

> FN10. Plaintiff was initially advised in a 8/28/07 memorandum from defendant Stearns that his request for a program change needed to be addressed through defendant Flanagan. (*Id.* at 14; Dep. at 73). Plaintiff claims that he wrote defendant Flanagan to request a change of programs and was denied. (Dep. at 73, 75, 90-91). No copies of such correspondence have been provided to the court.

**\*3** Plaintiff believes that, on or about September 12, 2007, the medical staff at Bare Hill found that the area where his leg had been amputated was infected. (AC at 1; Dep. at 78, 87-88). Plaintiff has acknowledged that, as soon as defendant Stearns became aware of the infection in plaintiff's leg, plaintiff was removed from his mess hall work assignment. (Dep. at 79-80, 85; Stearns Aff. ¶¶ 27-30). Plaintiff also admitted that the woman who assigned him to work in the mess hall (whom the plaintiff believed to be defendant Flanagan), was not trying to harm him or cause him any physical pain. "She simply didn't know. She couldn't know because she didn't read the [medical] chart." (Dep. at 81).

On October 17, 2007, plaintiff was running a temperature of 104 degrees and was transferred to Alice Hyde Medical Center, and then to Albany Medical Center, for evaluation. (AC at 1; Dep. at 82). Apparently, the infected part of the leg was then surgically removed. (AC at 1; Dep. at 85). Plaintiff was returned to Bare Hill where he was required to walk on crutches to obtain follow-up medical care. On October 31, 2010, he fell on a walkway while en route to the infirmary to change the dressing on his leg, suffering further injury. (AC at 4; Dep. at 84-85).

## II. *Summary Judgment*

As noted above, plaintiff's only remaining claim is that defendants Stearns and Flanagan violated his **Eighth Amendment** rights by assigning him to a mess hall work detail. Defendants seek summary judgment, arguing that

they were not personally involved in plaintiff's program assignment, and that plaintiff cannot establish that they acted with deliberate indifference to plaintiff's health and safety. For the reasons stated below, this court agrees with the defendants' position and recommends that summary judgment be granted, and that the remaining claim in the amended complaint be dismissed in its entirety.

## A. Legal Standard for Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272-73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**\*4** In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers ." *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (citing, *inter alia, Burgos v. Hopkins,* 14

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

F.3d 787, 790 (2d Cir .1994) (a court is to read a pro se party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)). While a court " 'is not required to consider what the parties fail to point out,' " the court may in its discretion opt to conduct "an assiduous review of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted).[FN11]

> FN11. The liberal pleading standards for *pro se* litigants do not excuse them from following the procedural formalities of summary judgment. *Govan v. Campbell,* 289 F.Supp.2d at 295. Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." This rule may be applied against *pro se* litigants; and a court is not obliged to conduct an independent review of the record to find proof of a factual dispute where, as here, a *pro se* plaintiff has failed to respond to the summary judgment motion in accordance with the applicable rules. *Id.* However, given the history relating to the service of the summary judgment motion, this court has considered plaintiff's amended complaint and his deposition testimony in determining whether there are material issues of fact in dispute.

**B. Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

**1. Defendant Stearns**

Defendant Stearns lacked personal involvement in the Program Committee's decision to assign plaintiff to the mess hall because, as noted above, he was not a member of the committee and had no direct involvement in its meetings and decisions. He cannot be deemed personally involved in the decisions of the Program Committee merely because he supervised it. *See, e.g., Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (doctor who oversaw the facility's medical staff could not be deemed personally involved in the decisions merely because of his supervisory status).

**\*5** When defendant Stearns first learned, from a staff physician, that plaintiff's work assignment was inappropriate given his medical condition, he promptly directed that plaintiff be removed from his mess hall job. Plaintiff has made no allegation, much less a plausible showing, that defendant Stearns created a relevant custom or policy or was grossly negligent in his supervision of subordinates who made plaintiff's job assignment. In short, defendant Stearns cannot be liable for plaintiff's job assignment because there is indication that he was "personally involved." *See, e.g., Wilson v. Johnson,* 999 F.Supp. 394, 400 (W.D.N.Y.1998) (facility superintendent

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

was not personally involved in the work assignment of an **inmate** when there was no evidence indicating he was advised about any health risk connected to the job assignment, that he was so advised and failed to take corrective action, that he created or carried out a policy exposing **inmates** to unsafe work assignments, or that he was grossly negligent in supervising subordinates).

### 2. Defendant Flanagan

As discussed above, the defendants have submitted persuasive documentary evidence to corroborate defendant Flanagan's sworn affidavit that she did not participate in the assignment of plaintiff's work detail because she was not working on the day the Program Committee met with him. Plaintiff's claims that defendant Flanagan presided at the meeting during which he was assigned to work in the mess hall are inconsistent and appear to be based on a mere assumption that she must have been present because she was the chair of the committee. (Dep. at 24, 57-59).[FN12] In light of the overwhelming contrary, documentary evidence, plaintiff's conclusory allegations of defendant Flanagan's personal involvement in his job assignment are not sufficient to create a material issue of fact. *See, e.g., Mccloud v. Roy,* 9:08-CV-839, 2010 WL 985731, at *7 (N.D.N.Y. Feb. 22, 2010) (plaintiff's conclusory allegation that he requested a bottom bunk placement from prison doctor is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record); *Benitez v. Pecenco,* 92 Civ. 7670, 1995 WL 444352 at n. 5, (S.D.N.Y. July 27, 1995) (plaintiff's conclusory allegation that he was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")).[FN13] *See also Atkinson v. Fischer,* 9:07-CV-368 (GLS/GHL), 2009 WL 3165544 at * 11, 2009 (N.D.N.Y. Sept. 25, 2009) (granting summary judgment in favor of defendants who were not in any way involved in **inmate** plaintiff's job assignment).

FN12. *See e.g.,* Dep. at 24 ("I don't know the ... name [of the 'lady' who said 'you are going to be assigned in the mess hall']. I know she was assigned to, she was the head person at that program. I would say it would be Ms. Fine (phonetic) as far as I know going by what I wrote."; 57 ("I was introduced to everybody and I know that Ms. Flanagan was there.... Why I'm so keen on Ms. Flanagan is because she was the head person."); 58 ("... I don't remember the women, I don't remember the sergeant.... So Ms. Flanagan was in charge of the program and if you had any reason write Ms. Flanagan for change of program, that's what you would do.... I didn't just pull Ms. Flanagan's name out of a hat."; 59 ("the reason I named her because she is the one that assigned people.")

FN13. *See also Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

In his deposition, plaintiff also makes conclusory and unsupported claims that, on several occasions after his meeting with the Program Committee, he wrote defendant Flanagan "requesting a change of programs due to the fact it's strenuous to me." (Dep. at 91). Given that none of this alleged correspondence has been submitted to the court, the court concludes that plaintiff's conclusory allegations are insufficient to establish defendant Flanagan's personal involvement in failing to change his program placement during the month or so he worked in the mess hall. *See, e.g., Wilson v. Johnson,* 999 F.Supp. at 400. In any event, as discussed below, there is no indication that, even if defendant Flanagan declined to change plaintiff's placement based on his general complaints, she could be found deliberately indifferent to his health and well-being.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

**3. Unnamed Potential Defendants**

**\*6** Although defendants Stearns and Flanagan were not personally involved in the initial decision to assign plaintiff to a mess hall work assignment, there were clearly several other unidentified staff members at Bare Hill who were. In *Davis v. Kelly,* the Second Circuit discussed the circumstances under which a court should not dismiss otherwise colorable section 1983 claims against supervisory personnel who deny personal involvement until a *pro se* plaintiff has been afforded an opportunity, through at least brief discovery, to identify the subordinate officials who have personal liability. *Davis v. Kelly,* 160 F.3d 917, 920-21 (2d Cir.1998). The *Davis* court held:

> ... [W]hen a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery.

*Davis v. Kelly,* 160 F.3d at 922.

In this case, the dismissal of plaintiff's claim should not be delayed, based on *Davis,* to provide him an opportunity to conduct further discovery to identify those who were personally involved in his job assignment. First, *Davis* involved the decision to transfer of an **inmate** from one facility to another. Because of security issues related to prison transfers, the decision-making process is not transparent to **inmates**; the identity of the decision makers and the reasons for the transfer are often not disclosed. Hence, **inmate** plaintiffs might understandably have difficulty identifying who was involved in their transfer. *See, e.g., Smith v. Greene,* 9:06-CV-505, 2010 WL 985383, at \*5-8 & n. 7 (N.D.N.Y. Feb. 3, 2010). This case involves prison job assignments, for which the process is more transparent. The decision relating to plaintiff's job assignment was made in his presence by a committee of three individuals, who, plaintiff claims, introduced themselves to him. (Dep. at 57). With a level of diligence reasonable for a *pro se* litigant, the plaintiff could have correctly identified the facility staff members involved in

his job assignment if he chose to do so.

Furthermore, for the reasons discussed below, plaintiff's pending claim that his **Eighth Amendment** rights were violated is not "colorable" because he cannot establish that the actual members of the committee acted with deliberate indifference to his health and welfare. As noted above, the medical staff at the prison had cleared plaintiff for a mess hall job assignment before the committee met, so they had no reason to know that such an assignment might be detrimental to his health.

**C. Eighth Amendment Claim**

**1. Legal Standards**

The **Eighth Amendment** protects **prisoners** from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an **inmate's** health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). To establish an **Eighth Amendment** claim based on unsafe or medically inappropriate working conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834. Plaintiff's claim may also be analogized to a claim for inadequate medical care, which similarly requires proof of deliberate indifference. *See, e .g., Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) ( **prisoner** alleged **Eighth Amendment** medical claim when he alleged that prison guards deliberately ignored doctor's order that **prisoner** pursue exercise in prison gym); *Atkinson v. Fischer,* 2009 WL 3165544 at \*11 (applying **Eighth Amendment** standards for medical care in analyzing claim that plaintiff was assigned to a prison job that was inappropriate, given his medical condition).

**\*7** "The deliberate indifference standard embodies both an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

objective and a subjective prong." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway,* 37 F.3d at 66 (quoting *Wilson v. Seiter,* 501 U.S. at 298). An **inmate** may satisfy the objective prong by alleging that his prison work duties created a substantial risk of serious injury or harm. *Howard v. Headly,* 72 F.Supp.2d 118, 123-124 (E.D.N.Y.1999) (collecting cases).

The subjective element of the **Eighth Amendment** analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer,* 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an **inmate's** health and safety. *Hathaway,* 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

**2. Application**

As discussed above, during the month or so he worked in the mess hall, the plaintiff developed an infection in the area above where his foot had previously been amputated. When he was re-examined by the medical staff, a prison doctor determined that the mess hall assignment was no longer appropriate given plaintiff's medical condition. Plaintiff ultimately required surgery to remove another six inches or so of his leg stump. However, the prison doctor concluded that plaintiff's infection was caused, in part, by plaintiff's failure to properly care for his surgery wound. Furthermore, plaintiff admitted that, even before he returned to prison, he was advised that he would require additional surgery to remove another several inches of his leg stump. (Dep. at 28, 32-33). While it is unnecessary to decide the issue, this court will assume for the purposes of this decision that there was a material issue of fact regarding whether plaintiff's initial work assignment exposed him to a substantial risk of further injury and harm. However, to avoid summary judgment, there must also be a genuine issue of fact regarding whether the

defendants were aware of a substantial risk of harm to plaintiff from his work assignment and knowingly disregarded that risk.

Plaintiff has not come forward with any evidence to overcome the defendants' showing that they, and the other prison officials who may have been involved in plaintiff's **work** assignment, did not act with deliberate **indifference** to his health and safety. When the members of the Program Committee (which did not include defendant Flanagan) initially assigned plaintiff to **work** in the mess hall, they relied upon the judgment of the prison medical staff,[FN14] which specifically **cleared** plaintiff for that job placement.[FN15] *See, e.g., Wilson v. Johnson,* 999 F.Supp. at 399-400 (finding no issue of fact suggesting deliberate **indifference** relating to plaintiff's job assignment where there was no significant evidence of medical (back) problems at the time of the initial assignment). Plaintiff admitted that the woman presiding at his Program Committee meeting was not trying "to kill me or cause me any physical pain." "She simply didn't know." (Dep. at 81).

FN14. *See* Dep. at 59 (the woman presiding at the Program Committee meeting who made plaintiff's job assignment had his medical charts).

FN15. While there are no remaining named defendants who might have been involved in the original medical **clearance** of plaintiff to **work** in the mess hall, there is no indication that the nurse who made that medical judgment acted with deliberate **indifference** to plaintiff's health. Plaintiff complains that the nurse did not perform a sufficiently thorough examination of him and he **clearly** disagreed with her ultimate decision. However, he alleges nothing to suggest that the nurse knew of, and deliberately disregarded, a substantial risk of serious medical harm from his job assignment. (Dep. at 35-42, 48). Plaintiff told the nurse he could participate in programs and "walk around," although he claims they did not discuss the feasibility of mess hall **work**. (Dep. at 36, 42, 48). Even if the original examination of plaintiff and his **work clearance** constituted malpractice, that would not suffice to support an **Eighth Amendment** claim of deliberate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 3418393 (N.D.N.Y.)
(Cite as: 2010 WL 3418393 (N.D.N.Y.))

**indifference**. *See, e.g., Estelle v. Gamble,* 429 U.S. at 100-101, 106-107 ( **inmate** who alleged doctors did not credit his repeated assertions that severe back pain should preclude him from manual labor did not state a claim for deliberate **indifference** where the medical staff repeatedly saw and treated him, even if their lack of diagnosis and inadequate treatment constituted malpractice).

**\*8** Plaintiff alleges that defendants Flanagan and Stearns ignored his appeals to remove him from his job assignment for health reasons after the initial assignment. Even if plaintiff's unsupported allegations regarding his written requests to defendant Flanagan are credited, he only told her that his work was "strenuous" (Dep. at 91), which hardly put her on notice that he was being exposed to a serious infection involving his amputated leg. *See, e.g., Wilson v. Johnson,* 999 F.Supp. at 400 (corrections counselor was not involved in any constitutional violation involving **inmate's** job assignment when his complaints about his mess hall job did not mention the back problems that he now alleges were aggravated by the work). When defendant Stearns learned of plaintiff's infection, he promptly had him removed from the mess hall work detail.[FN16] Plaintiff conceded that Stearns "was pretty decent" in how he addressed his request for accommodations. (Dep. at 95). Even assuming that plaintiff's various claims about the defendants' intentions are true and accurate, he has provided nothing to suggest that they acted with deliberate indifference. Hence, even if the named defendants were personally involved in plaintiff's job assignment, this court would still recommend dismissal of the pending **Eighth Amendment** claim.

FN16. *See, e.g., McCray v. Coughlin,* 101 F.3d 1392 (table), 1996 WL 368722 at \*2, (2d Cir.1996) (prison doctor who revoked plaintiff's "general pass," requiring him to seek specific permission before he would be excused from a work program, did not act with deliberate indifference, particularly when he subsequently issued a month-long direction excusing plaintiff from lifting more than 20 pounds)

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED** and the remaining claim in the amended complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

N.D.N.Y.,2010.
Cooke v. Stern
Slip Copy, 2010 WL 3418393 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 3418399 (N.D.N.Y.)
(Cite as: 2010 WL 3418399 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
John COOKE, Plaintiff,
v.
STERN, Supt. Programs, Bare Hill Correctional
Facility,[FN1] and Ms. S. Flanagan, Defendant.

>     FN1. This defendant's last name is actually
>     "Stearns," and this court will refer to him as
>     such.

Civil Action No. 9:07-cv-1292 (GLS/ATB).

Aug. 26, 2010.

John Cooke, Brooklyn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Christopher W. Hall, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for the Defendant.

*ORDER*

GARY L. SHARPE, District Judge.

**\*1** The above-captioned matter comes to this court
following a Report-Recommendation by Magistrate Judge
Andrew T. Baxter, duly filed August 2, 2010. Following
ten days from the service thereof, the Clerk has sent the
file, including any and all objections filed by the parties

herein.

No objections having been filed, and the court having
reviewed the Magistrate Judge's Report-Recommendation
for clear error, it is hereby

ORDERED, that the Report-Recommendation of
Magistrate Judge Andrew T. Baxter filed August 2, 2010
(Dkt. No. 31) is ACCEPTED in its entirety for the reasons
state therein, and it is further

ORDERED, that the defendants' motion for summary
judgment (Dkt. No. 24) is GRANTED and the remaining
claim in the amended complaint is DISMISSED IN ITS
ENTIRETY; and it is further

ORDERED, that the Clerk enter judgment and close the
case; and it is further

ORDERED, that the Clerk of the court serve a copy of this
order upon the parties in accordance with this court's local
rules.

IT IS SO ORDERED.

N.D.N.Y.,2010.
Cooke v. Stern
Slip Copy, 2010 WL 3418399 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



LEXSEE 1995 U.S.DIST. LEXIS 7136

**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants. [1]**

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P. 4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

***Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents***
***Governments > Federal Government > Employees & Officials***
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

***Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail***
***Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations***
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

***Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview***
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

***Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail***
***Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview***
***Governments > Local Governments > Claims By & Against***
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview***
***Civil Procedure > Parties > Interpleaders > General Overview***
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview***
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General***

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

COUNSEL: [*1]   HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

*MEMORANDUM-DECISION AND ORDER*

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's.  [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5]  adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (sic) [2] ("J.C. Penney"), British Airways, Kowate (sic) Airline ("Kuwait"), MSi Insurnce (sic) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (sic) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default,  [*6]  it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]  The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

4  The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.

5  The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1)* and *4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a).* The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a).* Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1).* Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983).* These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332.* They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> [6]   We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a).* However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2).* Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a). Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE